**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

d/b/a **SEAPORT HOUSE (HOPKINS HAWLEY LLC), THE**
**GREATER NEW YORK MERCHANTS' ALLIANCE,** and
**COSTIN TARSOAGA,**
On behalf of themselves and all others similarly situated,

                                                        Plaintiffs,

-against-

**ANDREW CUOMO**, in his personal and official capacity as
Governor of the State of New York, **THE NEW YORK CITY**
**DEPARTMENT OF FINANCE, THE NEW YORK CITY**
**SHERIFF'S DEPARTMENT,** and **MAYOR BILL De BLASIO** in
his personal and official capacity as Mayor of New York City,

                                                        Defendants.

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION**
**FOR A TEMPORARY RETRAINING ORDER, EQUITABLE RELIEF AND ORDER**
**TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT ....................................................................................................... 5

   I.   Legal Standard ..................................................................................... 5

   II.   Plaintiffs Satisfy the Requirements For A TRO and Preliminary Injunction ................. 5

     A.   Plaintiffs Are Likely to Succeed on the Merits ................................................ 5

     III.   Absent an Injunction, Plaintiffs will be Irreparably Injured ....................................... 11

     IV.   The Balance of Hardships Tips in the Plaintiffs' Favor ............................................ 12

     V.   The Public Interest Will not be Disserved ................................................... 13

CONCLUSION ................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Abdi v. Duke*, 280 F. Supp. 3d 373, 410 (W.D.N.Y. 2017) .......................................................... 13

*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985).......................................................... 5

*Adickes v. S.H. Kress Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970) ........ 6

*AIM Int'l Trading LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002)............... 11

Anderson v. Marr, 10 Civ. 818 (SHS) (FM), at \*21 (S.D.N.Y. July 18, 2011)............................. 8

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F. 3d 887, 894-95 (2d Cir. 2015)...................... 5

*BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000)............... 5

*Carfora v. City of New York*, 705 F. Supp. 1007, 1008 (S.D.N.Y. 1989) ..................................... 7

*Danaher Corp. v. Chicago Pneumatic Tool Co., Nos*. 86 Civ. 3499 (PNL), 86 Civ. 3638 (PNL),

    1986 WL 7001, at 14 (S.D.N.Y. June 19, 1986) ...................................................................... 12

*Doe v. Smith*, 704 F. Supp. 1177, 1188-89 (S.D.N.Y. 1988)......................................................... 6

*Echo Design Grp. V. Zino Davidoff S.A.,* 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003) ................. 5

*Georgia v. Rachel*, 384 U.S. 780, 788 (1966).............................................................................. 8

*Grand River Enterprises Six Nations, Ltd. v. King*, 02 Civ. 5068 (JFK), at \*13 (S.D.N.Y. Oct. 14,

    2008)........................................................................................................................................... 9

*Greenberg v. Veteran*, 889 F.2d 418, 421 (2d Cir. 1989)............................................................. 8

*Haley v. Pataki*, 106 F.3d 478, 482 (2d Cir. 1997)....................................................................... 7

*Hertz Corp. v. City of New York*, 1 F.3d 121, 131 (2d Cir. 1993) ............................................... 10

*Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 807, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976).... 9

*Jacoby v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appellate Div. of the*

    *Supreme Court of N.Y.*, 852 F.3d 178, 185 (2d Cir. 2017)....................................................... 10

*John B. Hull, Inc. v. Waterbury Prods., Inc.*, 588 F.2d 24, 28-29 (2d Cir. 1978) ........................ 11

*Juicy Couture Inc. v. Bella Int'l, Ltd.*, 930 F.Supp.2d 489, 505 (S.D.N.Y. 2013) ........................ 13

*Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) .................................................................... 7

*Martinez v. Cuomo* (S.D.N.Y. 2020) ............................................................................................. 13

Mayer v. Wing, 922 F. Supp. 902, 911 (S.D.N.Y. 1996) ................................................................. 8

*Mitchell*, 748 F.2d at 808 ............................................................................................................... 13

*Niemann v. Whalen*, 911 F. Supp. 656, 663 (S.D.N.Y. 1996) ........................................................ 6

*Pan Am. World Airways Inc. v. Flight Eng'rs Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962) . 11

