UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- x

d/b/a **SEAPORT HOUSE (HOPKINS HAWLEY LLC),**
**THE GREATER NEW YORK MERCHANTS'**
**ALLIANCE,** and **COSTIN TARSOAGA**,
  On behalf of themselves and all others similarly situated,

                                        Plaintiffs,

                                                        20-CV-10932 (PAC)

                        -against-


**ANDREW M. CUOMO,** in his personal and official
capacity as Governor of the State of New York, **THE**
**NEW YORK CITY DEPARTMENT OF FINANCE,**
**THE NEW YORK CITY SHERIFF'S DEPARTMENT,**
and **MAYOR DE BLASIO**, in his personal and official
capacity as Mayor of the City of New York,

                                        Defendants.

--------------------------------------------------------------------- x


## CITY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIIMINARY INJUNCTION

                                JAMES E. JOHNSON
                                Corporation Counsel of the
                                        City of New York
                                Attorney for Defendants Mayor de
                                Blasio, New York City Department of
                                Finance and New York City Sheriff's
                                Department
                                100 Church Street
                                New York, New York 10007

SHERYL NEUFELD
MICHELLE GOLDBERG-CAHN
KERRI A. DEVINE
SAMANTHA SCHONFELD

                Of Counsel.

January 13, 2021

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................ 2

STATEMENT OF FACTS ..................................................................... 4

ARGUMENT………………………………………………………………...8

     POINT I………………………………………………………………...8

     POINT II…………………………………………………………………25

     POINT III…………………………………………………………………..25

CONCLUSION ................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

In Re Abbott,
   954 F. 3d 772 (5th Cir Apr. 7, 2020) .........................................................................9

Agudath Israel of America v. Cuomo,
   2020 U.S. App. LEXIS 40417 (2d Cir. Dec. 28, 2020) ...........................................9

Amato v. Elicker,
   460 F. Supp. 3d 202 (D. Ct. May 19, 2020) ..........................................................10

Antietam Battlefield KOA v. Hogan,
   461 F. Supp. 3d 214 (D. Md. May 20, 2020)...........................................19, 20, 21

Ass's of Jewish Camp Operators v. Cuomo,
   2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020).......................................10

Benner v. Wolf,
   No. 20-cv-775, 2020 U.S. Dist. LEXIS 89425 (M.D. Pa. May 21, 2020).............16

Bery v. City of New York,
   97 F.3d 689 (2d Cir. 1996), cert. denied, 520 U.S. 1251 (1997) .........................7, 8

Board of Regents v. Roth,
   408 U.S. 564 (1972)...............................................................................................13

Bocelli Ristorante Inc. v. Cuomo,
   2020 N.Y. Misc. LEXIS 10213 (Sup. Ct. Rich. Co. Nov. 6, 2020).................10, 15

Cantazaro v. Weiden,
   188 F.3d 56 (2d Cir. 1998)....................................................................................16

Cent. Rabbinical Cong. of the United States v. NYC Dep't of Health & Mental
   Hygiene,
   763 F.3d 183 (2d. Cir. 2014).....................................................................................7

College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
   527 U.S. 666 (1999)...............................................................................................14

Columbus Ale House, Inc. v. Cuomo,
   2020 U.S. Dist. LEXIS 191828 (E.D.N.Y. Oct. 15, 2020)..................10, 11, 15, 26

County of Sacramento v. Lewis,
   523 U.S. 833 (1998)...............................................................................................17

Dallas v. Stanglin,
    409 U.S. 19 (1989).............................................................................................23

Dark Storm Indus, LLC v. Cuomo,
    2020 U.S. Dist. LEXIS 120514 (N.D.N.Y. July 8, 2020)....................................11, 12

Faiveley transp. Malmo AB v. Wabtec Corp.,
    559 F.3d 110 (2d Cir. 2009)..................................................................................8

Geller v. de Blasio,
    2020 U.S. Dist. LEXIS 87405 (S.D.N.Y May 18, 2020).........................................8

Givens v. Newsom,
    459 F. Supp. 3d 1302 (E.D.C.A. 2020)..................................................................22

H's Bar, LLC v. Berg,
    2020 U. S. Dist. LEXIS 218371 (S.D. Ill. November 21, 2020) .......................10, 23

Hartman v. Acton,
    2020 U.S. Dist. LEXIS 72068 (S.D. Ohio April 21, 2020) .....................................14

Hodel v. Va. Surface Mining & Reclamation Ass'n,
    452 U.S. 264 (1981)............................................................................................16

Hu v. City of New York,
    927 F. 3d 81 (2d Cir. 2019).............................................................................15, 16

Jacobson v. Massachusetts,
    197 U.S. 11, 25 S. Ct. 358 (1905)....................................................................3, 9, 10

Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth
    Dep'ts,
    852 F.3d 178 (2d Cir. 2017)..................................................................................22

Jones v. Schneiderman,
    974 F. Supp. 2d 322 (S.D.N.Y. 2013)...................................................................18

JWJ Indus., Inc., v. Oswego Cty.,
    538 F. App'x 11 (2d Cir. 2013) ............................................................................16

League of Indep. Fitness Facilities & Trainers v. Whitmer,
    2020 U.S. Dist. LEXIS 110884 (W.D. MI. June 19, 2020)....................................10

Logan v. Zimmerman Brush Co.,
    455 U.S. 422 ......................................................................................................14

McCarthy v. Cuomo,
    2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) ...................................10

Michaelidis v. Berry,
    502 Fed Appx. 94 (2d Cir. 2012)............................................................23

Michigan Rest. & Lodging Ass'n v. Gordon,
    No. 1:20-cv-1104, 2020 U.S. Dist. LEXIS 220880 (W.D. Mich. Nov. 20,
    2020) ..............................................................................................18, 19, 21

N.Y. Progress and Prot. PAC v. Walsh,
    733 F.3d 488 (2d Cir. 2013)....................................................................8

New York City C.L.A.S.H. v. City of New York,
    315 F.Supp. 2d 461 (S.D.N.Y. 2004)....................................................23

New York Pet Welfare Ass'n v. City of New York,
    143 F. Supp. 3d 50 (E.D.N.Y. 2015), aff'd 850 F.3d 79 (2d Cir. 2017), cert
    denied, 138 S. Ct. 131 (2017) ...............................................................13

New York v. United States Dep't of Homeland Sec.,
    969 F. 3d 42 (2d Cir. 2020).....................................................................25

Northern Southern Corp. v. Oberly,
    822 F.2d 388 (3d Cir. 1987)....................................................................21

Ohralik v. Ohio State Bar Ass'n,
    436 U.S. 447 (1978)..................................................................................22

