UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————————

d/b/a SEAPORT HOUSE (HOPKINS HAWLEY
LLC), THE GREATER NEW YORK MERCHANTS'
ALLIANCE, and COSTIN TARSOAGA,

On behalf of themselves and all others similarly
situated,

                    Plaintiffs,

   -against-

ANDREW M. CUOMO, in his personal and official
capacity as Governor of the State of New York, THE
NEW YORK CITY DEPARTMENT OF FINANCE,
THE NEW YORK CITY SHERIFF'S
DEPARTMENT, and MAYOR DeBLASIO, in his
personal and official capacity as Mayor of the City of
New York,

                    Defendants.

No. 20-cv-10932-PAC

—————————————————————————

## GOVERNOR ANDREW M. CUOMO'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant Andrew M. Cuomo*
28 Liberty Street
New York, New York 10005
(212) 416-8029

SETH J. FARBER
Assistant Attorney General
   of Counsel

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................1

**FACTUAL BACKGROUND** ........................................................................................3

A.   The COVID-19 Pandemic And The State's Early Response ........................................4

B.   New York's Phased Reopening ...................................................................................5

C.   The Risk Of COVID-19 Transmission Posed By New York City's Bars And Restaurants ........6

D.   The Rules Governing New York City's Bars And Restaurants .....................................8

**THE PRESENT LAWSUIT AND PRELIMINARY INJUNCTION MOTION** ...................10

**STANDARD OF REVIEW** ........................................................................................11

       A.   Preliminary Injunction Standard of Review ................................................11

       B.   The Jacobson Standard ..............................................................................12

**ARGUMENT** ..........................................................................................................144

I.   PLAINTIFF CANNOT ESTABLISH A "CLEAR" OR "SUBSTANTIAL" LIKELIHOOD
    OF SUCCESS ON THE MERITS .................................................................144

       A.   Plaintiff's Federal Constitutional Claims Will Not Succeed .....................14

      1. Plaintiffs Cannot Show Likelihood of Success on Their Due Process Clam ...............184

      2. Plaintiffs Cannot Succeed on their Dormant Commerce Clause Claim ........................18

      3. Plaintiffs Cannot Show Likelihood of Success on their First Amendment:

         Freedom of Assembly Claim ...............................................................18

      4. There Is A Rational Basis For The Indoor Dining Ban ..................................18

       B.   Plaintiff's State Law Claims Will Not Succeed ..........................................21

IV.   PLAINTIFFS HAVE NOT SHOWN LIKELIHOOD OF IRREPARABLE HARM ...........22

V.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR
    OF NEW YORK'S MISSION TO PROTECT ITS CITIZENS FROM A GLOBAL
    PANDEMIC ....................................................................................................23

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Albright v. Oliver*,
510 U.S. 266 (1994)................................................................15

*Am. Mfs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999)................................................................14

*Antietam Battlefield KOA v. Hogan*,
2020 WL 2556496 (D. Md. May 20, 2020)................................................13

*Armour v. City of Indianapolis*,
566 U.S. 673 (2012)................................................................15, 21

*Ass'n of Jewish Camp Operators v. Cuomo*,
20 Civ. 687, 2020 WL 3766496 (N.D.N.Y. July 6, 2020)..........................13, 20, 24

*Beal v. Stern*,
184 F.3d 117 (2d Cir. 1999)................................................................11

*Beatie v. City of N.Y.*,
123 F.3d 707 (2d Cir. 1997)................................................................ 18-19

*Best Supplement Guide, LLC v. Newsom*,
2020 WL 2615022 (E.D. Cal. May 22, 2020) ........................................13

*Cassell v. Snyders*,
2020 WL 2112374 (N.D. Ill. May 3, 2020) ........................................13

*Charles v. Orange Cty.*,
925 F.3d 73 (2d Cir. 2019)................................................................14

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999)................................................................15

*Columbus Ale House v. Cuomo*,
No. 20-cv-4291, 2020 WL 6118822 (E.D.N.Y. Oct. 16, 2020) (Cogan, J.)............................13

*Concerned Jewish Youth v. McGuire*,
621 F.2d 471 (2d Cir. 1980)................................................................18

*Corbett v. Cuomo*,
20 Civ. 4864, Dkt. No. 13 (S.D.N.Y. July 2, 2020)................................................................13

*Cunney v. Bd. of Trs. Of Grand View*,
   660 F.3d 612 (2d Cir. 2011).......................................................................14

*Davis v. New York*,
   316 F.3d 93 (2d Cir. 2002)..........................................................................22

*Do Corp. v. Town of Stoughton*,
   2013 WL 6383035 (D. Mass. Dec. 6, 2013) ...............................................23

*Doe v. N.Y.U.*,
   666 F.2d 761 (2d Cir. 1981).........................................................................11

eBay Inc. v. MercExchange, 547 U.S. 388 (2006) ...........................................24

*Elmsford Apt. Associates, LLC v. Cuomo*,
   2020 WL 3498456 (S.D.N.Y. June 29, 2020) .............................................13

*Exxon Corporation v. Maryland*,
   437 U.S. 117 (1978).....................................................................................17

*F.C.C. v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993).....................................................................................19

*Freedom Holdings Inc. v. Spitzer*,
   357 F.3d 205 (2d Cir.2004)..........................................................................16

*Geller v. Cuomo*,
   20 Civ. 4653, 2020 WL 4463207 (S.D.N.Y. Aug. 3, 2020) .......................12

*Geller v. De Blasio*,
   20 Civ. 3566, 2020 WL 2520711 (S.D.N.Y. May 18, 2020)..................13, 21

*Gish v. Newsom*,
   2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) .............................................13

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007)...........................................................................22

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
   425 F.3d 158 (2005).....................................................................................16

*Healy v. The Beer Inst.*,
   491 U.S. 324 (1989).....................................................................................16

*Heller v. Doe*,
   509 U.S. 312 (1993)...........................................................................15, 18, 21

*Henry v. DeSantis*,
   2020 WL 2479447 (S.D. Fla. May 14, 2020) ........................................................13

*Ill. Republican Party v. Pritzker*,
   2020 WL 3604106 (N.D. Ill. July 2, 2020)..............................................................13

*In re Abbott*,
   954 F.3d 772 (5th Cir. 2020) ..................................................................................13

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905).......................................................................................12, 14, 21

*Jacoby & Myers v. Presiding Justices of the First, Second, Third & Fourth*
   *Dep'ts, Appellate Div. of the Supreme Court of N.Y.*,
   852 F.3d 178 (2d Cir. 2017).............................................................................. 17-18

*Kelly v. N.Y. Civil Serv. Comm'n*,
   632 F. App'x 17 (2d Cir. 2016) ...............................................................................22

*L&M Bus Corp. v. Bd. of Educ.*,
   18 Civ. 1902, 2018 WL 2390125 (E.D.N.Y. May 25, 2018) ..................................11

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*,
   814 F. App'x 125 (6th Cir. 2020) ......................................................................13, 19

*Lewis v. Thompson*,
   252 F.3d 567 (2d Cir. 2001)....................................................................................21

*Li v. Lorenzo*,
   712 F. App'x 21 (2d Cir. 2017) ...............................................................................22

*Local 342, Long Island Pub. Serv. Employees v. Town Bd.*,
   31 F.3d 1191 (2d Cir. 1994)....................................................................................15

*Luke's Catering Service, LLC v. Cuomo*,
   20 Civ. 1086, 2020 WL 5425008 (W.D.N.Y. Sept. 10, 2020) ...............................13

*Make the Rd. N.Y. v. Cuccinelli*,
   419 F. Supp. 3d 647 (S.D.N.Y. 2019)......................................................................24

*Maryland v. King*,
   567 U.S. 1301 (2012)...............................................................................................23

*McCarthy v. Cuomo*,
   20 Civ. 2124, 2020 WL 3286530 (E.D.N.Y. June 18, 2020) ...........................13, 20

*McGhee v. City of Flagstaff,*
    2020 WL 2308479 (D. Az. May 8, 2020) ..............................................................13

*Million Youth March, Inc. v. Safir,*
    155 F.3d 124 (2d Cir. 1998) .................................................................................24