*Petrella v. Siegel*, 843 F.2d 87, 89 (2d Cir. 1988) .......................................................................... 7

*Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) ............................................. 13

*Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008) .......................................................... 13

*Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994) ........................................................................ 6

*Register.com v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) ..................................................... 11

Rockwell *v. Town of Hamden*, 18-3724-cv, at *2 (2d Cir. Apr. 8, 2020) ..................................... 10

*Sajous v. Decker*, 18-cv-2447 (AJN), 29-30 (S.D.N.Y. May. 23, 2018) ..................................... 13

*Salinger*, 607 F.3d at 79-80 .......................................................................................................... 12

*Salinger*, 607 F.3d at 80 (quoting eBay, 547 U.S. at 391) ........................................................... 13

*Scheiner v. Wallace,* 860 F. Supp. 991, 999 (S.D.N.Y. 1994) ....................................................... 6

*Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) .............................................. 11

*Warner Bros.*, 877 F.2d at 1124 ................................................................................................... 11

*West v. Atkins*, 487 U.S. 42, 49 (1988) ......................................................................................... 7

*Whatley v. City of Vidalia*, 399 F.2d 521, 526 (5th Cir. 1968) ..................................................... 8

*Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989) ........................................... 7

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ................................................ 12

*Wisdom Import Sales Co., LLC v. Labatt Brewing Co.*, 339 F.3d 101, 114-115 (2d Cir. 2003).. 12

**Statutes**

42 U.S.C. § 1973i(b) .................................................................................................................... 11

42 U.S.C. § 1983............................................................................................................................ 8, 9

New York State Executive Law § 29-a of Article 2(b) .................................................................. 1

**Other Authorities**

Civil Rights Act of 1964 ............................................................................................................... 10

Executive Order 202.79 .................................................................................................................. 1

Executive Order 202.81 .................................................................................................................. 1

Executive Orders 202.61................................................................................................................. 1

First Amendment ..................................................................................................................... 14, 15

Fourteenth Amendment of the United States Constitution ............................................................ 9

U.S. Const. art. I, § 8, cl. 3............................................................................................................. 11

**Rules**

Fed. R. Civ. P. 65 ....................................................................................................................... 1, 6

Plaintiffs respectfully submit this Memorandum of Law in support of their entry of an Order to Show Cause, pursuant to Fed. R. Civ. P. 65, granting a Temporary Restraining Order barring Governor Cuomo and Mayor de Blasio's enforcement of Executive Order 202.81 and the directives contained in Executive Orders 202.61 as continued in Executive Order 202.79, and scheduling an expedited hearing as to why a preliminary injunction should not be entered, as well as other equitable relief.

## **PRELIMINARY STATEMENT**

Nearly (6) months have passed since COVID-19 became a part of our collective lexicon. During that time, the State's government, led by Governor Cuomo, exclusively wielding all the power of the State's legislation, we have witnessed the historic collapse of the State's economy, the death of 1 out of 6 restaurants and the largest profits in history by some of the largest grocery chains in the country. As the virus advances and withdraws like a well-positioned invading force, our government has failed to identify and develop a least "restrictive means" of operating the State's economy while mitigating the spread of the virus.

New York State Executive Law § 29-a of Article 2(b) authorizes the issuance of executive orders with all the authority of a law introduced and enacted through traditional processes for as long as the executive order remains in effect. Executive orders are subject to the state constitution, the federal constitution as well as federal statutes and regulations.  The Executive Orders, and the restrictions that were born from them, were initially effective in slowing the spread of the virus, are not a long-term solution. These restrictions violate the Constitutional rights of the citizens without affording due process of the law.

The restrictions are not enforced evenly as the State and city governments employ different methods of calculating the positivity rate of the virus, which in turn is used to determine when,

and to what extent restrictions are levied against a region of the State. The discrepancies that exist between the State's calculations and registration of new positive cases of the virus, versus the methods employed by the New York City are cause for an injunction without further evidence. See *Complaint* at ¶¶ 72 – 80. The effect of this unequal application of the laws is that restaurants located in New York City are forced to close or severely alter their operations, while similar businesses outside of New York City continue to operate and profit. On its face one may assume from the enforcement of the restrictions that those restaurants located in New York City have higher overall transmission rates, when in fact, this is not the case at all. Further, the Orders drive people into their homes, where small gatherings have been shown to be one of the highest transmission environments. See *Compl.* ¶ 41