Oregon Rest. & Lodging Ass'n v. Brown,
    No. 3:20-cv-02017-YY, 2020 U.S. Dist. LEXIS 220414 (D. Or. Nov. 24,
    2020) .................................................................................................20, 21

Page v. Cuomo,
    2020 U. S. Dist LEXIS 183769 (N.D.N.Y Aug. 11, 2020) .......................10, 16, 18

Parratt v. Taylor,
    451 U.S. 527 (1981)..................................................................................16

Phila. Rest. Owners Against Lockdown, LLC v. Kenney,
    2020 U.S. Dist. LEXIS 220853 (E.D. Pa November 20, 2020).............................26

Pike v. Bruce Church Inc.,
    397 U.S. 137 (1970)..................................................................................21

Plaza Health Labs., Inc. v. Perales,
    878 F.2d 577 (2d Cir. 1989).......................................................................7

Poe v. Leonard,
    282 F.3d 123 (2d Cir. 2002) (applying Sacramento) ...........................................17

Pollok v. Chen,
    2020 U.S. App. LEXIS 9261 (2nd Cir. 2020), 2020 WL 1456495 ........................................17

Roberts v. U.S. Jaycees,
    468 U.S. 609 (1984)..................................................................................................22, 24

Roman Catholic Diocese v. Cuomo,
    208 L. Ed. 2d 206 (2020) ..............................................................................................9, 24

In re Rutledge,
    956 F.3d 1018 (8th Cir 2020) ...........................................................................................9

S. Bay United Pentecostal Church v. Newsom,
    140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring) .................................11

Sanitation and Recycling Indus. v. City,
    925 F. Supp. 407 (S.D.N.Y. 1996) ..................................................................................14

Savage v. Mills,
    2020 U.S. Dist. LEXIS 141628 (D. Me. Aug. 7, 2020).....................................................15, 16

SH3 Health Consulting, LLC v. Page,
    459 F. Supp. 3d 1212 (E.D.M.O. 2020).............................................................................23

Smith v. Half Hollow Hills Cent. School Dist.,
    298 F.3d 168 (2d Cir. 2002)............................................................................................17

Sunward Electronics, Inc. v. McDonald,
    362 F.3d 17 (2d. Cir. 2004).............................................................................................8

Town of Southold v. Town of E. Hampton,
    477 F.3d 38 (2d Cir. 2007)..............................................................................................19

Trump v. Deutsche Bank
    AG, 943 F.3d 627 (2d Cir. 2019).......................................................................................7

Velez v. Levy,
    401 F.3d 75 (2d Cir. 2005)..............................................................................................17

Ward v. Rock Against Racism,
    491 U.S. 781 (1989)......................................................................................................24

Wine & Spirits Retailers, Inc. v. Rhode Island,
    418 F.3d 36 (5th Cir. 2005) .......................................................................................22, 23

World Gym, Inc. v. Baker,
    2020 U.S. Dist. LEXIS 131236 (D. Mass. July 24, 2020)................................................16, 18

Young v. James,
    2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020) .................................................10

Defendants, the NEW YORK CITY DEPARTMENT OF FINANCE, THE NEW YORK CITY SHERIFF'S DEPARTMENT, and MAYOR BILL DE BLASIO, in his personal and official capacity as Mayor of the City of New York ("Mayor de Blasio") (collectively "City defendants") by their attorney, JAMES E. JOHNSON, Corporation Counsel of the City of New York, submit this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction.[1]

## PRELIMINARY STATEMENT

Plaintiffs, a restaurant, a non-profit entity purporting to represent restaurant owners, and a restaurant worker, bring this putative class action challenging the State's restrictions on restaurants in New York City issued in response to the unprecedented public health crisis caused by the outbreak of the COVID-19 virus.  Specifically, plaintiffs are seeking to enjoin the restrictions put in place by New York State Executive Order ("State E.O.") No. 202.81, which bans indoor dining in New York City, and the directives contained in State E.O. 202.61 and continued on in State E.O. 202.79 ("Challenged Orders.") which prohibits in-person dining, outdoors or indoors when permitted, from 10:00 p.m. to 5:00 a.m. at New York City restaurants.[2]  See Plaintiffs' Memorandum of Law in Support of Their Application for a Temporary Restraining Order, Equitable Relief and Order to Show Cause Why A Preliminary Injunction Should Not be Issued, dated December 30, 2020 ("PI Memo").

---

[1] Plaintiffs filed an application for a Temporary Restraining Order on December 30, 2020 seeking to enjoin the City's enforcement of the Challenged Orders.  That application was denied by this Court January 8, 2021.  See Docket No. 32.

[2] With the exception of seeking to certify a class, plaintiffs seek the same relief in the PI Memo as they do in the Complaint.

Plaintiffs base their motion for a preliminary injunction on their claims that the Challenged Orders violate their procedural and substantive due process rights, discriminate against interstate commerce in violation of the Dormant Commerce Clause, and violate their First Amendment right to assemble.[3]  See PI Memo at pp. 8-11.  All fail as a matter of law. As such, plaintiffs are unable to demonstrate a likelihood of success on the merits of their claims and their application for a preliminary injunction must be denied.

As an initial matter, plaintiffs are not likely to succeed on the merits of their claims against the City defendants as all of the Challenged Orders at issue herein were made or issued by the State. In any event, even if any of the orders challenged herein were attributable to City defendants, plaintiffs fail to establish that such actions were unconstitutional in light of the deferential standard set forth in Jacobson v. Massachusetts, which held that measures implemented to protect the public health will not be disturbed unless it has no "real or substantial" relation to its objects or, is beyond all question, "a plain, palpable invasion of rights secured by the fundamental law."  197 U.S. 11, 31 (1905).

Even if Jacobson were not applicable, plaintiffs' claims still are not likely to succeed under traditional analyses. Plaintiffs' procedural due process claim is not likely to succeed as: the Challenged Orders are legislative in nature and not subject to due process protections, plaintiffs have failed to identify a protectable property interest, and, in any event, plaintiffs were not entitled to a pre-deprivation hearing prior to the imposition of the Challenged Orders. Plaintiffs' substantive due process claim similarly is not likely to succeed as it cannot be

---

[3] Plaintiffs fail to articulate a separate claim pursuant to 42 U.S.C. § 1983, however, such a claim would fail as plaintiffs are not likely to succeed on the merits of their claims and the Complaint lacks any allegations of Mayor de Blasio's personal involvement with respect to the underlying claims.

said that the Challenged Orders, which were issued to protect the health of City residents during an unprecedented global pandemic, shocks the conscience. Moreover, plaintiffs' Freedom of Assembly claim lacks merit in that is not predicated on a right to assemble for an expressive purpose. Finally, plaintiffs' Dormant Commerce Clause claim fails because: (1) the Challenged Orders do not regulate conduct nor directly control commerce outside of New York; (2) the Challenged Orders are not discriminatory on their face, in their purpose or in their effect; and (3) any incidental effects on interstate commerce from the Challenged Orders are not "clearly excessive" in comparison to the local benefits of curbing the spread of COVID-19. Accordingly, plaintiffs' motion for a preliminary injunction should be denied.