*N.Y.S. Rifle & Pistol Ass'n v. City of N.Y.,*
    86 F. Supp. 3d 249 (S.D.N.Y. 2015), aff'd, 883 F.3d 45 (2d Cir. 2018) ..............24

*Nken v. Holder,*
    556 U.S. 418 (2009) .......................................................................................11, 24

*Open Our Oregon v. Brown,*
    2020 WL 2542861 (D. Or. May 19, 2020) ............................................................13

*Otoe-Missouria Tribe v. N.Y.S. Dep't of Fin. Svcs.,*
    769 F.3d 105. (2d Cir. 2014) ................................................................................24

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) .......................................................................................... 21-22

*People ex. rel. Schneiderman v. Actavis PLC,*
    787 F.3d 638 (2d Cir. 2015) .................................................................................11

*Pike v. Bruce Church, Inc.,*
    397 U.S. 137 (1970) .............................................................................................16

*Prof'l Beauty Fed. of Cal. v. Newsom,*
    2020 WL 3056126 (C.D. Cal. June 8, 2020) ........................................................13

*Rockwell v. Town of Hamden,*
    800 Fed. Appx. 54 (2d Cir. 2020) ................................................................... 17-18

*S. Bay United Pentecostal Church v. Newsom,*
    140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) ..................................... 12-13, 25

*Salinger v. Colting,* 607 F.3d 68 (2d Cir. 2010) .........................................................24

*Selevan v. N.Y. Thruway Auth.,*
    584 F.3d 82 (2d Cir. 2009) ...................................................................................16

*Seminole Tribe of Florida v. Florida,*
    517 U.S. 44 (1996) ...............................................................................................21

*Sensational Smiles, LLC v. Mullen,*
    793 F.3d 281 (2d Cir. 2015) ....................................................................... 15, 20-21

v

*Slidewaters LLC v. Wash. Dep't of Labor & Indus.*,
  2020 WL 3130295 (E.D. Wash. June 12, 2020) .......................................................13

*Talleywhacker, Inc. v. Cooper*,
  2020 WL 3051207 (E.D.N.C. June 8, 2020) ..........................................................13

*Treistman v. McGinty*,
  804 F. App'x 98 (2d Cir. 2020) ...........................................................................22

*Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*,
  149 F. Supp. 3d 376 (E.D.N.Y. 2016) ..................................................................22

*Walker v. City of Waterbury*,
  361 F. App'x 163 (2d Cir. 2010) .........................................................................15

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982)...........................................................................................24

*Wigginess Inc. v. Fruchtman*,
  482 F. Supp. 681 (S.D.N.Y. 1979), aff'd, 628 F.2d 1346 (2d Cir. 1980).........................15, 20

*Windsor v. United States*,
  699 F.3d 169 (2d Cir. 2012), aff'd, 570 U.S. 744 (2013) .......................................19

*Winter v. Natural Res. Defense Council, Inc.*,
  555 U.S. 7 (2008)........................................................................................... 11, 24-25

*Wyoming v. Oklahoma*,
  502 U.S. 437 (1992)...........................................................................................16

**CONSTITUTIONS**

First amendment............................................................................................ passim

Eleventh Amendment...................................................................................... 21-22

Fourteenth Amendment ......................................................................................10

Commerce Clause ...............................................................................................17

Dormant Commerce Clause .......................................................................2-3,10,14, 16-17

Due Process Clause..............................................................................................14

Equal Protection Clause .......................................................................................20

*Ex parte Young* ...................................................................................................22

New York State Constitution ................................................................21

United States Constitution .................................................................14

**STATE STATUTES**

N.Y. Exec. Law
    § 29................................................................................4

**STATE REGULATIONS**

EO 202 ................................................................................ 4-5

EO 202.3 ...............................................................................5, 8

EO 202.38 ...............................................................................8

EO 202.52 ...............................................................................8

EO 202.6 ................................................................................5

EO 202.61 (September 9, 2020), available at
    https://www.governor.ny.gov/news/no-20261-continuing-temporary-
    suspension-and-modification-laws-relating-disaster-emergency ...............................8

EO 202.74 ...............................................................................9

EO 202.79 ..............................................................................10

EO 202.81 ........................................................................... passim

EO 202.89 ...............................................................................2

**MISCELLANEOUS AUTHORITIES**

"*New York City Region is Now an Epicener of the Coronavirus Pandemic*"
    (March 22, 2020) New York Times, https://nyti.ms/3kUJgbs ...........................................4, 23

CDC Report, "*Community and Close Contact Exposures Associated with COVID-
    19 Among Symptomatic Adults ≥18 Years in 11 Outpatient Health Care
    Facilities — United States, July 2020*", available at
    https://www.cdc.gov/mmwr/volumes/69/wr/mm6936a5.htm ...................................7

CDC, "*Your Health, Deciding to Go Out*",
    https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/deciding-to-go-
    out.html (Jan. 10, 2021) ................................................................6

*"De Blasio makes NYC Open Restaurant program permanent and 'year-round'"* (Sep. 25, 2020) https://nypost.com/2020/09/25/de-blasio-nyc-outdoor-dining-plan-permanent-year-round...............................................................................8

*"Evidence mounts that outside is safer when it comes to COVID-19"* (May 6, 2020), https://bit.ly/3mVjsh4 ...............................................................................7

*"Governor Cuomo Announces New York City Enters Phase III of Reopening Without Indoor Dining and Subject to State Guidance Today"* (Jul. 6, 2020), available at https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-city-enters-phase-iii-reopening-without-indoor-dining-and; ....................................6

"Governor Cuomo Announces Three Additional Cases of UK Strain Found In New York" (Jan. 9. 2021), available at https://www.governor.ny.gov/news/governor-cuomo-announces-three-additional-cases-uk-strain-identified-new-york...............................................................4

https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?:embed=yes&:toolbar=no&:tabs=n (last visited Jan. 8, 2021)...................................3

https://esd.ny.gov/guidance-executive-order-2026 ........................................................8

https://www.governor.ny.gov/news/governor-cuomo-announces-indoor-dining..............................**22**

https://www.governor.ny.gov/news/governor-cuomo-announces-indoor-dining-new-york-city-allowed-resume-beginning-september-30-25 ....................................23

https://www.governor.ny.gov/news/no-20289-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency ......................................................2

"New study finds few cases of outdoor transmission of coronavirus in China" (Apr. 23, 2020), The Hill, https://bit.ly/2S8ino6. ..................................................6-7

New York Data, The COVID Tracking Project, https://covidtracking.com/data/state/new-york#historical (last visited Jan. 10, 2021) ................................................................................................................4

"Outdoor Dining to Become Permanent, Even in Winter, (Sep. 25, 2020) New York Times, *https://www.nytimes.com/2020/09/25/nyregion/nyc-outdoor-dining-restaurants.html*...............................................................................23

"Population, Land Area, and Population Density by County, New York State 2017", New York State Department of Health, available at https://www.health.ny.gov/statistics/vital_statistics/2017/table02.htm ....................................7

Defendant Andrew M. Cuomo, sued in his personal capacity and his official capacity as Governor of the State of New York ("Governor Cuomo" or "Governor"), respectfully submits this memorandum of law[1], together with the accompanying Declaration of Deborah S. Blog, M.D., M.P.H. ("Blog Decl."), in opposition to the motion for a preliminary injunction, ECF Nos. 16-19, filed by Plaintiffs d/b/a Seaport House (Hopkins Hawley LLC), the Greater New York Merchants' Alliance, and Costin Tarsoaga, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

The State of New York, along with the rest of the world, continues to confront the greatest public health crisis in living memory. The COVID-19 pandemic has caused over 17,000 deaths in New York City alone, an enormous number that could have been far higher had the State not taken urgent action to halt the spread of the virus by mandating temporary restrictions on businesses and social gatherings. Thanks to these measures, New York was able to flatten the curve for new infections and fatalities and is now working toward lifting restrictions in a measured way, balancing the lives, health, and safety of its citizens with the need to protect their livelihoods. But the danger of a resurgence in cases remains clear and present. The State's response continues to be carefully calibrated to ensure that activities with the highest risk of spreading contagion do not imperil New York's progress.