Plaintiffs have undertaken and successfully created an indoor ventilation protocol that is supported by decades of science and whose premise (although altered for specific use) is employed by the airlines who have been permitted to operate with near impunity since the early days of the pandemic. See *Compl.* ¶ 111(iii)

Movants respectfully request that this Court intervene by issuing the temporary restraining order and other equitable relief sought herein to prevent the Governor Cuomo and Mayor De Blasio from further violations of Movants' state and federally protected rights, as a means of ensuring that businesses like that of Movant d/b/a *Seaport House (Hopkins Hawley)* are permitted to remain open to indoor dining immediately, or in the alternative to keep outdoor dining open until 12:30 a.m. on New Year's Eve, and to force the Governor and the Mayor of New York to inspect the ventilation upgrades implemented by Movants to determine their efficacy at mitigating the spread of the virus and in doing so engage with Movants and others towards establishing effective ventilation protocols that may be implemented across the state.

## STATEMENT OF FACTS

The facts relevant to this application are fully set forth in the attached Declaration of d/b/a Seaport House, dated December 29, 2020 (the "Seaport Decl."), the Declaration of The Greater New York Merchants' Alliance, dated December 29, 2020 (the "GNYMA Decl."), the Declaration of Costin Tarsoaga, dated December 29, 2020 (the "CT Decl.") and the Complaint filed December 25, 2020, with attached exhibits. For the sake of efficiency, only those facts necessary to conduct the analysis below will be reproduced herein.

### A. Defendants' Restrictions are not the "Least Restrictive Means" of satisfying the Government's interests

Governor Cuomo's Executive Orders (most recently 202.81 (202.79)) target restaurant owners and businesses like the Plaintiffs and others similarly situated. These business owners, their employees and families will suffer the loss of revenue and the potential of losing businesses and jobs, and healthcare, simply because the Governor has decided that restaurants and bars must completely shut down indoor dining (allowing only outdoor dining in the blistering cold winter season). See *Compl.* ¶ 34. There is no scientific evidence that the Governor's restrictions as they are administered, will have any tangible impact on the transmission of the virus. In fact, there is significant evidence that closing indoor dining results in greater "small gatherings" which in turn lead to spikes in the positivity rate.

The Movants, at their own expense have researched the most scientifically proven ventilation systems to reduce and otherwise eliminate the transmission of the virus in enclosed environments, created a functional blueprint of the design, and implemented these modifications in their establishment. (See *Compl.* Exhibit A). An upgraded ventilation system working in conjunction with operating procedures such as social distancing and maintaining adequate fresh

air flow, could lead to a "Best Practices" protocol that could permit restaurants and similar establishments to open and operate, while protecting patrons from deadly small gatherings.

**B.  Defendant's Administer Restrictions Unequally and at their Discretion**

Governor Cuomo and Mayor De Blasio have varied methods of calculating the daily positivity rate which triggers the issuance of restrictions pursuant to the Governor's orders. The State counts both antigen and *polymerase chain reaction* (" PCR") tests. Which will produce a lower percentage of positive tests. New York City does not include antigen tests in its positivity count, opting to exclusively use PCR tests which are more sensitive and produce higher incidents of positive results. Antigen tests are known to miss positive tests in people carrying relatively insignificant amounts of the virus where many public health experts have stated that PCR tests are too sensitive. See *Compl.* ¶¶ 64, 65.

The State and New York City each report new positive cases in a different manner which manipulates the underlying positivity rate. The State treats a new case as arising on the day the test results came in. New York City dates each new case to the day the sample was provided. So, if an infected person goes to a clinic to have his nose swabbed on Monday, that sample is often delivered to a laboratory where it is tested. If those results are reported to the health authorities on Wednesday, the State and city would record it differently. The State would include it with Wednesday's tally of new cases, while the city would add it to Monday's column. The 3 % threshold is based on a seven-day rolling average. The day that a new case is registered is of maximum importance in determining an accurate positivity rate. See *Compl.* ¶ 66.