## STATEMENT OF MATERIAL FACTS

### The COVID-19 Public Health Crisis

In response to the outbreak of COVID-19 in New York State, on March 7, 2020, New York State Governor Andrew Cuomo ("Governor Cuomo") declared a formal state of emergency in the State of New York.  See Declaration of Samantha Schonfeld, dated January 13, 2021 ("Schonfeld Dec.") Ex. "A." On March 12, 2020, Mayor Bill de Blasio declared a state of emergency in New York City.  See New York City Emergency Executive Order No. 98.  Id. Both New York State and New York City then implemented various regulations aimed at preventing the spread of the COVID-19 virus.

Thereafter, Governor Cuomo issued State E.O. No. 202.3 which states that "[n]o local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law . . . ." and State E.O. No. 202.5 which states that "no locality or political subdivision shall issue any local emergency

- 4 -

order or executive order with respect to response of COVID-19 without the approval of the State

Department of Health."  See Schonfeld Dec., Exhibits "B" and "C."

On March 18, 2020, Governor Cuomo issued State E.O. No. 202.6, which states,

in pertinent part:

> Effective on March 20 at 8 p.m.: All businesses and not-for-profit
> entities in the state shall utilize, to the maximum extent possible,
> any telecommuting or work from home procedures that they can
> safely utilize . . . Any essential business or entity providing
> essential services or functions shall not be subject to the in-person
> restrictions.   This includes essential health care operations
> including research and laboratory services; essential infrastructure
> including utilities, telecommunication, airports and transportation
> infrastructure; essential manufacturing, including food processing
> and pharmaceuticals; essential retail including grocery stores and
> pharmacies; essential services including trash collection, mail, and
> shipping services; news media; banks and related financial
> institutions; providers of basic necessities to economically
> disadvantaged populations; construction; vendors of essential
> services necessary to maintain the safety, sanitation and essential
> operations of residences or other essential  businesses; vendors that
> provide essential services or products, including logistics and
> technology support, child care and services needed to ensure the
> continuing operation of government agencies and provide for the
> health, safety and welfare of the public . . . .

See Schonfeld Dec., Exhibit "D."

**Restrictions on Restaurants**

On March 16, 2020, Governor Cuomo issued State E.O. No. 202.3 prohibiting

indoor dining at restaurants throughout the State, but permitting restaurants to provide take-out

and delivery service.  See Schonfeld Dec., Exhibit "B."

The prohibition on indoor dining throughout the State was lifted on June 12, 2020

for regions in Phase 3 of the State's four-phase reopening timeline pursuant to State E.O. No.

202.41, subject to additional guidance from the State.  <u>See</u> Exhibit "E."  State guidance provided that indoor dining in those regions in Phase 3 was limited to 50% capacity.  <u>See</u> https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/ Indoor_and_Outdoor_Food_Services_Detailed_Guidelines.pdf (last accessed Oct. 22, 2020).  At that time New York City was in Phase 1 of the reopening process.  New York City reached Phase 3 on July 6, 2020 and Phase 4 on July 20, 2020.

On July 6, 2020, Governor Cuomo issued State E.O. 202.48 extending the prohibition on indoor dining in New York City. <u>See</u> Schonfeld Dec., Exhibit "F."

On September 9, 2020, Governor Cuomo issued State E.O. No. 202.61 which, *inter alia*, lifted the ban on indoor dining in New York City beginning September 30, 2020, subject to additional restrictions set by the State.  <u>See</u> Schonfeld Dec., Exhibit "G."

The State-issued guidance, which is binding on New York City pursuant to State E.O. No. 202.61, provided, *inter alia*, that indoor dining in New York City must be, "limited to no more than 25% of the maximum occupancy for a particular area as set by the certificate of occupancy, exclusive of employees." <u>See</u> Interim Guidance For New York City Indoor Food Services During the Covid-19 Public Health Emergency, https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/NYC_Indoor_Food_Servic es_Detailed_Guidance.pdf, (last accessed on October 17, 2020).  That State guidance also provided that the 25% occupancy restriction would be, "reassessed by no later than November 1, 2020 in contemplation of an increase from 25% to 50% capacity so long as the rate of Covid-19 transmission has not increased."  <u>Id.</u>

On November 12, 2020, Governor Cuomo issued State E.O. 202.74 directing that in-person dining, whether outdoors or indoors, cease at 10:00 p.m. throughout the State. <u>See</u>

Schonfeld Dec., Exhibit "H." Thereafter, on December 11, 2020, by State E.O. No. 202.81, Governor Cuomo suspended the authorization for indoor dining in New York City, effective December 14, 2020. See Schonfeld Dec., Exhibit "I."

All of the State E.O.s are incorporated by reference in the New York City Executive Orders, as pursuant to State E.O. No. 202.3, New York City must comply with the State E.O.s and cannot impose less restrictive conditions. See, e.g., New York City E.O. No. 150 which provides, "This Order incorporates any and all relevant provisions of Governor Executive Order No. 202 and subsequent orders issued by the Governor of New York State to address the State of Emergency declared in that Order pursuant to his powers under section 29-a of the Executive Law." Schonfeld Dec., Exhibit "G."

## LEGAL STANDARD

Plaintiffs fail to satisfy the standards for a preliminary injunction. In order to establish their entitlement to the drastic remedy of a preliminary injunction against government action taken in the public interest, plaintiffs must establish: (1) that they will be irreparably injured if the relief sought is not granted; (2) that they are likely to succeed on the merits of their claims; (3) that a balance of the hardships tips decidedly in their favor; and (4) that an injunction would be in the public interest. See Trump v. Deutsche Bank AG, 943 F.3d 627, 637-640 (2d Cir. 2019) (citations omitted); Cent. Rabbinical Cong. of the United States v. NYC Dep't of Health & Mental Hygiene, 763 F.3d 183, 192 (2d. Cir. 2014); Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). See also Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996), cert. denied, 520 U.S. 1251 (1997). However, whereas here, the movant seeks to alter the status quo, i.e., allow indoor dining which has been banned since December 14, 2020 and lift the restriction on in-person dining after 10:00 p.m., in place since November 12, 2020, rather than

maintain it, a heightened standard is applicable.  When seeking such a mandatory injunction, plaintiffs must show "a 'clear' or 'substantial' likelihood of success." <u>Sunward Electronics, Inc. v. McDonald</u>, 362 F.3d 17, 24 (2d. Cir. 2004), quoting <u>Thomas Doherty Assocs. v. Saban Entm't, Inc.</u>, 60 F.3d 27, 34 (2d Cir. 1995).