By this lawsuit, Plaintiffs seek to undermine these efforts and enjoin portions of Governor Cuomo's Executive Orders designed to mitigate the significant risks of COVID-19 transmission posed by indoor dining by overturning all restrictions on indoor dining in New York City. Indoor dining at bars and restaurants is a particularly high risk activity because COVID-19 spreads more easily

---

[1] This Memorandum corrects a number of citations to the Declaration of Dr. Debra Blog that were inadvertently in error in the Memorandum previously filed by Governor Cuomo as ECF No. 37.

indoors, diners and drinkers cannot wear masks while dining and drinking, and drinking at a bar or restaurant can encourage congregating and mingling, particularly late at night, which furthers the risk of spread. Because of its large population and high population density, these risks are particularly acute in New York City. As a result of increased COVID-19 infection rates in New York City and statewide, Governor Cuomo issued Executive Orders ("EO") 202.61, 202.79 and, in particular, EO 202.81, dated December 11, 2020.[2] These EOs have the effect of prohibiting indoor dining in New York City, effective December 14, 2020, while outdoor dining (until 10:00 p.m.), take-out, and delivery services are still permissible.

Plaintiffs, *inter alia*, allege that Plaintiff d/b/a Seaport House (Hopkins Hawley LLC) ("Seaport House") operates a restaurant in New York County, the third most populous and the most densely populated county in the State, and, on behalf of themselves and others similarly situated, they seek a preliminary injunction against the restriction on indoor dining in New York City. However, Plaintiffs' motion for preliminary injunction is fatally flawed because Plaintiffs do not (and cannot) meet the high burden of establishing the elements required for the extraordinary relief of a mandatory injunction.

*First*, there is no clear or substantial likelihood of success on the merits. *See* Point I, *infra*. Plaintiffs' claims all fail for the fundamental reason that the ban on indoor dining is rationally related to the State's interest in avoiding spikes in COVID-19 cases and the concomitant threat to public health. Further, Plaintiffs' three asserted claims, allegedly arising under the due process clause, the dormant commerce clause, and the first amendment right to assemble pursuant, all fail of their own accord. The due process claim lacks merit because EOs 202.61, 202.79, and 202.81 are legislative provisions of general applicability, and, hence, Plaintiffs are not entitled to notice and an opportunity

---

[2] Executive Order 202.89, dated January 7, 2021, extends the provisions of Executive Order 202.81 for thirty days, until February 6, 2021. *See* https://www.governor.ny.gov/news/no-20289-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

to be heard. To the extent that Plaintiffs are asserting a violation of their substantive due process rights, Plaintiffs must show that the State's actions were not merely "incorrect or ill-advised," but were so egregious and outrageous that they may fairly be said to shock the contemporary conscience. That can hardly be said with respect to the measures undertaken to protect the public health in the middle of a global pandemic that has already killed tens of thousands of New Yorkers.

Plaintiffs likewise cannot establish a dormant commerce clause violation. That claim requires a showing that the EO's prohibition on indoor dining clearly discriminates against interstate commerce in favor of intrastate commerce, imposes a burden on interstate commerce incommensurate with the local benefits secured, or has the practical effect controlling commerce occurring entirely outside of New York. Clearly.  None of those circumstances are present here.

Similarly, Plaintiffs misconstrue the law in claiming a deprivation of the freedom to assemble, as they utterly fail to show that the restriction on indoor dining for health reasons implicates a first amendment violation.

*Second,* Plaintiffs cannot establish imminent, irreparable harm, as they have failed to sufficiently demonstrate that the temporary restrictions on indoor dining, coupled with the continuation of outdoor dining and take-out and delivery services, will lead to the imminent closure of Seaport House, rather than a temporary financial loss of revenue.

And, *third,* the balance of equities and the public interest weigh overwhelmingly in favor of New York's mission to protect all New Yorkers from the imminent dangers presented by COVID-19, which has already resulted in the deaths of tens of thousands of New Yorkers.

Accordingly, Plaintiffs' motion for a preliminary injunction should be denied.

## FACTUAL BACKGROUND

The ongoing COVID-19 pandemic has caused more than 31,000 deaths in New York State,

over 17,000 of which were in New York City, and well over a million deaths worldwide.[3] New York

was, for much of last spring, the global epicenter of the crisis.[4] Thanks to the lifesaving efforts of the

State, medical professionals, essential workers, and ordinary New Yorkers who have heeded calls to

shelter-in-place and practice social distancing, New York's daily death toll has been reduced to a

fraction of its peak of approximately 800 per day.[5] The threat is far from over, however, as hundreds

of New Yorkers remain hospitalized.[6] Moreover, it is unclear what kind a havoc the new United

Kingdom strain will wreak in the State.[7] *See* Blog Decl., ¶¶ 32, 53, 95, Ex. RR. Continued vigilance is,

therefore, necessary to prevent a deadly second wave of the pandemic from afflicting the State and

New Yorkers and from requiring additional extensive shutdowns of businesses. *See generally* Blog Decl.

¶¶ 95-97.

A.       **The COVID-19 Pandemic And The State's Early Response**

COVID-19 is a highly infectious and potentially deadly respiratory disease caused by a newly

discovered coronavirus that spreads easily from person-to-person. Blog Decl. ¶¶ 58-60, Exs. CC, DD.

Because there is no pre-existing immunity against this virus, it has spread worldwide in an exceptionally

short period of time. On January 30, 2020, the World Health Organization ("WHO") declared a

"public health emergency of international concern." Blog Decl. ¶ 61, Ex. EE. Less than two months

later, on March 11, 2020, the WHO characterized the COVID-19 outbreak as a pandemic. Blog Decl.

¶ 62, Ex. FF.

---

[3] *See* Fatalities Data, New York State Department of Health ("DOH"), https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?:embed=yes&:toolbar=no&:tabs=n (last visited Jan. 8, 2021).

[4] *See* New York Times, *New York City Region Is Now an Epicenter of the Coronavirus Pandemic* (March 22, 2020), https://nyti.ms/3kUJgbs.

[5] *See* New York Data, The COVID Tracking Project, https://covidtracking.com/data/state/new-york#historical (last visited Jan. 10, 2021).

[6] *See id.*

[7] *See* Press Release, "Governor Cuomo Announces Three Additional Cases of UK Strain Found In New York" (Jan. 9, 2021), available at https://www.governor.ny.gov/news/governor-cuomo-announces-three-additional-cases-uk-strain-identified-new-york

On March 7, 2020, pursuant to N.Y. Exec. Law § 29, Governor Cuomo issued EO 202, implementing the State Comprehensive Emergency Management Plan and declaring a statewide disaster emergency. *See* Blog Decl., ¶ 67, Ex. HH. By Executive Order 202, the Governor suspended all State and local laws, rules, and regulations to the extent necessary to cope with the COVID-19 emergency. *Id.* Following the issuance of EO 202, Governor Cuomo issued multiple supplemental Executive Orders, continuing the temporary suspension and modification of certain laws relating to the state of emergency. *See, e.g.*, Blog Decl., ¶¶ 73-86, Exs. II to QQ.

On March 16, 2020, EO 202.3 indefinitely suspended on-premises service of food and beverages in all bars and restaurants. Blog Decl. ¶ 74, Ex. JJ. Executive Order 202.3 provided that "[a]ny restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption." *Id.* On March 20, 2020, Governor Cuomo announced the "New York State on PAUSE" initiative, which required, among other things, the closure of all non-essential businesses and prohibited non-essential gatherings of individuals of any size for any reason. Blog Decl., ¶¶ 76-77. EO 202.6 listed which businesses and services in New York State were deemed "essential" and directed the Empire State Development Corporation ("ESD"), a New York State public benefit corporation, to issue guidance to further clarify which businesses would be considered "essential" or "non-essential." Blog Decl., Ex. 75, Ex. MM. Shortly afterward, ESD issued guidance defining "Restaurants/bars (but only for take-out/delivery)" as essential businesses.[8]

## B.    New York's Phased Reopening

Over the course of May and June 2020, as the State's infection and death rates began to stabilize and then decline, New York transitioned from the "New York on PAUSE" initiative to the

---

[8] *See* Guidance on Executive Order 202.6, Empire State Development, ("the ESD Guidance") available at https://esd.ny.gov/guidance-executive-order-2026

"New York Forward" initiative, a phased plan to guide the reopening of non-essential businesses. Blog Decl., ¶¶ 73-94. The New York Forward initiative was intended to begin reopening New York's economy in a gradual and measured way that would prevent any new spikes in COVID-19 cases. *See id.* ¶ 79. Through this phased reopening, which has been data-driven and guided by public health experts, the State was able to keep the daily number of new infections and new deaths relatively flat at a time when cases were spiking throughout the rest of the country. *See id.* ¶¶ 87-94.