These subtle but effective manipulations of the positivity rate have had the tangible impact of New York City restaurants languishing under restrictions constantly while operators in other cities and counties across the State remain open. The administration of the restrictions is unequally

enforced against New York City restaurants although with the current variations in calculation and reporting, there is no way to discern if these restricted regions are in fact experiencing higher positivity rates.

**ARGUMENT**

### I.     Legal Standard

Under Fed. R. Civ. P. 65, in order to obtain a preliminary injunction, a moving party must show: 1) "a likelihood of success on the merits or ...... sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) that "the balance of hardships the plaintiff's favor"; and (4) that the public interest would not be disserved." See *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F. 3d 887, 894-95 (2d Cir. 2015) (initial citations omitted). The Temporary restraining order standard is the same. See, e.g., *Echo Design Grp. V. Zino Davidoff S.A.,* 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).

### II.     Plaintiffs Satisfy the Requirements for a TRO and Preliminary Injunction

#### A.  Plaintiffs Are Likely to Succeed on the Merits

To establish a likelihood of success on the merits, a plaintiff "need not show that success is certain, only that the probability of prevailing is 'better than fifty percent'". *BigStar Entm't, Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 191 (S.D.N.Y. 2000) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)). Plaintiffs can also satisfy the alternative test of "sufficiently serious questions going to the merits to make them a fair ground for litigation" given that the balance of hardships stemming from any limited and temporary relief tips decidedly in their favor. *See Benihana,* 784 F.3d at 894-95.

In the case at bar, the restrictions imposed by Governor Cuomo and enforced by Mayor De Blasio and others have led to ongoing violations of a variety of the Plaintiff's rights that are protected by state and federal laws and their respective constitutions. The Movants have had their livelihoods obliterated based on scientific metrics that vary from one city or county to the next and punish New York City restaurants at a far more aggressive pace than any other area of the State. See *Compl.* ¶¶ 63-71. The Movants have not been afforded, a process or procedure at law to remedy the ongoing deprivations that they, their employees, and patrons continue to suffer. The Governor's Orders and the restrictions that they embody are violations of the Dormant Commerce Clause (see *Compl.* ¶¶ 120 – 128), 42 U.S.C. § 1983, the Fourteenth Amendment to the U.S. Constitution (Due Process Clause) (see *Compl.* ¶¶ 130 – 145), and these restrictions are a deprivation of the fundamental right to publicly assemble and protest the government. See *Compl.* ¶¶ 109 – 118

### i. *42 U.S.C. § 1983*

In order to maintain an action under 42 U.S.C. § 1983, two essential elements must be present. The conduct complained of must have been committed by a person acting under color of state law and must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *See Pitchell v. Callan,*13 F.3d 545, 547 (2d Cir. 1994), see also *Niemann v. Whalen*, 911 F. Supp. 656, 663 (S.D.N.Y. 1996) A private defendant may only be held liable under § 1983 as "a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). The plaintiff bears the burden of proof on this issue, *see Scheiner v. Wallace,* 860 F. Supp. 991, 999 (S.D.N.Y. 1994), and must produce more than conclusory allegations or naked

assertions of joint or conspiratorial action. See *Doe v. Smith,* 704 F. Supp. 1177, 1188-89 (S.D.N.Y. 1988).

Governor Cuomo and Mayor De Blasio are state officials who, when sued in their official capacity for injunctive relief, would be a "person" under § 1983. See *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985). In addition, Plaintiffs' complaint sufficiently alleges that Governor Cuomo and Mayor De Blasio acted under the color of state law. See *West v. Atkins*, 487 U.S. 42, 49 (1988) ("The traditional definition of acting under color of state law requires that the defendant in a Section(s) 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law"). (internal quotation omitted). Finally, plaintiffs' complaint alleges that the defendants' conduct deprived plaintiffs of a right secured by the Fourteenth Amendment of the United States Constitution. See *Haley v. Pataki*, 106 F.3d 478, 482 (2d Cir. 1997)

There is no controversy that Governor Cuomo's alleged actions in violation of the Constitutionally protected rights of the Plaintiffs, acted under the color of state law pursuant to New York Executive Law § 29(a) of Article 2(b), and that Mayor De Blasio's actions are authorized by the Governor in his official capacity. There is also no controversy that as a direct result of the Governor's issuance of the Executive Orders and the enforcement of the restrictions therefrom, the Plaintiffs and citizens across the State have suffered immeasurable losses without the benefit of due process of law. See *Petrella v. Siegel*, 843 F.2d 87, 89 (2d Cir. 1988) ("Regardless of possible state law remedies, interference with such a right without due process protections is a violation of the fourteenth amendment subject to redress under 42 U.S.C. § 1983."), see also *Carfora v. City of New York*, 705 F. Supp. 1007, 1008 (S.D.N.Y. 1989) ("In order to state

a claim for a violation of the Due Process Clause under § 1983, plaintiff must allege the deprivation under color of state law of a constitutionally protected right without due process.")