The Second Circuit has held that "[v]iolations of First Amendment rights are commonly considered irreparable injuries for the purposes of a preliminary injunction," <u>Bery</u>, 97 F.3d at 693. "Although a showing of irreparable harm is often considered the 'single most important prerequisite for the issuance of a preliminary injunction,' <u>Faiveley transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted), '[c]onsideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor.' <u>N.Y. Progress and Prot. PAC v. Walsh</u>, 733 F.3d 488 (2d Cir. 2013)." <u>Geller v. de Blasio</u>, 2020 U.S. Dist. LEXIS 87405, at *6 (S.D.N.Y May 18, 2020).

## ARGUMENT

### POINT I

**PLAINTIFFS FAIL TO SHOW A CLEAR OR
SUBSTANTIAL LIKELIHOOD OF SUCCESS
ON THE MERITS OF THEIR CLAIMS.**

Plaintiffs are unable to succeed on the merits of their claims as they relate to the City defendants. Preliminarily, it is important to note that the Challenged Orders were issued by New York State. The City is not free to disregard the State E.Os.  In fact, State E.O. Nos. 202.3 and 202.5 require the City to adhere to any State Executive Orders and the determinations of the New York State Department of Health. <u>See</u> Schonfeld Dec., Exhibits "B" and "C."  Accordingly, it is clear that Plaintiffs challenge the State's actions in responding to the COVID-19 public

health emergency, and any actions taken by City defendants follow the New York State Executive Orders.

**A. Plaintiffs' claims fail pursuant to the standard set forth in <u>Jacobson v. Massachusetts</u>**

As early as 1905, the Supreme Court, in the seminal case <u>Jacobson v. Massachusetts,</u> 197 U.S. 11, 31, 25 S. Ct. 358, 363 (1905), acknowledged that "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." <u>Jacobson,</u> 197 U.S. at 26. In <u>Jacobson</u>, the Supreme Court set forth a deferential standard when reviewing a statute "purporting to have been enacted to protect the public health, the public morals or the public safety," but which allegedly violates a fundamental right. <u>Jacobson</u>, 197 U.S. at 31. Such a statute must not be disturbed unless it "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law..." <u>Id.</u> In other words, "this review [is] asking whether power had been exercised in an 'arbitrary, unreasonable manner,' or through 'arbitrary and oppressive' regulations." <u>In Re Abbott</u>, 954 F. 3d 772, 784 (5th Cir Apr. 7, 2020) (quoting <u>Jacobson</u> at 28, 38).

The standard set forth in <u>Jacobson</u> applies to this case.[4] Indeed, courts across the nation have applied the "real or substantial relation" standard when addressing challenges to orders curtailing constitutional rights during the COVID-19 pandemic. <u>See</u>, <u>e.g.</u>, <u>In re Rutledge</u>,

---

[4] This is notwithstanding the recent decisions in <u>Roman Catholic Diocese v. Cuomo</u>, 208 L. Ed. 2d 206 (2020) and <u>Agudath Israel of America v. Cuomo,</u> 2020 U.S. App. LEXIS 40417 (2d Cir. Dec. 28, 2020) which are distinguishable from the instant case in that they involved the application of strict scrutiny to plaintiffs' Free Exercise claims, which are not at issue here. While plaintiffs appear to assert that strict scrutiny is applicable herein, there is no support for such application. <u>See</u> Complaint at footnote 1.

956 F.3d 1018 (8th Cir 2020) (finding that "the district court's failure to apply the Jacobson framework produced a patently erroneous result"); Young v. James, 2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020); Columbus Ale House, Inc. v. Cuomo, 2020 U.S. Dist. LEXIS 191828 *7 (E.D.N.Y. Oct. 15, 2020); H's Bar, LLC v. Berg, 2020 U. S. Dist. LEXIS 218371 (S.D. Ill. November 21, 2020) (applying Jacobson to freedom of assembly claim in denying motion to enjoin COVID-19 related orders, including an indoor dining ban); Ass's of Jewish Camp Operators v. Cuomo, 2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020) (collecting cases); League of Indep. Fitness Facilities & Trainers v. Whitmer, 2020 U.S. Dist. LEXIS 110884 (W.D. MI. June 19, 2020) (applying the Jacobson standard and noting that the Court must uphold the state's orders "unless they have no real or substantial relation" to the public health crisis or the challenged governmental action is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law"); McCarthy v. Cuomo, 2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) (collecting cases); Amato v. Elicker, 460 F. Supp. 3d 202 (D. Ct. May 19, 2020)(applying Jacobson to freedom of assembly claim in denying motion to enjoin COVID-19 related orders, including an indoor dining ban); Bocelli Ristorante Inc. v. Cuomo, 2020 N.Y. Misc. LEXIS 10213 *15 (Sup. Ct. Rich. Co. Nov. 6, 2020).

There is no doubt that the restrictions on in-person dining have a "real or substantial relation" to reducing the spread of COVID-19, a pandemic that resulted in over 25,500 confirmed or probable deaths of New Yorkers. See Declaration of Dr. Jay Varma, M.D., sworn to on January 13, 2021 ("Varma Dec.") at ¶18. See, e.g., Ass'n of Jewish Camp Operators, 2020 U.S. Dist. LEXIS 117765 at *22; McCarthy, 2020 U.S. Dist. LEXIS 107195 at *9; Page v. Cuomo, 2020 U. S. Dist LEXIS 183769 *21 (N.D.N.Y Aug. 11, 2020). In finding that a

challenge to the State restriction prohibiting restaurants in New York City from providing service after midnight was unlikely to succeed, the Eastern District recently noted that:

> It is by now well understood that the virus spreads more easily indoors and when people gather in close proximity. Social distancing and mask wearing are among the few tools available to slow its spread, but these precautions are impacted by indoor dining. Diners cannot wear masks while they eat and drink, and indoor dining necessarily brings individuals from different households together in a restaurant, even if at a distance. Thus, indoor dining poses a greater risk of virus transmission than many other activities.

Columbus Ale House, 2020 U.S. Dist. LEXIS 191828 *9. Indeed, even plaintiffs acknowledge that the State's COVID-19 related E.O.s were effective in slowing the spread of the virus. See PI Memo at 1.