Outside of New York City, restaurants were permitted to open for indoor dining at 50% capacity, with other restrictions, when a region entered "Phase 3." However, indoor dining was not permitted in New York City during the phases of New York Forward, given the significant risks of COVID-19 transmission presented by indoor dining in densely populated New York City.[9]

### C.      The Risk Of COVID-19 Transmission Posed By New York City's Bars And Restaurants

COVID-19 primarily spreads through person-to-person contact via respiratory droplets, and it may be spread not only by those who have symptoms, but also by those who are asymptomatic. *See* Blog Decl., ¶ 10-11, 13, Exs. A, B. Indoor spaces present greater risks of COVID-19 transmission than outdoor spaces. *Id.* ¶¶ 16-17, Ex. F. As noted by the U.S. Centers for Disease Control and Prevention ("CDC"), it is more difficult to keep people apart indoors versus outdoors, "there's less ventilation," and, therefore, the CDC recommends that individuals "[c]hoose outdoor activities and places where it's easy to stay 6 feet apart, like parks and open-air facilities."[10] Notably, a "study of the more than 300 outbreak clusters of COVID-19 in China reveals that the majority of the outbreaks

---

[9] *See* Press Release, *Governor Cuomo Announces New York City Enters Phase III of Reopening Without Indoor Dining and Subject to State Guidance Today* (Jul. 6, 2020), available at https://www.governor.ny.gov/news/governor-cuomo-announces-new-york-city-enters-phase-iii-reopening-without-indoor-dining-and; *see also* Decl., ¶¶ 33-35.

[10] CDC, Your Health, *Deciding to Go Out*, https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/deciding-to-go-out.html (Jan. 10, 2021).

were fueled by indoor transmission of the disease, while outdoor transmission was scarce."[11] Another study designed to analyze this issue similarly concluded that "[t]he virus is harder to transmit outdoors because the droplets that spread it are more easily disturbed or dispersed outside in the elements than in a closed, confined, indoor setting."[12] Other research studies showed that outbreaks in cities and states that permitted indoor dining "stemmed from bars and restaurants." Blog Decl. ¶ 25, 27, Exs. K, L.

Although the risk of COVID-19 transmission can be mitigated by wearing masks, it is plainly not possible for an individual to eat or drink while wearing a mask. Therefore, bars and restaurants are necessarily high risk for transmission of the virus. *Id.* ¶ 26. Further, individuals in bars and restaurants that serve alcohol tend to congregate and mingle, which increases the risk of spread. *Id.* ¶¶ 44-46, 49. In a recent study conducted by the CDC, individuals who tested positive for COVID-19 were found twice as likely to have been in a bar or restaurant recently than individuals who have not tested positive.[13]

There is a higher risk of COVID-19 transmission in New York City than in the rest of the State because it is both more populated and more densely populated than the rest of the State.[14] Indeed, the five counties making up New York City are the most densely populated counties in the State. *Id.* New York County, where Seaport House is located, is the third most populous county of all, with 1,664,727 people, and it has the highest population density, with 72,918.40 people per square mile. *Id.*

---

[11] The Hill, *New study finds few cases of outdoor transmission of coronavirus in China* (Apr. 23, 2020), https://bit.ly/2S8ino6.

[12] The Hill, *Evidence mounts that outside is safer when it comes to COVID-19* (May 6, 2020), https://bit.ly/3mVjsh4.

[13] *See* CDC Report, *Community and Close Contact Exposures Associated with COVID-19 Among Symptomatic Adults ≥18 Years in 11 Outpatient Health Care Facilities — United States, July 2020*, available at https://www.cdc.gov/mmwr/volumes/69/wr/mm6936a5.htm?s_cid=mm6936a5_x.

[14] *See* Table 2: Population, Land Area, and Population Density by County, New York State 2017, New York State Department of Health, available at https://www.health.ny.gov/statistics/vital_statistics/2017/table02.htm.

### D.  The Rules Governing New York City's Bars And Restaurants

As explained above, New York bars and restaurants have been permitted to remain open for take-out and delivery services throughout the entirety of the pandemic. *See* EO 202.6 and ESD Guidelines. Executive Order 202.3 also allowed bars and restaurants to sell alcoholic beverages for take-out and delivery, a new privilege ordinarily reserved for liquor stores and grocery stores, although such sales were required to be accompanied with the purchase of food. *See* Blog Decl. ¶74, Ex. JJ.

On June 6, 2020, Governor Cuomo issued Executive Order 202.38, which allowed restaurants to serve patrons on-premises, but "only in outdoor space, provided such restaurant or bar is in compliance with Department of Health guidance promulgated for such activity."[15] Governor Cuomo subsequently issued Executive Order 202.52, which clarified that the purpose in allowing outdoor dining was to allow patrons to dine, with accompanying drinking, while restricting the congregating and mingling that arise in a bar service/drinking only environment.[16] To avoid these dangerous conditions, the sale of alcohol would have to be accompanied by the purchase of food. *See id.* It was announced on September 25, 2020, that New York City's outdoor dining program will become permanent, rather than expire on October 31, and that heat lamps will be permitted to keep diners warm during the cooler months.[17]

On September 9, 2020, Governor Cuomo announced that indoor dining may resume in New York City, starting on September 30, 2020, with a 25 percent occupancy limit; restaurants that chose to reopen indoor dining were subject to strict safety protocols, including temperature checks, contact information for tracing, and face coverings when not seated, bar service was not permitted, and

---

[15] *See* N.Y. Exec. Order 202.38 (June 6, 2020), available at https://www.governor.ny.gov/news/no-20238-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[16] *See* N.Y. Exec. Order 202.52 (July 16, 2020), available at https://www.governor.ny.gov/news/no-20252-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[17] *See* New York Post, *De Blasio makes NYC Open Restaurant program permanent and 'year-round'* (Sep. 25, 2020), https://nypost.com/2020/09/25/de-blasio-nyc-outdoor-dining-plan-permanent-year-round.

restaurants were to close at midnight.[18] The Governor's announcement also stated that the guidelines would be reassessed based on the data by November 1, 2020.

Subsequently, as a result of increasing Covid-19 positivity rates, restaurants and bars were required to close at 10:00 p.m. pursuant to EO 202.74.[19] And on December 11, 2020, Governor Cuomo issued EO 202.81[20] prohibiting indoor dining in restaurants in New York City, effective December 14, 2020 (Blog Decl. ¶ 37, Exs. T, U) as a result of a continued rise in Covid-19 infections in New York. *See also, id.* Exs. V, W, New York City FAQs and State Liquor Authority Guidelines on closing indoor dining in New York City restaurants).

The Governor's Executive Orders regarding restaurant and bar services have sought to balance industry needs with a safe reopening that avoids unnecessary congregating and mingling. *See, e.g.,* Blog Decl. ¶¶ 51, 86. As a logical matter, the more people an individual interacts with at a gathering, and the longer that interaction lasts, the higher the potential risk of their becoming infected with COVID-19 and spreading the disease. A lengthy period of time occupying the same space is an important factor in increased risk of transmitting the COVID-19 virus, and to the extent that late-night service can further encourage individuals to gather and mingle, it heightens the risk of COVID-19 transmission. D. *at* 51. This risk is particularly acute at establishments that serve alcohol because as individuals drink they are more likely to neglect social distancing standards, and the chances of further mingling and transmission of the virus increase the later a bar or restaurant remains open. *Id.* ¶¶ 41-51. The current rules precluding indoor dining and limiting outdoor dining until 10:00 p.m. will mitigate these risks. *Id.*

---

[18] Executive Order 202.61 (September 9, 2020), available at https://www.governor.ny.gov/news/no-20261-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

[19] *See* N.Y. Exec. Order 202.74 (Nov. 12, 2020), available at https://www.governor.ny.gov/news/no-20274-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

[20] *See* N.Y. Exec. Order 202.81 (Dec. 14, 2020), available at https://www.governor.ny.gov/news/no-20281-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

## THE PRESENT LAWSUIT AND PRELIMINARY INJUNCTION MOTION

Plaintiff d/b/a Seaport House (Hopkins Hawley LLC) ("Seaport") operates a restaurant in Manhattan. Complaint, ECF No. 1 ("Compl."), at ¶ 54. Plaintiffs Greater New York Merchants Alliance and Costin Tarsoaga are, respectively, an association of a restaurant owner and an individual employed in restaurants in a "front of the house" capacity. *Id.* at ¶¶ 55-56. Plaintiffs purport to bring this case as a class action. *Id.* at ¶¶ 1, 89-107.