In the current case, the Defendants behavior is the proximate cause of the deprivations of Movants' Constitutional rights without the benefit of due process. Further, living under the constant threat of the loss of liberties at the whim of the State's Governor and New York City's Mayor, the Movants' **CORE CONSTITUTIONAL** rights are constantly under attack.

### ii.     *Due Process Clause*

To maintain a due process claim, a plaintiff must demonstrate that he/she was deprived of a protected right. See *Anderson v. Marr,* 10 Civ. 818 (SHS) (FM), at *21 (S.D.N.Y. July 18, 2011) ("As noted previously, to state a procedural due process claim, a plaintiff first must demonstrate that he was deprived of a liberty interest.") *Mayer v. Wing,* 922 F. Supp. 902, 911 (S.D.N.Y. 1996) ("Thus, Plaintiffs can prevail on this claim if they can demonstrate that they have been denied due process."). In the current case, Plaintiffs allege several violations of their Constitutional and protected rights, and that Defendants have deprived them of those rights without the benefit of due process.

The Movant must show that the right allegedly denied arises under a federal law providing for specific civil rights and that the Movant is denied or cannot enforce the specified federal rights in the state court. *Georgia v. Rachel*, 384 U.S. 780, 788 (1966) (holding that removal under § 1443 of the defendants' state criminal prosecution for trespass was proper, because the very act of prosecuting them for non-forcibly seeking admittance to restaurants open to the public violated the Civil Rights Act of 1964); *Greenwood v. Peacock*, 384 U.S. 808, 828 (1966) (holding that removal is unavailable if   the defendant's conduct is not protected by the federal law); *Greenberg v. Veteran*, 889 F.2d 418, 421 (2d Cir. 1989); *Whatley v. City of Vidalia*, 399 F.2d 521, 526 (5th Cir.

1968) (interpreting essentially identical language contained in the Voting Rights Act, 42 U.S.C. § 1973i(b), and held that the mere bringing of the action in state court would deny these defendants their federally protected right if they could establish that the action was brought against them because of their exercise of their federal right to assist others in registering to vote).

The is no question that Plaintiffs' rights that have been violated are protected by the United States Constitution and federal laws. The Defendants violated the due process clause of the Constitution and continue to do so as long as the Executive Orders remain in effect.

### iii. *Dormant Commerce Clause*

In order to assert a violation of the dormant commerce clause a plaintiff must show that the State's Executive Orders affect and otherwise control commerce outside of the State's borders. The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has explained that "the [Commerce] Clause was designed in part to prevent trade barriers that had undermined efforts of the fledgling States to form a cohesive whole following their victory in the Revolution." *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 807, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). In the eloquent words of Justice Jackson,

> "Our system, fostered by the Commerce Clause, is that every farmer and every craftsman shall be encouraged to produce by the certainty that he will have free access to every market in the Nation, that no home embargoes will with-hold his export, and no foreign state will by customs duties or regulations exclude them. Likewise, every consumer may look to the free competition from every producing area in the Nation to protect him from exploitation by any. Such was the vision of the Founders; such has been the doctrine of [the Supreme] Court which has given it reality."

"As the Second Circuit made clear in *Freedom Holdings,* to prevail on the dormant commerce clause claim, Plaintiff must show that the restraints have 'the practical effect of controlling

commerce occurring wholly outside that State's borders.'") See *Grand River Enterprises Six Nations, Ltd. v. King*, 02 Civ. 5068 (JFK), at *13 (S.D.N.Y. Oct. 14, 2008).