Government officials need the flexibility to impose measures aimed at stopping the spread of COVID-19 and to prevent a reoccurrence whereby the healthcare facilities would once again become overwhelmed. As Chief Justice Roberts recently noted, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring). The courts should not second guess determinations made by government officials, in consultation with public health officials, as to how best stem the spread of this deadly virus, particularly, whereas here, government officials seek to address an area "fraught with medical and scientific uncertainties." Columbus Ale House at *11, quoting Marshall v. United States, 414 U.S.417, 427, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)). see also Dark Storm Indus, LLC v. Cuomo, 2020 U.S. Dist. LEXIS 120514 *38 (N.D.N.Y. July 8, 2020)(noting the Court is loathe

to second-guess COVID-19-related policy decisions during a pandemic with respect to which businesses are deemed essential).

The Challenged Orders clearly have a real and substantial relation to protection of the public health.  COVID-19 has spread worldwide, causing over 371,000 deaths in the United States alone. See Varma Dec. at ¶14. What makes the disease particularly insidious is that people who are unaware that they are infected can transmit it to others.  Id. at 10. As there is no cure for COVID-19, and a vaccine only in its infancy, the only tools currently available to combat the spread of the disease are mitigation measures, which include social distancing and mask wearing. Id. Given that dining, by its very nature, strips diners of one of those few preventative tools—mask wearing—and that transmission is more likely to occur indoors than outdoors because of air circulation and other issues, a temporary ban on indoor dining in the City has a real and substantial relation to the protection of public health.[5] Id. at ¶¶ 29, 34, 44.

Indeed, New York City has an increased risk of transmission because it is a center for domestic and international travel. See Varma Dec., at ¶28. Additionally, the fact that New York City has a large population living in a dense environment, including in high-risk residential congregate facilities and multi-generational housing also increases the risk of transmission. Id. Plaintiffs, however, ask this Court to jettison the prudent, cautious and scientifically-based, effective approach taken by the State in re-opening (and imposing new restrictions on) businesses in New York City, and suggest that State and City officials engage in an individualized, time-consuming and burdensome inspection of thousands of restaurants to ensure

---

[5] Plaintiffs offer no support for their claim that the prohibition of indoor dining increases gatherings in private homes, thereby increasing the positivity rate.  PI Memo at 11-12.

they have and maintain a so-called proper ventilation system, for which plaintiffs offer no scientific support. See PI Memo at 2-3.

The Challenged Orders were clearly enacted to curb the spread of COVID-19 through indoor dining as well as late-night in-person dining, which presents an increased risk of transmission of the virus.  See Varma Dec., ¶¶ 29, 34, 38, 44.  The evidence overwhelmingly supports that conclusion.  As plaintiffs have failed to establish that the Challenged Orders have no "real or substantial relation" to protecting public health, plaintiffs have failed to establish that they have a clear or substantial likelihood of success on the merits of their claims.[6]

**B.      Plaintiffs' Due Process Claim Is Not Likely to Succeed**

Plaintiffs' procedural due process claim is not likely to succeed. See Complaint at ¶130. The threshold question in addressing plaintiffs' procedural due process claim is whether plaintiffs have a protected liberty or property interest that is subject to due process protection. Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972).

**1.    Plaintiffs were not entitled to notice and an opportunity to be heard with respect to the Challenged Orders as they are legislative in nature.**

Plaintiffs were not entitled to procedural due process prior to the enactment of each of the Challenged Orders. The Challenged Orders are generally applicable to all restaurants in New York City and do not target plaintiffs individually.  As such, they are legislative in nature and not subject to the due process requirements of notice and an opportunity to be heard.  New York Pet Welfare Ass'n v. City of New York, 143 F. Supp. 3d 50, 70 (E.D.N.Y. 2015), aff'd 850

---

[6] Plaintiffs' suggestion that they are somehow prejudiced by the manner in which NYC calculates the positivity rate is completely unfounded. While NYC calculates the positivity rate based solely on the more accurate nucleic acid amplification tests (i.e., RT-PCR tests), the City and State positivity numbers move up or down similarly.  See Varma Dec. at ¶20.

F.3d 79 (2d Cir. 2017), cert denied, 138 S. Ct. 131 (2017).  "A person adversely affected by a

law of general applicability has no due process right to a hearing[.]" Hartman v. Acton, 2020

U.S. Dist. LEXIS 72068 *22 (S.D. Ohio April 21, 2020) (holding that the State's Order directing

non-essential businesses to cease operating their physical locations did not violate plaintiffs' due

process rights because the Director's Order was a generally applicable order affecting thousands

of businesses.).  See also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (noting that an

individual's due process rights are not violated by a law of general applicability since "the

legislative determination provides all the process that is due.")  Moreover, "[i]t is well

established that a government's change in established policy, even if it works to an individual's

commercial detriment, does not create entitlement to a hearing." Sanitation and Recycling Indus.

v. City, 925 F. Supp. 407 (S.D.N.Y. 1996), citing O'Bannon v. Town Court Nursing Center, 447

U.S. 773, 789, 65 L.Ed. 2d 506, 100 S. Ct. 2467 (1980).

> **2. Plaintiffs' failure to identify a liberty or property interest they were deprived of is fatal to both their procedural and substantive due process claims.**

Even if the Challenged Orders did trigger due process protections, plaintiffs have

failed to identify a protected liberty or property interest of which they have been deprived.  The

only alleged property right plaintiffs claim to have been deprived of is "their right to

compensation,"[7] and the "loss of substantial revenue and income."  See Complaint at ¶¶ 131,

145.  To the extent that plaintiffs claim that they have been deprived of lost revenue or a right to

operate their businesses, their due process claim fails.  "[B]usiness in the sense of *the activity of

doing business*, or *the activity of making a profit* is not property in the ordinary sense," College

---

[7] Plaintiffs' assertion that they have been denied the right to compensation suggests a takings claim, however, no
such claim has been pled.

Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999). "Harm to business interests…is not a 'plain, palpable invasion of rights' under the Fourteenth Amendment." Savage v. Mills, 2020 U.S. Dist. LEXIS 141628 *22 (D. Me. Aug. 7, 2020), citing Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 721, (2010) (noting that "the liberties' protected by substantive due process do not include economic liberties"). Moreover, plaintiffs do not have a right to conduct business without conditions. Columbus Ale House at 11; Bocelli, 2020 N.Y. Misc. LEXIS 10213 *18.