Plaintiffs commenced this proceeding by filing a complaint on or about December 25, 2020. The Complaint alleges seven causes of action against both Governor Cuomo and a number of New York City defendants, Compl. at ¶¶ 108-184.[21]

Plaintiffs filed their motion for a preliminary injunction on December 30, 2020, requesting that the Court enjoin the defendants, including Governor Cuomo, from the following:

> "1. Enforcing Executive Order(s) 202.81, 202.61 as continued in Executive Order 202.79 unless or until: a. The State and City of New York inspect the Plaintiff's restaurant and determine the efficacy of the ventilation system and operating procedures as a means of mitigating and otherwise eliminating the spread of the virus; and b. The Court reviews the Governor's emergency powers and the Executive Order(s) for constitutionality and legality, as well as investigate the potential of devising and implementing less restrictive, more productive measures like those designed and implemented by Plaintiffs;" and

> "2. Restricting INDOOR DINING; and, additionally, restricting outdoor dining until 10:00 p.m. thereby extending outdoor dining until 1:00 a.m. on New Year's Eve into New Year's Day; and restricting outdoor dining until 10 a.m. thereafter, extending it permanently until 12 a.m. thereafter until the Emergency Orders are justly vacated by the Cuomo Administration."

Plaintiffs' Emergency Order to Show Cause for a Temporary Restraining Order and a Preliminary Injunction, ECF No. 16.

---

[21] These putative causes of action are styled as (1) "Deprivation of fundamental liberty interests including the right to publicly assemble and protest our government" (Compl. at ¶¶ 108-118); (2) "The State's Executive Orders are an unconstitutional infringement on the powers of the federal government as regulated by the Dormant Commerce Clause" (Compl. at ¶¶ 119-128); (3) "Violation of the Fourteenth Amendment: Due Process" (Compl. at ¶¶ 129-145); (4) "Legislature cannot delegate core decision making authority to the executive branch" (Compl. at ¶¶ 146-150); (5) "The Order is unconstitutional *as applied* to a properly filtered and compliant space" (Compl. at ¶¶ 151-160); (6) "Supplemental jurisdiction over New York state claims" (Compl. at ¶¶ 161-171); and (7) "Injunctive relief and judicial review" (Compl. at ¶¶ 172-184).

In a declaration in support of the motion, the President of Seaport House and Greater New York Merchants' Alliance asserts that "[w]ithout such an injunction and declaration, the violation of my civil liberties will continue, and my businesses will suffer irreparable harm." Declaration of Kian D. Khatibi dated December 30, 2020, ECF No. 19 ("Khatibi Decl."), at ¶ 12.

## STANDARD OF REVIEW

### A.       Preliminary Injunction Standard of Review

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). And, the movant bears the heavy burden of establishing each of the following elements: (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Id.* at 20. The final two factors – the balance of the equities and the public interest – "'merge when the Government is the opposing party.'" *L&M Bus Corp. v. Bd. of Educ.*, 18 Civ. 1902, 2018 WL 2390125, at \*13 (E.D.N.Y. May 25, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

In addition, the Second Circuit has "held the movant to a heightened standard" where, as here: (i) an injunction is "mandatory" (i.e., altering the status quo rather than maintaining it), or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *People ex. rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, "the movant must show a 'clear' or 'substantial' likelihood of success on the merits and make a 'strong showing' of irreparable harm, in addition to showing that the preliminary injunction is in the public interest." *Id.* (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999); *Doe v. N.Y.U.*, 666 F.2d 761, 773 (2d Cir. 1981)).

Despite Plaintiffs' assertion otherwise (*see* Plaintiffs' Memorandum of Law in Support of their Application for a Temporary Restraining Order, Equitable Relief and Order to Show Cause Why a

Preliminary Injunction Should Not Be Issued, ECF No. 17 ("Pl. Br."), at 11), Plaintiffs are seeking to alter the status quo. As of December 14, 2020, all restaurants in New York City are prohibited from offering indoor dining and are only permitted to offer outdoor dining until 10:00 p.m. Plaintiffs seek to dramatically alter this status quo so that they can offer indoor and outdoor dining, at least at their Seaport House restaurant (and potentially for a class that could include every restaurant in New York City), evidently at full capacity, and at any hour that they wish. Thus, Plaintiffs' motion is subject to the heightened standard for a mandatory injunction. Plaintiffs cannot meet this heightened standard.

> **B.**    **The *Jacobson* Standard**

This is the latest in a series of actions brought in New York State and across the country that have challenged state and local government restrictions on in-person gatherings enacted to reduce the death toll of COVID-19. Such actions contradict a long line of precedent, dating back to *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in which the Supreme Court declared that "a community has the right to protect itself against an epidemic of disease which threatens its members," and that, in such times, judicial scrutiny is reserved for a measure that "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 27, 31; *see also Geller v. Cuomo*, 20 Civ. 4653, 2020 WL 4463207, at *10 (S.D.N.Y. Aug. 3, 2020) (relying on *Jacobson* to uphold prohibition of non-essential gatherings of over 50 people).

As Chief Justice Roberts recently observed: "The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring). Justice Roberts cautioned that a court should be especially reluctant to impose its own judgment in order to set aside acts of those better trained and charged with responsibility to respond to matters "fraught with medical and scientific uncertainties," and, in the

face of those uncertainties, the latitude given those officials "must be especially broad." *Id.* (denying injunctive relief against a California order aimed at limiting spread of COVID-19); *see also Ass'n of Jewish Camp Operators v. Cuomo*, 20 Civ. 687, 2020 WL 3766496, at *8 (N.D.N.Y. July 6, 2020) ("the Court joins the many courts throughout the country that rely on *Jacobson* when determining if a governor's executive order has improperly curtailed an individual's constitutional right during the COVID-19 pandemic"); *Luke's Catering Service, LLC v. Cuomo*, 20 Civ. 1086, 2020 WL 5425008, at *14-15 (W.D.N.Y. Sept. 10, 2020) (applying *Jacobson* to deny preliminary injunction and grant cross-motion to dismiss, in a challenge to New York's 50-person limit on event and banquet venues).[22]

Indeed, recently, the *Jacobson* holding was applied in rejecting a challenge to New York City indoor dining restrictions imposed by the exact Executive Orders at issue here. *See Columbus Ale House v. Cuomo*, No. 20-cv-4291, 2020 WL 6118822, at *3-4 (E.D.N.Y. Oct. 16, 2020) (Cogan, J.) (applying *Jacobson* standard to substantive due process claim challenging executive order requiring restaurants to close at midnight).

For these and other reasons, Plaintiffs' motion for a preliminary injunction should be denied.