In the case at bar, the State's orders and restrictions discriminate against interstate commerce. See *Hertz Corp. v. City of New York*, 1 F.3d 121, 131 (2d Cir. 1993) ("To make out a claim that this regulation impermissibly burdens the commerce clause, *Hertz* must sufficiently plead that the local law discriminates against interstate commerce either on its face, or in its effect."). On its face, the Governor's Executive Orders place interstate commerce under the Governor's control and prevents the free flow of commerce between State business owners and out of state business owners.

### iv.      First Amendment: Right to Assemble

It is fundamental that our constitutions accord to the citizen of the United States the right of freedom of speech and of assembly and to peaceably petition for a redress of grievances. Such freedoms are jealously guarded and when exercised in good faith and in good order may not be lawfully interfered with by governmental action. See *Jacoby v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appellate Div. of the Supreme Court of N.Y.*, 852 F.3d 178, 185 (2d Cir. 2017) ("The First Amendment prohibits the enactment of any law 'abridging ... the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'")

In the current case, the imposition of the State's restrictions is a violation of the Movants' First Amendment Right to Assemble. See *Rockwell v. Town of Hamden*, 18-3724-cv, at *2 (2d Cir. Apr. 8, 2020) ("The First Amendment protects the right to peaceably assemble."). The Movants have properly ventilated their establishments, at their cost. They have designed and implemented scientifically proven methods of mitigating the transmission of the virus. The Government's

continued deprivation of the Movant's rights without regard for the actual circumstances rises to a violation of the Movant's First Amendment Right to Assemble.

### III.   Absent an Injunction, Plaintiffs will be Irreparably Injured

A temporary restraining order is designed to preserve the *status quo*. "The purpose of a temporary restraining order is to preserve an existing situation in *status quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Pan Am. World Airways Inc. v. Flight Eng'rs Int'l Ass'n*, 306 F.2d 840, 842-43 (2d Cir. 1962). The Plaintiffs and those who are similarly situated are business owners, employers and members of a community that is being decimated by a relentless virus and a power thirsty/inept Government. The current circumstances threaten to kill even more restaurants in the New York City area while foregoing the same level of devastating impact on other parts of the State. The timing of this application is critical as New Year's Eve approaches and without intervention, untold numbers of citizens will be driven into small gatherings where positivity rates are known to skyrocket (**GRANTING OF THIS TRO WOULD SAVE COUNTLESS LIVES OF NEW YORK CITY RESIDENTS**).

Second Circuit law recognizes that "[a] threat to the continued existence of a business can constitute irreparable injury." *John B. Hull, Inc. v. Waterbury Prods., Inc*., 588 F.2d 24, 28-29 (2d Cir. 1978) (citing *Semmes Motors, Inc. v. Ford Motor Co*., 429 F.2d 1197, 1205 (2d Cir. 1970)). A threatened loss of good will also supports a finding of irreparable injury. See *Register.com v. Verio, Inc*., 356 F.3d 393, 404 (2d Cir. 2004) (affirming finding that loss of reputation, good will, and business opportunities constituted irreparable harm).

To demonstrate irreparable harm, a plaintiff must show an injury that is "actual and imminent" and "cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (citation and internal quotation marks omitted). A

court may grant a temporary restraining order to preserve the status quo before a hearing can occur

on the merits of a party's preliminary injunction motion. *Warner Bros*., 877 F.2d at 1124; see also

*AIM Int'l Trading LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 387 (S.D.N.Y. 2002) (sine qua non

"of a temporary restraining order is to preserve an existing situation in status quo until the court

has an opportunity to pass upon the merits of the demand for a preliminary injunction"). The Court

has previously ruled that threats of financial hardship or control are threats of 'irreparable injury".

See *Wisdom Import Sales Co., LLC v. Labatt Brewing Co*., 339 F.3d 101, 114-115 (2d Cir. 2003));

*Danaher Corp. v. Chicago Pneumatic Tool Co., Nos*. 86 Civ. 3499 (PNL), 86 Civ. 3638 (PNL),

1986 WL 7001, at 14 (S.D.N.Y. June 19, 1986) (granting preliminary injunction to plaintiff

shareholders so that they could "exercise their rightful control over the corporation").