        In any event, plaintiffs have not been deprived of the ability to operate their restaurants.  Restaurants in New York City (including plaintiffs') have been permitted to provide take-out and delivery service throughout the pandemic, were allowed to resume outdoor dining on June 22, 2020, and were permitted to resume indoor dining at 25% capacity on September 30, 2020, before indoor dining was once again prohibited on December 14, 2020.  See Schonfeld Dec., Exhibits "B" and "G," and https://www1.nyc.gov/site/coronavirus/businesses/businesses-and-nonprofits.page;  https://www1.nyc.gov/office-of-the-mayor/news/449-20/open-restaurants-new-york-city-prepares-phase-2-reopening-mayor-de-blasio-announces. The Challenged Orders have merely restricted the manner in which restaurants may operate; they have not prohibited them from operating completely. Accordingly, they do not run afoul of the Fourteenth Amendment. See  Hu v. City of New York, 927 F. 3d 81, 102 (2d Cir. 2019) ("the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession) (quoting Conn v. Gabbert, 526 U.S. 286, 292 (1999)); see also Columbus Ale House, 2020 U.S. Dist. LEXIS 191828 *12 (finding that plaintiff is unlikely to succeed on its claim that the COVID-19 related restriction prohibiting service after midnight in New York City restaurants arbitrarily infringes on due process rights).

Furthermore, lost revenue is insufficient to support a due process claim.  See Hu, 927 F. 3d at 102; see also JWJ Indus., Inc., v. Oswego Cty., 538 F. App'x 11, 14 (2d Cir. 2013) ("Due process has not been construed to preclude government actions that adversely affect a business's profitability").

> **3.  Even assuming plaintiffs identified a property or liberty interest of which they were deprived, they were not entitled to a pre-deprivation hearing.**

Assuming, arguendo, plaintiffs identified a protected property right of which they were deprived, they were not entitled to a pre-deprivation hearing prior to the issuance of the Challenged Orders. Due process does not automatically trigger a right to a pre-deprivation hearing.  Parratt v. Taylor, 451 U.S. 527 (1981). Rather, summary administrative action is justified to protect the health and safety of the public. Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 300 (1981). Indeed, deprivation of property to protect the public health and safety is "[one] of the oldest examples" of permissible summary action. Id. at 300, quoting Ewing v. Mytinger & Casselberry Inc., 339 U.S. 594, 599 (1950). "Under Hodel, the due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." Cantazaro v. Weiden, 188 F.3d 56, 62 (2d Cir. 1998).

Preventing the further spread of COVID-19 justifies such summary administrative action.  See Savage v. Mills, 2020 U.S. Dist. LEXIS 141628 *20; World Gym, Inc. v. Baker, 2020 U.S. Dist. LEXIS 131236 *11-12 (D. Mass. July 24, 2020); Benner v. Wolf, No. 20-cv-775, 2020 U.S. Dist. LEXIS 89425 *11 (M.D. Pa. May 21, 2020); Page, 2020 U. S. Dist. LEXIS 183769 *32. "[T]he COVID-19 scenario is the kind of scenario for which emergency action would be expected. Bayley's Campground Inc., 2020 U.S. Dist. LEXIS 94296 *32 (D. Me. May

29, 2020).   Providing pre-deprivation process to every business affected by the Challenged Orders would have been impractical, if not impossible, and would have rendered the Challenged Orders – which were implemented on an emergency basis in response to the spread of the virus – completely impotent.   Accordingly, plaintiffs have been afforded all of the process they are due with respect to the Challenged Orders by their ability to commence the instant action.

### 4.  To the extent plaintiffs assert a substantive due process claim, it is also not likely to succeed on the merits.

To the extent plaintiffs assert a claim that they were deprived of substantive due process, that claim is similarly not likely to succeed. In order to state a substantive due process claim, "a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pollok v. Chen, 2020 U.S. App. LEXIS 9261, *10-11 (2nd Cir. 2020), 2020 WL 1456495 *45 (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)).

Only a narrow range of extreme government conduct falls within the scope of a substantive due process claim. Indeed, only egregious or outrageous conduct that shocks the conscience is actionable.  See County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see also Poe v. Leonard, 282 F.3d 123, 139 (2d Cir. 2002) (applying Sacramento). The Second Circuit has expounded on this standard and required the government conduct to be "brutal and offensive to human dignity…." Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002) (internal citations and quotations omitted). Put another way, there must be a "malicious and sadistic" abuse of power that has no legitimate government purpose and that is intended to oppress or cause injury.  See Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005).

The Challenged Orders are not conscience-shocking.  It is axiomatic that the City and State have a strong interest in stopping the spread of COVID-19.   All of the orders

challenged herein are directly targeted at just that.  See Point I (A), supra. Accordingly, they are not conscience-shocking.  See World Gym, 2020 U.S. Dist. LEXIS 131236 *12 (finding COVID-19 related order requiring gyms to close was not conscience-shocking); Page, 2020 U.S. Dist. LEXIS 183769 *31, (finding COVID-19 related quarantine order was not conscience-shocking).

### C.  Plaintiffs' Dormant Commerce Cause Claim is Not Likely to Succeed

In support of their "dormant commerce clause" claim, plaintiffs' sole conclusory assertion is that "[o]n its face, the Governor's Executive Orders place interstate commerce under the Governor's control and prevents the free flow of commerce between State business owners and out of state business owners." PI Memo at 10. Plaintiffs are unlikely to succeed on the merits of such claim.

"For any challenge brought under the dormant Commerce Clause, courts must determine whether the challenged act treats in-state and out-of-state economic interests differently such that the act 'benefits the former and burden the latter.'"  Michigan Rest. & Lodging Ass'n v. Gordon, No. 1:20-cv-1104, 2020 U.S. Dist. LEXIS 220880, at *5 (W.D. Mich. Nov. 20, 2020) (internal citations omitted). A local legal provision may violate the dormant Commerce Clause if it: (1) "has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question," (2) "clearly discriminates against interstate commerce in favor of intrastate commerce," or (3) "imposes a burden on interstate commerce incommensurate with local benefits secured."  Jones v. Schneiderman, 974 F. Supp. 2d 322, 349 (S.D.N.Y. 2013) (citation omitted).