---

[22] This principle of deference to states' determinations as to how to protect their citizens from the COVID-19 pandemic has resulted in a chorus of decisions upholding state laws and directives. *See, e.g.*, *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125 (6th Cir. 2020) (MI order closing indoor gyms); *In re Abbott*, 954 F.3d 772 (5th Cir. 2020) (TX temporary ban on unnecessary procedures, including abortion); *Corbett v. Cuomo*, 20 Civ. 4864, Dkt. No. 13 (S.D.N.Y. July 2, 2020) (NY order requiring travel quarantine); *Ill. Republican Party v. Pritzker*, 2020 WL 3604106 (N.D. Ill. July 2, 2020) (IL gatherings restriction); *Elmsford Apt. Associates, LLC v. Cuomo*, 2020 WL 3498456 (S.D.N.Y. June 29, 2020) (NY eviction moratorium); *McCarthy v. Cuomo*, 20 Civ. 2124, 2020 WL 3286530 (E.D.N.Y. June 18, 2020) (NY gathering restriction); *Slidewaters LLC v. Wash. Dep't of Labor & Indus.*, 2020 WL 3130295 (E.D. Wash. June 12, 2020) (WA order closing certain business);; *Prof'l Beauty Fed. of Cal. v. Newsom*, 2020 WL 3056126 (C.D. Cal. June 8, 2020) (CA order closing non-essential businesses); *Talleywhacker, Inc. v. Cooper*, 2020 WL 3051207 (E.D.N.C. June 8, 2020) (NC order closing non-essential business); *Best Supplement Guide, LLC v. Newsom*, 2020 WL 2615022 (E.D. Cal. May 22, 2020) (CA order closing non-essential businesses); *Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496 (D. Md. May 20, 2020) (MD gathering restriction); *Open Our Oregon v. Brown*, 2020 WL 2542861 (D. Or. May 19, 2020) (OR order closing non-essential business); *Geller v. De Blasio*, 20 Civ. 3566, 2020 WL 2520711 (S.D.N.Y. May 18, 2020) (NY gathering restriction); *Henry v. DeSantis*, 2020 WL 2479447 (S.D. Fla. May 14, 2020) (FL order closing businesses and restricting movement);; *McGhee v. City of Flagstaff*, 2020 WL 2308479 (D. Az. May 8, 2020) (AZ stay-at-home order and order closing business); *Cassell v. Snyders*, 2020 WL 2112374 (N.D. Ill. May 3, 2020) (IL stay-at-home order); *Gish v. Newsom*, 2020 WL 1979970 (C.D. Cal. Apr. 23, 2020) (CA stay-at-home order).

13

**ARGUMENT**

I.  **PLAINTIFF CANNOT ESTABLISH A "CLEAR" OR "SUBSTANTIAL" LIKELIHOOD OF SUCCESS ON THE MERITS**

   A.  **Plaintiff's Federal Constitutional Claims Will Not Succeed**

In their moving papers (Pl. Br. at 8-11), Plaintiffs assert three federal claims in support of their contention that they have a substantial likelihood of success on the merits. These claims are styled as (1) the Due Process Clause, (2) the Dormant Commerce Clause, and (3) "First Amendment: Right to Assemble." Plaintiffs cannot show a likelihood of success on the merits of *any* of these claims.

   1.  *Plaintiffs Cannot Show Likelihood of Success on their Due Process Claim*

Plaintiffs' moving papers do not specify whether their due process claim is for an alleged violation of their substantive or procedural due process rights. Pl. Br. at 8-9. Regardless, neither provides a basis for relief.

To establish a substantive due process claim, a plaintiff must first demonstrate that it has "been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). However, "[i]n order to establish a violation of a right to substantive due process, a plaintiff must demonstrate . . . that the government action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Charles v. Orange Cty.*, 925 F.3d 73, 85 (2d Cir. 2019). Substantive due process rights do not protect against government action that is merely "incorrect or ill-advised." *Cunney v. Bd. of Trs. Of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011). Further, under the *Jacobson* standard, judicial scrutiny is reserved only for a measure that "has no real or substantial relation to" the object of protecting the public or is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 27, 31.

Here, Plaintiffs do not allege the violation a "fundamental right" protected by the United States Constitution. The scope of rights afforded by the substantive component of the due process clause is extremely limited, and its protection extends only to those interests that are "implicit in the

concept of ordered liberty," rights "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Walker v. City of Waterbury*, 361 F. App'x 163, 165 (2d Cir. 2010) (internal quotations and citations omitted). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994). The general right to do business has *not* been recognized as a constitutionally protected property right. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); *see also Wigginess Inc. v. Fruchtman*, 482 F. Supp. 681, 689 n.11 (S.D.N.Y. 1979), *aff'd*, 628 F.2d 1346 (2d Cir. 1980) (finding no "fundamental right to work in the common occupations of the community," and "[a]ny such fundamental right that may have been recognized earlier was derived solely from substantive due process cases which have been either discredited or overruled" (quotation marks omitted)). Also, unlike in the case of procedural due process, it is not enough to have a property right under state law. *Local 342, Long Island Pub. Serv. Employees v. Town Bd.*, 31 F.3d 1191, 1196 (2d Cir. 1994). As Plaintiffs' actual grievance concerns business interests, they have not demonstrated an infringement of a fundamental right. Because Plaintiffs do not (and cannot) identify a fundamental right, the rational basis test applies to all of Plaintiffs' constitutional claims. This standard is a deferential one: "As the Supreme Court has stated on multiple occasions, rational basis review 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller v. Doe*, 509 U.S. 312, 319 (1993)). Utilizing that legal framework, the Court must presume that the Executive Orders are constitutional, making it incumbent upon Plaintiffs to negate "every conceivable basis which might support" it. *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012). Plaintiffs utterly fail to do so – indeed, they do not even attempt to do so – and, hence, they have no substantive due process claim.

Similarly, Plaintiffs also fail to demonstrate that the Governor's Executive Orders deprived them of any procedural due process rights. An individual does not have a right to notice and a hearing

on laws enacted by a governmental body that are generally applicable to the public. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 174 (2005) ("[o]fficial action that is legislative in nature is not subject to the notice and hearing requirements of the due process clause"). As EO 202.81 and the other Executive Orders set forth generally applicable requirements for the public, Plaintiffs' procedural due process claim (if any) fails accordingly.

### 2. Plaintiffs Cannot Succeed on their Dormant Commerce Clause Claim

Plaintiffs err in claiming that the EOs violate the Dormant Commerce Clause by "affect[ing] and otherwise control[ling] commerce outside of the State's borders" and by "plac[ing] interstate commerce under the Governor's control and prevent[ing] the free flow of commerce between State business owners and out of state business owners." Pl. Br. at 9-10. Rather, the EOs plainly apply solely to establishments in New York.

Plaintiffs misconstrue what is required for a Dormant Commerce Clause claim. They need to show that the act they challenge "(1) 'clearly discriminates against interstate commerce in favor of intrastate commerce,' (2) 'imposes a burden on interstate commerce incommensurate with the local benefits secured,' or (3) 'has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009) (quoting *Freedom Holdings Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004) (citing, *inter alia, Wyoming v. Oklahoma,* 502 U.S. 437, 454–55 (1992); *Healy v. The Beer Inst.,* 491 U.S. 324, 336 (1989); and *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970)). Plaintiffs simply cannot do so.

On their face, and in every practical respect, the Executive Orders do not implicate the Dormant Commerce Clause *at all.* These EOs treat all restaurants within New York City identically: restaurants can offer take-out and delivery and outdoor dining (but not indoor dining), regardless of whether their customers or their vendors are from New York or another state. Further, the Executive Orders serve an indisputably legitimate, local purpose in protecting the public health and safety of

16

New Yorkers. Even if they cause some re-structuring or shifting of the restaurant business operations in New York City, that would hardly present compelling evidence of a disproportionate hardship on interstate commerce. *Cf. Exxon Corporation v. Maryland*, 437 U.S. 117, 127 (1978) (rejecting notion that the Commerce Clause "protects the particular structure or methods of operation in a retail market"). And Plaintiffs fail to demonstrate *in any way* just how Executive Orders restricting indoor dining *in New York City* could conceivably have the practical effect of exerting "extraterritorial control" of commerce occurring entirely outside the boundaries of New York.

At bottom, EO 202.81 and the other Executive Orders at issue simply do not place an undue burden on *interstate* commerce, especially as compared with its beneficial purposes in combating the COVID-19 pandemic. Plaintiffs' Dormant Commerce Clause claim fails as a matter of law.

### 3. Plaintiffs Cannot Show Likelihood of Success on their First Amendment Right to Assemble Claim

Plaintiffs also err in claiming (Pl. Br. at 10-11) that the EOs violate their First Amendment "right to assemble." They simply fail to explain how emergency, temporary restrictions on one commercial activity - indoor dining in restaurants - implicates such a right. Even the cases upon which Plaintiffs rely -- *Jacoby & Myers v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, Appellate Div. of the Supreme Court of N.Y.*, 852 F.3d 178, 185 (2d Cir. 2017), and *Rockwell v. Town of Hamden*, 800 Fed. Appx. 54, 55 (2d Cir. 2020) -- do not support the supposed existence of an unbridled "right of assembly" that would somehow apply in the abstract to owners or operators of restaurants.