Plaintiffs' injuries are actual and will continue to accrue as long as the Executive Orders

are enforced. These are circumstances that are completely avoidable by the issuance of the

injunction sought through this action. Monetary compensation cannot remedy the continuing civil

rights violations occurring if these Executive Orders can remain and the Defendants can go

unchecked with the haphazard enforcement of their restrictions. Moreover, monetary

compensation **<u>cannot</u>** save countless lives of New York City residents who will seek refuge at

private, unsafe indoor gatherings. The total potential losses to the Plaintiffs and others who are

similarly situated is incalculable. The Plaintiffs' constitutional rights and business ownership are

at stake.

## IV.     <u>The Balance of Hardships Tips in the Plaintiffs' Favor</u>

In considering a motion for a preliminary injunction, the court "must balance the competing

claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief." See *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008). Plaintiffs

must establish that the balance of hardships tips in their favor regardless of the likelihood of success. See *Salinger*, 607 F.3d at 79-80. In addition, a court may award preliminary injunctive relief only if the "public interest would not be disserved." Id. at 80. The hardship that will be incurred by the Plaintiffs and those who are similarly situated will have a long-lasting, irreparable, and devastating impact that will increase over time as the restrictions continue to accrue against the normal revenues generated by Plaintiffs and those similarly situated. The public is best served by the issuance of the relief sought by this action as more citizens will be permitted to go out of their homes and into larger, well controlled, well ventilated establishments where their health and safety are paramount. The state has no claim of hardship that will occur that is not outweighed by the magnitude of the harm that has been and will be suffered by Plaintiffs. See *Martinez v. Cuomo* (S.D.N.Y. 2020)

## V.    The Public Interest Will not be Disserved

Finally, the Court must " ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger*, 607 F.3d at 80 (quoting eBay, 547 U.S. at 391), *Juicy Couture Inc. v. Bella Int'l, Ltd*., 930 F.Supp.2d 489, 505 (S.D.N.Y. 2013). In this case, the issuance of an injunction will prevent the Plaintiffs and others who are similarly situated from incurring devastating financial losses and prevent untold citizens from being driven into small gatherings where the transmission and positivity rates soar, and **where lives are placed at risk**. The public interest will not be disserved by the issuance of an injunction. The public interest will be best served by the issuance of a TRO and injunction. The public interest is best served by ensuring the constitutional rights of persons within the United States are upheld. *See Mitchell*, 748 F.2d at 808; *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled in part by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012) (en banc); *Abdi v. Duke*, 280 F.

13

Supp. 3d 373, 410 (W.D.N.Y. 2017), *Sajous v. Decker*, 18-cv-2447 (AJN), 29-30 (S.D.N.Y. May. 23, 2018).

## **CONCLUSION**

Based on the foregoing, we respectfully request the Court to immediately grant Plaintiffs' Motion for Preliminary Injunction with a Temporary Restraining Order.


Dated: December 30, 2020
       New York, New York

**/s/ MIGIR ILGANAYEV**
MIGIR ILGANAYEV
*Attorney for the Plaintiffs*
139 Fulton Street, Suite 801
New York, New York 10038
ILGANAYEVLAW@GMAIL.COM


**/s/ KIAN D. KHATIBI**
KIAN D. KHATIBI
*Attorney for the Plaintiffs*
99 JOHN STREET, SUITE 2205
New York, New York 10038
KIAN@NYSLEGSAL.COM

## CERTIFICATE OF SERVICE

We hereby certify that, on December 30, 2020, we electronically filed this Plaintiffs' Memorandum of Law in Support of their Application for Temporary Restraining Order and Equitable Relief and Order to Show Cause Why a Permanent Injunction Should Not be Issued with the Clerk of the Court via email upon Defendants Andrew Cuomo at julinda.dawkins@ag.ny.gov, and upon Bill De Blasio, the New York City Department of Finance, and the New York City Sheriff's Department to the Corporation Counsel of the City of New York by email at ServiceECF@law.nyc.gov.

**/s/ MIGIR ILGANAYEV**
MIGIR ILGANAYEV
*Attorney for the Plaintiffs*
139 Fulton Street, Suite 801
New York, New York 10038
ILGANAYEVLAW@GMAIL.COM

**/s/ KIAN D. KHATIBI**
KIAN D. KHATIBI
*Attorney for the Plaintiffs*
99 JOHN STREET, SUITE 2205
New York, New York 10038
KIAN@NYSLEGSAL.COM