To start, plaintiffs have not and cannot plausibly alleged that the Challenged Orders violate the extraterritorial prong of the dormant Commerce Clause since the Challenged

Orders neither regulate conduct nor directly control commerce outside of New York. Indeed, the Challenged Orders temporarily prohibit indoor dining at restaurants and bars operating in New York City; they do not prohibit indoor dining at restaurants and bars operating beyond New York's borders. See Michigan Restaurant, 2020 U.S. Dist. LEXIS 220880, at *6 (executive order temporarily restricting indoor dining in order to curb the spread of COVID-19 does not violate the dormant commerce clause; "the EO temporarily restricts indoor dining at restaurants and bars operating in Michigan, it does not close restaurants and bars beyond Michigan's borders."); Antietam Battlefield KOA v. Hogan, 461 F. Supp. 3d 214, 239 (D. Md. May 20, 2020) (the Governor's order temporarily closing indoor dining, among other businesses, "only orders the closure of certain Maryland businesses, and does not regulate out-of-state businesses."). Indeed, plaintiffs set forth no allegations (nor cite to any evidence) of any impact that the Challenged Orders will have on commerce in any jurisdiction outside of New York City.

Plaintiffs have not and cannot allege that the Challenged Orders clearly discriminate against interstate commerce. A "clearly discriminatory law may operate in three ways: (1) by discriminating against interstate commerce on its face . . . (2) by harboring a discriminatory purpose . . . or (3) by discriminating in its effect." Town of Southold v. Town of E. Hampton, 477 F.3d 38, 48 (2d Cir. 2007) (internal citations omitted); Antietam Battlefield, 461 F. Supp. 3d at 239. Plaintiffs fail to cite to any provision of the Challenged Orders that discriminates on its face. Indeed, while the Challenged Orders prohibit indoor dining in New York City, their terms do not favor in-state commercial interests nor disfavor out-of-state commercial interests. See Antietam Battlefield, 461 F. Supp. 3d at 239 (the Governor's order requiring the closure of certain businesses including restaurants during the COVID-19 pandemic was "not facially discriminatory against interstate commerce, as it only orders the closure of

certain Maryland businesses, and does not regulate out-of-state businesses."); Oregon Rest. &
Lodging Ass'n v. Brown, No. 3:20-cv-02017-YY, 2020 U.S. Dist. LEXIS 220414, at *12 (D. Or.
Nov. 24, 2020) (Governor's executive order imposing a "temporary freeze" on indoor dining
"does not discriminate in favor of in-state interests."). Additionally, plaintiffs fail to allege that
the Challenged Orders have a discriminatory purpose or effect. Indeed, there is "no indication
that the purpose of the [Challenged Orders] is to 'advance [New York's] own commercial
interests by curtailing the movement of articles of commerce.'" Antietam Battlefield, 461 F.
Supp. 3d at 239 (internal citations omitted); Oregon Rest., 2020 U.S. Dist. LEXIS 220414, at
*12-13 (plaintiffs fail to allege that the COVID–19 executive orders were enacted with a
discriminatory purpose; "[t]he Order regulates without regard to geographic origin, meaning it is
not discriminatory."); Puppies 'N Love, No. CV-14-00073, 2015 U.S. Dist. Lexis 97561, *44 (D.
Ariz. July 27, 2015) (finding local law had no discriminatory purpose where it was primarily
intended "to help eliminate animal cruelty by preventing puppy mills from selling their dogs
through local pet stores"). Here, the Challenged Orders were issued with the clear purpose of
reducing the transmission of COVID-19 and keeping New York City, its residents and the public
safe. With such a clear intent, it cannot be said that they have a discriminatory purpose. Finally,
the Challenged Orders have no discriminatory effect or impact on restaurants outside of New
York. There is no indication that the Challenged Orders "negatively impact[] interstate
commerce to a greater degree than intrastate commerce" and plaintiffs don't state otherwise. See
Antietam Battlefield, 461 F. Supp. 3d at 239. (the Governor's order has no discriminatory effect
on interstate commerce; "[i]f anything, the order negatively impacts intrastate commerce to a
greater degree, as it only applies to Maryland businesses.").

The third prong of the dormant Commerce Clause is known as the <u>Pike</u> balancing test, and applies when a statute's alleged effect on interstate commerce is incidental – we do not concede there is any such effect.  <u>Pike v. Bruce Church Inc.</u>, 397 U.S. 137, 142 (1970). Under <u>Pike</u>, courts uphold nondiscriminatory statutes that have incidental effects on interstate commerce unless the burden on such commerce is "clearly excessive" with regard to the local benefit. <u>Id.</u> at 142.   The burden "appropriately considered in Commerce Clause balancing [under <u>Pike</u>] is the degree to which the [challenged] state action incidentally discriminates against interstate commerce relative to intrastate commerce." <u>Northern Southern Corp. v. Oberly,</u> 822 F.2d 388, 406 (3d Cir. 1987). "The plaintiff[] bear[s] the burden of showing that the burden on interstate commerce outweighs the local benefits." <u>Antietam Battlefield</u>, 461 F. Supp. 3d at 239.

Even if there is an incidental effect on interstate commerce, which plaintiffs do not specifically allege (nevertheless establish), it is certainly not "clearly excessive" in comparison to the local benefits of the Challenged Orders which prohibiting indoor dining.  The local benefit of the Challenged Orders—to minimize the indoor interactions between unmasked individuals thereby curbing the spread of COVID-19—is a legitimate local interest. <u>See</u>, <u>e.g.</u> <u>Michigan Restaurant</u>, 2020 U.S. Dist. LEXIS 220880, at *7 ("[t]he current COVID-19 trends are outlined in the [executive order] as justifications for invoking delegated authority" and "[p]laintiffs have not demonstrated that the [executive order's] burden on interstate commerce is excessive when balanced against its purported in-state benefits."); <u>Oregon Rest. & Lodging</u>, 2020 U.S. Dist. LEXIS 220414, at *13 (internal citations omitted) ("even assuming an incidental burden on interstate commerce, the State 'has a legitimate interest in guarding against imperfectly understood environmental risks, despite the possibility that they may ultimately

- 21 -

prove to be negligible;'" and "'particularly when the extent of the risks is in dispute, the [State] is clearly permitted to err on the side of excess in taking precautionary measures.")." Accordingly, there is no dispute that protecting New York City citizens against the spread of COVID-19 is a legitimate local interest.

### D. Plaintiffs' First Amendment Freedom of Assembly Claim Fails.

Plaintiffs' First Amendment claim is not likely to succeed. In support of their motion for a preliminary injunction, plaintiffs claim, without elaborating, that the temporary restrictions on in-person dining violate their First Amendment right to assemble.  Freedom of assembly,[8] "the right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends," does not exist in the abstract. Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984); Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 50 (5th Cir. 2005).  To trigger First Amendment protections, the assembly must be for an expressive purpose.  Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, 852 F.3d 178, 187-188 (2d Cir. 2017); Givens v. Newsom, 459 F. Supp. 3d at 1314, quoting Roberts, 468 U.S. at 618. "[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456 (1978).