In *Jacoby & Myers*, the Second Circuit rejected the claim of a private law firm that regulating its ability to accept equity investment in a law firm from non-attorneys violated its First Amendment right to assembly, holding that "the rights of petition and assembly attach to 'the people'—who are themselves aggrieved and accordingly who seek to assemble or to petition *in order to redress their own grievances." Id.*, 852 F.3d at 87 (emphasis supplied). The Second Circuit expressly rejected the premise that the plaintiff law firm possessed a First Amendment right to associate or to petition on behalf of

its clients, and rejected the premise that anything more than rational basis review should apply to its purported First Amendment claims. Plaintiffs here similarly fail to show that restaurants can assert a First Amendment right on behalf of their customers, much less that dining indoors during a pandemic implicates a First Amendment right of petition and assembly.

*Rockwell* is also inapposite. In that case, the plaintiffs were precluded from attending the funeral service for their deceased granddaughter by local officials at the request of the decedent's family in order to avoid disruption of the funeral. Although it recognized that the First Amendment protects the right to peaceably assemble, the Second Circuit stated that the "Government is permitted to restrict the 'time, place and manner' of assemblies so long as those restrictions further a 'significant governmental interest[],' and permit 'alternative channels for the communication of the information.'" *Rockwell*, 800 Fed. Appx. at 55 (quoting *Concerned Jewish Youth v. McGuire*, 621 F.2d 471, 473 (2d Cir. 1980)).

Here, Plaintiffs do not (and cannot) articulate why the regulation of indoor dining during a global pandemic implicates a First Amendment interest right of assembly, much less that the EOs fail to advance the government's critical interest in saving lives. Consequently, they cannot can show a probability of success on the merits of this claim.

### 4. There Is A Rational Basis For The Indoor Dining Ban

Under the rational basis test, the law is clear that it is the *plaintiffs'* burden to "discredit any conceivable basis which could be advanced to support the challenged" rule, "regardless of whether that basis has a foundation in the record," and regardless of whether that basis "actually motivated" the rule at issue. *Beatie v. City of N.Y.*, 123 F.3d 707, 713 (2d Cir. 1997) (citing *Heller*, 509 U.S. at 320-21; *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)).

As *Beatie* further held, lawmakers have the "freedom to engage in 'rational speculation unsupported by evidence,'" and due process does not require a state "to await concrete proof of

reasonable but unproven assumptions before acting to safeguard the health of its citizens." *Id.* at 713 (finding it rational "for the New York City Council to conclude that cigar smoke might be harmful"). Thus, "unlike exacting forms of scrutiny applied in other contexts, the Governor was not required to explain that choice at all, let alone exhaustively." *Whitmer*, 814 F. App'x at 128 (citing *Beach Commc'ns*, 508 U.S. at 313-14) (Governor's executive order closing indoor fitness facilities in response to COVID-19 pandemic found rationally related to protecting public health and safety even if not most effective or least restrictive measure possible, where idea that heavy breathing and sweating in enclosed indoor space created conditions likely to spread the virus was paradigmatic example of rational speculation that supported governor's treatment of such facilities.); *see also Windsor v. United States*, 699 F.3d 169, 196 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013) (in a rational basis review, "courts look to any 'conceivable basis' for the challenged law, not limited to those articulated by or even consistent with the rationales offered by the legislature").

Here, to dispute the plainly rational basis for the EOs they challenge, Plaintiffs offer unsupported, if not outlandish, arguments that restricting indoor dining will somehow result in *greater* transmission of COVID-19. *See* Pl. Br. at 2 ("[T]he Orders drive people into their homes, where small gatherings have been shown to be one of the highest transmission environments"); Compl. at ¶ 37 ("as logic would have it, as indoor dining closes, private indoor gatherings increase, thereby increasing the infection, hospitalization and death rates due to COVID-19").

Plaintiffs' contentions are simply wrong. Restricting indoor dining (and limiting the hours of outdoor dining) in bars and restaurants within a city that is still in the midst of a deadly pandemic is sensible and reasonably related to a legitimate government interest in avoiding an increase in COVID-19 cases. *See Wiggiess Inc.*, 482 F. Supp. at 689 n.11 ("State statutes regulating business activity need only be rationally related to a legitimate state objective."); *McCarthy*, 2020 WL 3286530, at *6 ("Given the seriousness of the COVID-19 pandemic, I find it exceedingly unlikely that plaintiffs will be able

to demonstrate that the COVID-19 Executive Orders do not have a rational basis."). Bars and restaurants are at particularly high risk because (1) COVID-19 spreads more easily indoors, (2) individuals in bars and restaurants cannot wear masks while eating or drinking, and (3) congregating and mingling increases the risk of spread, and drinking at a bar or restaurant can encourage such activity. *See* Blog Decl., ¶¶ 8-33, 38-51. These risks increase later at night because the longer an establishment remains open, the more alcohol is likely to be consumed by patrons and the less likely it is that such patrons will adhere to social distancing and other measures that prevent the risk of spread. *Id.* ¶¶ 43-45, 48. Further, of course, the longer individuals occupy the same space, the higher the risk of transmitting the COVID-19 virus increases. These measures are plainly, indeed are more than, rational. *See Ass'n of Jewish Camp Operators*, 2020 WL 3766496, at *16 ("preventing the spread of COVID-19 is a legitimate interest, and that interest is rationally related to the prohibition on overnight camps").

Plaintiffs also fail to dispute the rational basis for treating restaurants in New York City differently than those outside of the City. Pl. Br. at 2 ("[T]his unequal application of the laws is that restaurants located in New York City are forced to close or severely alter their operations, while similar businesses outside of New York City continue to operate and profit.").[23] As the Governor's evidence establishes, the reason for treating New York City differently than the rest of the State is straightforward: It is the most densely populated region in the State, and the region that has been hardest hit by the pandemic. *See* Blog Decl., at ¶¶ 34-36. Because courts are "required to uphold the classification 'if there is any reasonably conceivable state of facts that could provide a rational basis

---

[23] Although neither the Complaint nor the preliminary injunction motion references the Equal Protection Clause, Plaintiffs assert that the midnight closure rule is biased and discriminates against New York City. Regardless of whether Plaintiffs are asserting substantive due process or equal protection claims, they are subject to rational basis review because the classifications made by Governor Cuomo "neither involv[e] fundamental rights nor proceed[] along suspect lines." *Sensational Smiles*, 793 F.3d at 284. Accordingly, to prevail, Plaintiffs again must "negat[e] every conceivable basis which might support" the classification. *Id.* They clearly have not done so.

for the classification,'" these reasons are more than sufficient. *See Sensational Smiles*, 793 F.3d at 284 (quoting *Heller*, 509 U.S. at 320).[24] Thus, Plaintiffs cannot succeed on their challenge to a rule treating restaurants in New York City differently than those outside of New York City.

Plaintiffs' remaining arguments also fall woefully short of negating "*every* conceivable basis which might support" the indoor dining restriction. *Armour*, 566 U.S. at 681 (emphasis supplied). This is particularly true when this case is viewed through the lens of *Jacobson*'s requirement that a government measure enacted to combat an epidemic must be upheld unless it "'has no real or substantial relation to'" the object of protecting 'the public health, the public morals, or the public safety' or 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Geller*, 2020 WL 2520711 at *3 (quoting *Jacobson*, 197 U.S. at 31). Thus, under well-settled law, Plaintiffs simply have no chance of success on their federal claims, let alone a strong likelihood of success.

### B.  Plaintiffs' State Law Claims Will Not Succeed

Plaintiffs' sixth cause of action seeks relief under State law, *i.e.*, that Governor Cuomo exceeded his powers under the New York State Constitution by issuing the challenged Executive Orders.