Plaintiffs fail to identify an expressive purpose for which they have been denied the right to assemble. The Challenged Orders merely restrict patrons of restaurants from dining indoors and in-person after 10:00 p.m. Assuming plaintiffs are claiming that they have been

---

[8] Today, freedom of association and freedom of assembly are largely viewed as one. See Givens v. Newsom, 459 F. Supp. 3d 1302, 1314 (E.D.C.A. 2020), quoting Roberts v. U.S. Jaycees, 468 U.S. at 618.

denied the right to assemble with restaurant patrons, plaintiffs, do not allege that they seek to associate with such patrons for any expressive purpose. While it clear that conversing with patrons is a component of running a restaurant, small talk and the exchange of pleasantries are not entitled to First Amendment protection. See Dallas v. Stanglin, 409 U.S. 19, 24 (1989)("dance-hall patrons -- coming together to engage in recreational dancing -- is not protected by the First Amendment."); Wine & Spirits Retailers, Inc., 418 F.3d at 53("[c]ertainly, the mere fact that the joint activities that define the business relationship between the franchisor and its franchisees have some communicative component cannot, in and of itself, establish an entitlement to the prophylaxis of the *First Amendment*."); SH3 Health Consulting, LLC v. Page, 459 F. Supp. 3d 1212, 1225 (E.D.M.O. 2020) (holding that order preventing plaintiffs from association with their customers within the physical spaces of their business did not infringe upon the right to assembly); H's Bar, 2020 U.S. Dist. LEXIS 218371 *11 (in declining to enjoin indoor dining ban, finding it "improbable … that Plaintiff has a protected *First Amendment* right to associate with its patrons while they drink and discuss 'the issues of the day'"). Accordingly, as plaintiffs have failed to allege that the Challenged Orders interfere with their ability to associate with restaurant patrons for an expressive purpose, the restaurant restrictions do not run afoul of the First Amendment. See New York City C.L.A.S.H. v. City of New York, 315 F.Supp. 2d 461, 474 (S.D.N.Y. 2004).

Furthermore, to the extent that plaintiffs assert that their intimate relationship with their patrons affords them First Amendment protection, their claim also fails.  "Plaintiffs' relationships with … their restaurant customers … are not sufficiently intimate to implicate [First Amendment] protection." Michaelidis v. Berry, 502 Fed Appx. 94, 96 (2d Cir. 2012).

Moreover, even if plaintiffs had sufficiently asserted that the temporary restaurant restrictions trigger First Amendment protections, such restrictions do not violate plaintiffs' First Amendment rights, whether analyzed pursuant to the standards set forth in Roberts or Ward v. Rock Against Racism.  As set forth in Rockwell v. Town of Hamden, relied on by plaintiffs, the right to peaceably assemble, 'is not absolute."  800 Fed. App'x 54, 55 (2d Cir. 2020); PI Memo at 10. The Challenged Orders, which are clearly content-neutral, time, place and manner restrictions in that they are wholly unrelated to the suppression of ideas, are justified in that they are "narrowly tailored to serve a significant governmental interest" and "they leave open ample alternative channels for communication of the information."  Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Indeed, not only do they serve a significant interest, but as the Supreme Court recently held, stemming the spread of COVID-19 is an "unquestionably" compelling interest.  Roman Catholic Diocese, 208 L. Ed. 206, 209; see also Point I(A) supra.  Plaintiffs' assertion that the defendants have not employed the least restrictive means to mitigate the spread of COVID-19 is unavailing. PI Memo at pp.1, 3. "[R]estrictions on the time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.'" Warde at 797. The burdensome, time-consuming process proposed by plaintiffs of assessing the ventilation systems of the thousands of restaurants in New York City is not a viable, effective alternative to the Challenged Orders. Finally, alternative avenues of expressive-association are available to plaintiffs, including outdoor dining at restaurants until 10:00 p.m.

## POINT II

### PLAINTIFFS CANNOT DEMONSTRATE THAT IRREPARABLE HARM IS IMMINENT OR CERTAIN IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF

As plaintiffs' constitutional claims lack merit, the harm that plaintiffs claim to have incurred as a result of the Challenged Orders is conclusory, speculative and purely economic, and as such, insufficient for purposes of satisfying the "irreparable harm" requirement for a preliminary injunction. "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." New York v. United States Dep't of Homeland Sec., 969 F. 3d 42, 86 (2d Cir. 2020), quoting New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015); see also M. Rae, Inc., 2020 U.S. Dist. LEXIS 241961 *25 ("While we certainly appreciate that the temporary indoor-dining closures may have caused the owners of the plaintiff restaurants to experience both economic hardship and mental distress, that cannot alone justify injunctive relief, particularly in the absence of a strong showing on the merits.")

## POINT III

### A BALANCE OF HARDSHIPS TIPS IN CITY DEFENDANTS' FAVOR.

Plaintiffs seek to enjoin the State's efforts to eradicate COVID-19, a disease which has led to over 371,000 deaths across the country. Such efforts are clearly in the public interest and serve to promote and protect the health of New Yorkers. As the Court noted in Luke's Catering Serv., LLC, 2020 U.S. Dist. 165907, *36-37, "[w]eakening the State's response to a public health crisis by enjoining it from enforcing measures employed specifically to stop the spread of COVID-19 is not in the public interest."

More specifically, indoor dining presents known increased risks of transmission due to the fact that it takes place indoors and does not allow for mask wearing.  <u>See</u> Varma Dec. ¶¶34-36. Indeed, a study by the CDC in September found that one of the strongest risk factors for COVID-19 infection in the United States is eating at a restaurant. <u>Id.</u> at 36.  Accordingly, the restrictions on indoor dining clearly promote the public interest in avoiding additional transmission of Covid-19 as well as further lockdowns.  <u>Id.</u>  <u>See Columbus Ale House</u> at 13 (finding that balance of equities tipped in favor of government in combatting COVID-19); <u>M. Rae, Inc.</u>, 2020 U.S. Dist. LEXIS 241961 (M.D. Pa December 23, 2020)(declining to enjoin indoor dining ban); <u>Phila. Rest. Owners Against Lockdown, LLC v. Kenney</u>, 2020 U.S. Dist. LEXIS 220853 (E.D. Pa November 20, 2020)(declining to enjoin indoor dining ban.)

Accordingly, as plaintiffs have failed to meet any of the requirements for the issuance of a preliminary injunction, their request for such relief must be denied.

## <u>CONCLUSION</u>

For all the reasons set forth herein, City defendants respectfully request that plaintiffs' motion for a preliminary injunction be denied in its entirety.

Dated:      New York, New York
             January 13, 2021


By: _____/s/_____

    Kerri Devine
    Samantha Schonfeld
    Assistant Corporation Counsels