Such a claim is manifestly barred from consideration in this Court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-06 (1984) (Eleventh Amendment prevents suit requiring state official to follow state law). The Eleventh Amendment prohibits lawsuits against a state without the state's unambiguous consent or an act of Congress. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996). This immunity "includes suits against state officials in their official capacities," such as Governor Cuomo. *Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order) (citing *Davis v.*

---

[24] Governor Cuomo's showing here is more than adequate to establish a rational basis for indoor dining restrictions; indeed, "[w]here rational basis scrutiny applies, the Government 'has no obligation to produce evidence,' or 'empirical data' to 'sustain the rationality of a statutory classification.'" *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001) (quoting *Heller*, 509 U.S at 320).

*New York*, 316 F.3d 93, 101-02 (2d Cir. 2002)).

A narrow exception to Eleventh Amendment immunity exists under the *Ex parte Young* doctrine, which permits "suits against state officers acting in their official capacities that seek prospective injunctive relief to prevent a continuing violation of federal law," but "*Young* does not allow a federal court to issue an injunction for a violation of state law." *Kelly v. N.Y. Civil Serv. Comm'n*, 632 F. App'x 17, 18 (2d Cir. 2016) (summary order); *accord Treistman v. McGinty*, 804 F. App'x 98 (2d Cir. 2020) (summary order) ("A claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.").[25]

Plaintiffs' State law claim thus cannot provide a basis for a preliminary injunction.

## IV.   PLAINTIFFS HAVE NOT SHOWN LIKELIHOOD OF IRREPARABLE HARM

Plaintiffs have also failed to show that the measures implemented to combat the COVID-19 pandemic will cause them irreparable harm. *Vis Vires Grp., Inc. v. Endonovo Therapeutics, Inc.*, 149 F. Supp. 3d 376, 390 (E.D.N.Y. 2016) ("To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.") (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).

Notably, the Executive Orders at issue have restricted indoor dining in New York City since December 14, 2020. *See* EO 202.81. Moreover, Governor Cuomo has announced that dining restrictions will be reevaluated based on infection rates and other data.[26] Further, outdoor dining

---

[25] The fact that Plaintiffs have also alleged federal causes of action is of no moment because "[t]his constitutional bar applies to pendent claims as well." *Pennhurst*, 465 U.S. at 120.

[26] *See* Governor's Press Release dated Sept. 9, 2020 ("the State will monitor any positivity increase on an ongoing basis and potentially reassess if necessary"); https://www.governor.ny.gov/news/governor-cuomo-announces-indoor-dining-new-york-city-allowed-resume-beginning-september-30-25.

remains permitted in New York City with the use of heat lamps, and take-out and delivery services are still permitted, as they have been throughout the pandemic.[27] For their part, Plaintiffs only offer the conclusory statement that "Plaintiffs' injuries are actual and will continue to accrue as long as the Executive Orders are enforced." Pl. Br. at 12.

Plaintiffs have failed to sufficiently demonstrate that the temporary restrictions on indoor dining, coupled with the continuation of outdoor dining and take-out and delivery services, will lead to the imminent closure of Seaport House, rather than a temporary financial loss of revenue. *See Do Corp. v. Town of Stoughton*, 2013 WL 6383035, at *9 (D. Mass. Dec. 6, 2013) (reducing scope of liquor license "to service before 11 p.m." mere financial loss and not irreparable harm).

On the other hand, the State suffers irreparable harm any time that it is enjoined by the court from enforcing one of its policies designed to protect public health. *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers). Here, such harm is manifest because the policy Plaintiffs seek to enjoin is intended to prevent the spread of COVID-19 and the resulting severe illnesses and loss of lives. Enjoining the Executive Orders would impair the State's ability to safely manage the reopening process for all of these establishments, the riskiest of all industries, during a deadly pandemic and to protect the health, safety, and welfare of New Yorkers.

V.   **THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF NEW YORK'S MISSION TO PROTECT ITS CITIZENS FROM A GLOBAL PANDEMIC**

As a final matter, the balance of equities and considerations of the public interest also weigh decidedly in favor of denying Plaintiffs' request for emergency relief.

"As the Supreme Court reaffirmed in *Winter* [555 U.S. 7, 20] a plaintiff seeking a preliminary injunction must demonstrate not just that they have some likelihood of success on the merits and will

---

[27] *See* EOs 202.38, 202.52, 202.61 and 202.74; *see also New York Times*, "Outdoor Dining to Become Permanent, Even in Winter" (Sep. 25, 2020)   *https://www.nytimes.com/2020/09/25/nyregion/nyc-outdoor-dining-restaurants.html*.

suffer irreparable harm absent an injunction, but also that the 'balance of the equities tips in his favor and an injunction is in the public interest.'" *Otoe-Missouria Tribe v. N.Y.S. Dep't of Fin. Svcs.*, 769 F.3d 105, 112 n.4. (2d Cir. 2014). "These factors merge when the Government is the opposing party." *Make the Rd. N.Y. v. Cuccinelli*, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019) (citing *Nken*, 556 U.S. at 435).

Further, the reviewing court must ensure that the "public interest would not be disserved" by the issuance of the injunction. *Salinger*, 607 F.3d at 80 (citing *eBay*, 547 U.S. at 391). In exercising their discretion in whether to enter an injunction, courts "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *N.Y.S. Rifle & Pistol Ass'n v. City of N.Y.*, 86 F. Supp. 3d 249, 258 (S.D.N.Y. 2015), *aff'd*, 883 F.3d 45 (2d Cir. 2018) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). This consideration includes the government's interest in public health. *Million Youth March, Inc. v. Safir*, 155 F.3d 124, 125-26 (2d Cir. 1998) (modifying injunction because District Court failed to consider government's interest in, *inter alia*, public health against First Amendment rights).

The State's interest in preventing a spike in COVID-19 cases is vitally important. And, ensuring that restaurants and bars reopen for indoor dining at a gradual and measured pace certainly furthers that interest. This gradual and measured reopening also provides sufficient time for the State to analyze the subsequent data to ensure that the reopening is not leading to an increase in cases before proceeding with more a more expansive reopening plan. *See Ass'n of Jewish Camp Operators*, 2020 WL 3766496, at \*21 (injunction was not in the public interest due to "the unprecedented nature of the COVID-19 pandemic, the deadly nature of the virus itself, the lack of a vaccine at the time of this writing, and lack of scientific agreement about its transmission).[28] Plaintiffs' interest in operating their

---

[28] Plaintiffs fail to support their contention that "[t]here is no scientific evidence that the Governor's restrictions as they are administered, will have any tangible impact on the transmission of the virus." Pl. Br. at 3. Similarly unsupported is their claim (*Id.*) that "[a]n upgraded ventilation system working in conjunction with operating procedures such as social distancing and maintaining adequate fresh air flow, could lead to a "Best Practices" protocol that could permit restaurants

businesses with indoor dining and drinking hardly outweighs the critical need to ensure that the reopening of indoor dining for bars and restaurants *does not endanger the public as a whole*. *See* Order dated January 8, 2021 (ECF No. 32) at 2 ("the Court also finds the public interest factor to weigh in favor of denying the TRO request … [b]ecause Governor Cuomo's latest restaurant dining policy constitutes a prophylactic measure designed to safeguard the welfare and safety of the New York City public against the COVID-19 virus, the Court will presume the policy is valid until a more complete record indicates otherwise.").

Accordingly, the public interest and equitable considerations require the denial of Plaintiffs' motion. *See Winter*, 555 U.S. at 23-24 (holding "proper consideration" of public interest and equitable factor "alone require[d] denial of the requested injunctive relief").

## CONCLUSION

For the reasons set forth above, Governor Cuomo respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.

Dated:  New York, New York    LETITIA JAMES
      January 13, 2021    Attorney General
                  State of New York
                  ***Attorney for Defendant Governor Cuomo***

                  By:  /s/ Seth J. Farber
                      Seth J. Farber
                      Assistant Attorney General
                      28 Liberty Street
                      New York, NY 10005
                      (212) 416-8029
                      Seth.farber@ag.ny.gov

---

and similar establishments to open and operate, while protecting patrons from deadly small gatherings." As Justice Roberts cautioned in his concurrence in *S. Bay* (140 S. Ct. 1613), courts should be especially reluctant to impose their own judgment in order to set aside acts of those better trained and charged with responsibility to respond to matters "fraught with medical and scientific uncertainties," and, in the face of those uncertainties, the latitude given those officials "must be especially broad." *Id.*