UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

d/b/a **SEAPORT HOUSE HOPKINS HAWLEY LLC,**
**THE GREATER NEW YORK MERCHANTS'**
**ALLIANCE,** and **COSTIN TARSOAGA**,
  On behalf of themselves and all others similarly situated,

                                                    Plaintiffs,

                                                                        20-CV-10932 (PAC)

                        -against-


**ANDREW M. CUOMO,** in his personal and official
capacity as Governor of the State of New York, **THE**
**NEW YORK CITY DEPARTMENT OF FINANCE,**
**THE NEW YORK CITY SHERIFF'S DEPARTMENT,**
and **MAYOR DE BLASIO**, in his personal and official
capacity as Mayor of the City of New York,

                                                    Defendants.

------------------------------------------------------------------------ x


## CITY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

                                JAMES E. JOHNSON
                                Corporation Counsel of the
                                    City of New York
                                Attorney for Defendants Mayor de
                                Blasio, New York City Department of
                                Finance and New York City Sheriff's
                                Department
                                100 Church Street
                                New York, New York 10007

SHERYL NEUFELD
MICHELLE GOLDBERG-CAHN
KERRI A. DEVINE
SAMANTHA SCHONFELD

            Of Counsel.

April 2, 2021

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF AUTHORITIES .............................................................................................iii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF MATERIAL FACTS ......................................................................... 3

LEGAL STANDARD....................................................................................................... 6

ARGUMENT

      POINT I

          THE COMPLAINT SHOULD BE DISMISSED AS AGAINST THE CITY AS THE CHALLENGED ORDERS WERE ISSUED BY THE STATE............................................. 7

      POINT II

          PLAINTIFFS' CLAIMS FAIL PURSUANT TO THE STANDARD SET FORTH IN JACOBSON V. MASSACHUSETTS............................................................. 8

      POINT III

          PLAINTIFFS' DUE PROCESS CLAIMS FAIL. ................................... 11

          A.  Plaintiffs were not entitled to procedural due process with respect to the Challenged Orders................................. 11

              1.  Plaintiffs were not entitled to notice and an opportunity to be heard with respect to the Challenged Orders as they are legislative in nature. ...................................................................11

              2.  Plaintiffs' failure to identify a liberty or property interest of which they were deprived is fatal to both their due process claims. ...................................................................11

              3.  Even assuming plaintiffs identified a property or liberty interest of which they were deprived, they were not entitled to a pre-deprivation hearing...............................................13

**Pages**

    B. The Challenged Orders do not violate substantive due process.........................................................13

POINT IV

    PLAINTIFFS' DORMANT COMMERCE CLAUSE CLAIM FAILS .........................................................15

POINT V

    PLAINTIFFS' FIRST AMENDMENT FREEDOM OF ASSEMBLY CLAIM FAILS .............................................18

POINT VI

    MAYOR DE BLASIO IS ENTITLED TO QUALIFIED IMMUNITY .......................................................20

POINT VII

    THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE CLAIM, WHICH IN ANY EVENT, FAILS. .......................................................21

    A. This Court should not exercise supplemental jurisdiction. .......................................................21

    B. Plaintiffs fail to adequately plead that the City defendants violated the Separation of Powers or exceeded their authority.................................................22

POINT VIII

    PLAINTIFFS' CLAIMS ARE MOOT...................................24

CONCLUSION...............................................................25

**TABLE OF AUTHORITIES**

<u>**Cases**</u>                                                                                                <u>**Pages**</u>

In Re Abbott,
   954 F. 3d 772 (5th Cir Apr. 7, 2020) ........................................................................8

Agudath Israel of America v. Cuomo,
   2020 U.S. App. LEXIS 40417 (2d Cir. Dec. 28, 2020) ............................................8

Amato v. Elicker,
   460 F. Supp. 3d 202 (D. Ct. May 19, 2020) ............................................................9

Antietam Battlefield KOA v. Hogan,
   461 F. Supp. 3d 214 (D. Md. May 20, 2020)...................................................16, 17

Ashcroft v. al-Kidd,
   563 U.S. 731 (2011)................................................................................................20

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...........................................................................................6, 18

Ass's of Jewish Camp Operators v. Cuomo,
   2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020)........................................9

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)...........................................................................................6, 22

Benner v. Wolf,
   No. 20-cv-775, 2020 U.S. Dist. LEXIS 89425 (M.D. Pa. May 21, 2020).............13

Bocelli Ristorante Inc. v. Cuomo,
   2020 N.Y. Misc. LEXIS 10213 (Sup. Ct. Rich. Co. Nov. 6, 2020)....................9, 12

Boreali v. Axelrod,
   71 N.Y.2d 1 (1987) ................................................................................................23

Bourquin v. Cuomo,
   85 N.Y.2d 78 (1995) ..............................................................................................23

Cantazaro v. Weiden,
   188 F.3d 56 (2d Cir. 1998)....................................................................................13

Carver v. Nassau County Interim Finance Authority,
   730 F.3d 150 (2d Cir. 2013)..................................................................................22

College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,
   527 U.S. 666 (1999)..............................................................................................12

**Cases**                                                                              **Pages**

Columbus Ale House, Inc. v. Cuomo,
    2020 U.S. Dist. LEXIS 191828 (E.D.N.Y. Oct. 15, 2020)............................9, 10, 12

Conn v. Gabbert,
    526 U.S. 286 (1999)......................................................................................12

County of Sacramento v. Lewis,
    523 U.S. 833 (1998)......................................................................................14

Dallas v. Stanglin,
    409 U.S. 19 (1989)........................................................................................19

Dark Storm Indus, LLC v. Cuomo,
    2020 U.S. Dist. LEXIS 120514 (N.D.N.Y. July 8, 2020)......................................10

Davidson v. Flynn,
    32 F.3d 27 (2d Cir. 1994)..................................................................................6

Ewing v. Mytinger & Casselberry Inc.,
    339 U.S. 594 (1950)......................................................................................13

Fisher v. United States Atty.,
    722 F. App'x 40 (2d Cir. 2018) ........................................................................24

Fox v. Bd. of Trs. of the State Univ.,
    42 F.3d 135 (2d Cir. 1994)...............................................................................24

Garcia v. N.Y.C. Dept. of Health & Mental Hygiene,
    31 N.Y.3d 601 (2018) ....................................................................................23

Giordano v. City of New York,
    274 F.3d 740 (2d Cir. 2001).............................................................................21

Givens v. Newsom,
    459 F. Supp. 3d 1302 (E.D.C.A. 2020)........................................................18, 19

Grandon v. Merrill Lynch & Co.,
    147 F.3d 184 (2d Cir. 1998)...............................................................................6

Grasmere Fit, Inc. v. de Blasio,
    2020 N.Y. Misc. LEXIS 10981 (Sup. Ct. Rich. Co. Nov. 17, 2020)........................7

H's Bar, LLC v. Berg,
    2020 U. S. Dist. LEXIS 218371 (S.D. Ill. November 21, 2020) ........................9, 19

**Cases**                                                   **Pages**

Hartman v. Acton,
   2020 U.S. Dist. LEXIS 72068 (S.D. Ohio Apr. 21, 2020) ......................................................11

Hodel v. Va. Surface Mining & Reclamation Ass'n,
   452 U.S. 264 (1981).........................................................................................................13

Hopkins Hawley, LLC v. Cuomo,
   2021 U.S. Dist. LEXIS 24580 (S.D.N.Y. Feb. 9, 2021)...............7, 8, 9, 11, 14, 15, 18, 19, 24

Hu v. City of New York,
   927 F. 3d 81 (2d Cir. 2019).............................................................................................12

Jacobson v. Massachusetts,
   197 U.S. 11, 25 S. Ct. 358 (1905)...........................................................................2, 8, 9, 10

Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth
   Dep'ts,
   852 F.3d 178 (2d Cir. 2017)............................................................................................19

Jones v. Schneiderman,
   974 F. Supp. 2d 322 (S.D.N.Y. 2013)..............................................................................15

JWJ Indus., Inc., v. Oswego Cty.,
   538 F. App'x 11 (2d Cir. 2013) .......................................................................................12

Kolari v. N.Y.-Presbyterian Hosp.,
   455 F.3d 118 (2d Cir. 2006)............................................................................................22

League of Indep. Fitness Facilities & Trainers v. Whitmer,
   2020 U.S. Dist. LEXIS 110884 (W.D. MI. June 19, 2020)....................................................9

Levine v. Whalen,
   39 N.Y.2d 510 (1976) ....................................................................................................23

Liberian Cmty. Ass'n of Conn. v. Lamont,
   970 F.3d 174 ................................................................................................................21

Logan v. Zimmerman Brush Co.,
   455 U.S. 422 ................................................................................................................11

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992).........................................................................................................1

Madonna v. United States,
   878 F.2d 62 (2d Cir. 1989)................................................................................................6

**<u>Cases</u>**                                                                                                 **<u>Pages</u>**

<u>Marshall v. United States,</u>
   414 U.S.417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)............................................................10

<u>McCarthy v. Cuomo,</u>
   2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) ......................................................9

<u>Mich. Rest. & Lodging Ass'n v. Gordon,</u>
   2020 U.S. Dist. LEXIS 220880 (W.D. Mich. Nov. 20, 2020)...........................................15, 16

<u>New York Pet Welfare Ass'n v. City of New York,</u>
   143 F. Supp. 3d 50 (E.D.N.Y. 2015),
   <u>aff'd</u> 850 F.3d 79 (2d Cir. 2017),
   <u>cert denied</u>, 138 S. Ct. 131 (2017) .......................................................................................11

<u>Northern Southern Corp. v. Oberly,</u>
   822 F.2d 388 (3d Cir. 1987)..................................................................................................17

<u>Ohralik v. Ohio State Bar Ass'n,</u>
   436 U.S. 447 (1978)..............................................................................................................19

<u>Oregon Rest. & Lodging Ass'n v. Brown,</u>
   2020 U.S. Dist. LEXIS 220414 (D. Or. Nov. 24, 2020).....................................................16, 17

<u>Our Wicked Lady, LLC v. Cuomo,</u>
   2021 U.S. Dist. LEXIS 44505 (S.D.N.Y. March 9, 2021) ...........................................9, 11, 14

<u>Page v. Cuomo,</u>
   2020 U. S. Dist LEXIS 183769 (N.D.N.Y Aug. 11, 2020) ..........................................9, 13, 14

<u>Parratt v. Taylor,</u>
   451 U.S. 527 (1981)..............................................................................................................13

<u>Pena v. DePrisco,</u>
   432 F.3d 98 (2d Cir. 2005)....................................................................................................13

<u>Pike v. Bruce Church Inc.,</u>
   397 U.S. 137 (1970)..............................................................................................................17

<u>Plaza Motors of Brooklyn v. Cuomo,</u>
   2021 U.S. Dist. LEXIS 12726 (E.D.N.Y. Jan. 22, 2021) .......................................................18

<u>Pleasant View Baptist Church v. Beshear,</u>
   2020 U.S. App. LEXIS 40077 (6th Cir. Dec. 21, 2020).........................................................25

<u>Poe v. Leonard,</u>
   282 F.3d 123 (2d Cir. 2002) (applying <u>Sacramento</u>) ............................................................14

**Cases**                                                                  **Pages**

Pollok v. Chen,
    2020 U.S. App. LEXIS 9261 (2nd Cir. 2020), 2020 WL 1456495 ........................13

Purcell v. New York City Police Department,
    2017 U.S. Dist. LEXIS 175161 (E.D.N.Y. Oct. 23, 2017).......................................1

Roberts v. U.S. Jaycees,
    468 U.S. .............................................................................................................18, 19

Rockwell v. Town of Hamden,
    800 Fed. App'x 54 (2d Cir. 2020)...........................................................................19

Roman Catholic Diocese v. Cuomo,
    208 L. Ed. 2d 206 (2020) .................................................................................8, 20

In re Rutledge,
    956 F.3d 1018 (8th Cir 2020) .................................................................................9

S. Bay United Pentecostal Church v. Newsom,
    140 S. Ct. 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring) ................10

Savage v. Mills,
    2020 U.S. Dist. LEXIS 141628 (D. Me. Aug. 7, 2020)...................................12, 13

SH3 Health Consulting, LLC v. Page,
    459 F. Supp. 3d 1212 (E.D.M.O. 2020)...................................................................19

Smith v. Half Hollow Hills Cent. School Dist.,
    298 F.3d 168 (2d Cir. 2002)...................................................................................14

Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.,
    560 U.S. 702 (2010).................................................................................................12

Town of Southold v. Town of E. Hampton,
    477 F.3d 38 (2d Cir. 2007)......................................................................................16

Valencia v. Lee,
    316 F.3d 299 (2d Cir. 2003)...................................................................................21

Velez v. Levy,
    401 F.3d 75 (2d Cir. 2005).....................................................................................14

Ward v. Rock Against Racism,
    491 U.S. 781 (1989).................................................................................................20

**Cases**                                                                           **Pages**

Wine & Spirits Retailers, Inc. v. Rhode Island,
    418 F.3d 36 (5th Cir. 2005) .................................................................18, 19

World Gym, Inc. v. Baker,
    2020 U.S. Dist. LEXIS 131236 (D. Mass. July 24, 2020)................................13, 14

Young v. James,
    2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020) ................................9

**Statutes**

28 U.S.C. § 1367(c)(1)...................................................................................22

28 U.S.C. § 1367(c)(3)...................................................................................21

42 U.S.C. § 1983.............................................................................................2

Exec. Law § 24 ...................................................................................3, 22, 23

Exec. Law § 24(a) .........................................................................................23

Exec. Law § 24(c) .........................................................................................23

Public Health Law § 2800..............................................................................23

Defendants, the NEW YORK CITY DEPARTMENT OF FINANCE ("DOF"), THE NEW YORK CITY SHERIFF'S DEPARTMENT[1], and MAYOR BILL DE BLASIO, in his personal and official capacity as Mayor of the City of New York ("Mayor de Blasio") (collectively "City defendants") by their attorney, JAMES E. JOHNSON, Corporation Counsel of the City of New York, submit this memorandum of law in support of their motion to dismiss the complaint.[2]

## PRELIMINARY STATEMENT

Plaintiffs, a restaurant, a non-profit entity purporting to represent restaurant owners[3], and a restaurant worker, bring this putative class action challenging the State's restrictions on restaurants in New York City issued in response to the unprecedented public health crisis caused by the outbreak of the COVID-19 virus. Specifically, plaintiffs are seeking to enjoin the restrictions put in place by New York State Executive Order ("State E.O.") No. 202.81, which previously banned indoor dining in New York City, and the directives contained in State E.O. 202.61 and continued on in State E.O. 202.79 ("Challenged Orders.") which previously prohibited in-person dining, outdoors or indoors when permitted, from 10:00 p.m. to 5:00 a.m. at New York City restaurants.[4]

---

[1] Plaintiffs' claim against DOF and the Sheriff's Department should be dismissed because "[t]he New York City Charter provides that suits shall be brought in the name of the City of New York and not in that of any agency." Purcell v. New York City Police Department, 2017 U.S. Dist. LEXIS 175161, at *3 (E.D.N.Y. Oct. 23, 2017).

[2] Plaintiffs filed an application for a Temporary Restraining Order on December 30, 2020 seeking to enjoin the City's enforcement of the Challenged Orders. That application was denied by this Court January 8, 2021. See Dkt. No. 32. Similarly, plaintiffs' motion for a preliminary injunction requesting the same relief was denied by this Court on February 9, 2021 See Dkt. No. 57.

[3] It does not appear that this entity has standing as there are no allegations as to how it has suffered an injury-in-fact. Lujan v. Defenders of Wildlife, 504 U.S. 555, 562 (1992).

[4] With the exception of seeking to certify a class, plaintiffs seek the same relief in the complaint as they did in their preliminary injunction application which was already denied by this Court. See Dkt. No. 57.

Plaintiffs allege that the Challenged Orders violate their procedural and substantive due process rights, discriminate against interstate commerce in violation of the Dormant Commerce Clause, violate their First Amendment right to assemble,[5] and violate the separation of powers. <u>See</u> Complaint, <u>generally</u>. Notwithstanding the fact that the Challenged Orders have been superseded by less restrictive subsequent orders, plaintiffs' claims fail as a matter of law.

As an initial matter, plaintiffs' claims against the City defendants must be dismissed as all of the Challenged Orders were made or issued by the State. In any event, even if any of the Challenged Orders were attributable to City defendants, plaintiffs fail to establish that such actions were unconstitutional in light of the deferential standard set forth in <u>Jacobson v. Massachusetts</u>, which held that measures implemented to protect the public health will not be disturbed unless it has no "real or substantial" relation to its objects or, is beyond all question, "a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. 11, 31 (1905).

Even if <u>Jacobson</u> were not applicable, as this Court previously recognized, plaintiffs' claims still fail under traditional constitutional analyses. Plaintiffs simply fail to adequately plead that their constitutional rights were violated, and accordingly their claims alleging violations of substantive and procedural due process, the dormant Commerce Clause and Freedom of Assembly must be dismissed.

---

[5] Plaintiffs fail to articulate a separate claim pursuant to 42 U.S.C. § 1983, however, such a claim would fail as plaintiffs are not likely to succeed on the merits of their claims and the Complaint lacks any allegations of Mayor de Blasio's personal involvement with respect to the underlying claims.

## STATEMENT OF MATERIAL FACTS

### The COVID-19 Public Health Crisis

In response to the outbreak of COVID-19 in New York State, on March 7, 2020, New York State Governor Andrew Cuomo ("Governor Cuomo") declared a formal state of emergency in the State of New York. [6]  On March 12, 2020, Mayor Bill de Blasio declared a state of emergency in New York City.[7]  Both New York State and New York City then implemented various regulations aimed at preventing the spread of the COVID-19 virus.

Thereafter, Governor Cuomo issued State E.O. No. 202.3 which states that "[n]o local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law . . . ." and State E.O. No. 202.5 which states that "no locality or political subdivision shall issue any local emergency order or executive order with respect to response of COVID-19 without the approval of the State Department of Health."[8]

On March 18, 2020 Gov. Cuomo issued E.O. No. 202.6. This E.O., effective March 20, 2020, identified, among other things, "Essential Businesses" as "[a]ny essential business or entity providing essential services or functions" and further provided that Essential

---

[6] See https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york.

[7] See https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-98.pdf.

[8]     See     https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency;https://www.governor.ny.gov/news/no-2025-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

Business would not be subject to the in-person restrictions. Restaurants were deemed "Essential retail," but only for take-out and delivery.[9]

**Restrictions on Restaurants**

On March 16, 2020, Governor Cuomo issued State E.O. No. 202.3 prohibiting indoor dining at restaurants throughout the State, but permitting restaurants to provide take-out and delivery service.[10]  That prohibition on indoor dining was lifted on June 12, 2020 for regions in Phase 3 of the State's four-phase reopening timeline pursuant to State E.O. No. 202.41, subject to additional guidance from the State.[11]  State guidance provided that indoor dining in those regions in Phase 3 was limited to 50% capacity.[12]  At that time, New York City was in Phase 1 of the reopening process.  New York City reached Phase 3 on July 6, 2020 and Phase 4 on July 20, 2020. On July 6, 2020, Governor Cuomo issued State E.O. 202.48 extending the prohibition on indoor dining in New York City.[13]

On September 9, 2020, Governor Cuomo issued State E.O. No. 202.61 which, *inter alia*, lifted the ban on indoor dining in New York City beginning September 30, 2020, subject to additional restrictions set by the State.[14]  The State-issued guidance, which is binding

---

[9]   *See*   https://www.governor.ny.gov/news/no-2026-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[10]   *See*   https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[11]   *See*   https://www.governor.ny.gov/news/no-20241-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[12]*See*   https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/Indoor_and_Outdoor_Food_Services_Detailed_Guidelines.pdf (last accessed March 31, 2021).

[13]   *See*   https://www.governor.ny.gov/news/no-20248-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[14]   *See*   https://www.governor.ny.gov/news/no-20261-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

on New York City pursuant to State E.O. No. 202.61, provided, *inter alia*, that indoor dining in New York City must be, "limited to no more than 25% of the maximum occupancy for a particular area as set by the certificate of occupancy, exclusive of employees."[15]

On November 12, 2020, Governor Cuomo issued State E.O. 202.74 directing that in-person dining, whether outdoors or indoors, cease at 10:00 p.m. throughout the State.[16] Thereafter, on December 11, 2020, by State E.O. No. 202.81, Governor Cuomo suspended the authorization for indoor dining in New York City, effective December 14, 2020.[17]

On January 29, 2021, Governor Cuomo announced that indoor dining at eating and drinking establishments in the City would be allowed to resume beginning February 14, 2021, subsequently changed via E.O. 202.93 to February 12, 2021, at a maximum capacity of twenty-five percent (25%) of their normal operating capacity.[18] By State E.O. No. 202.96, Governor Cuomo increased the permitted operating capacity to thirty-five percent (35%) beginning February 26, 2021.[19] By State E.O. 202.97, the Governor increased it once again to fifty percent (50%) of their normal operating capacity beginning March 19, 2021.[20]

---

[15] See Interim Guidance For New York City Indoor Food Services During the Covid-19 Public Health Emergency, https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/NYC_Indoor_Food_Services_Detailed_Guidance.pdf, (last accessed March 31, 2021).

[16] See https://www.governor.ny.gov/news/no-20274-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[17] See https://www.governor.ny.gov/news/no-20281-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[18] See https://www.governor.ny.gov/news/no-20293-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[19] See https://www.governor.ny.gov/news/no-20296-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[20] See https://www.governor.ny.gov/news/no-20297-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

All of the State E.O.s are incorporated by reference in the New York City Executive Orders, as pursuant to State E.O. No. 202.3, New York City must comply with the State E.O.s and cannot impose less restrictive conditions.[21]

## LEGAL STANDARD

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6), the Court is required to accept the facts alleged in the complaint as true and to construe all reasonable inferences in the nonmoving party's favor.  See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998); Davidson v. Flynn, 32 F.3d 27, 29 (2d Cir. 1994) (citing Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989)).  A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  Id. (citations and quotations omitted).

The Supreme Court in Iqbal set forth a "two-pronged" approach for analyzing a motion to dismiss.  Id.  First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.  Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations …plausibly give rise to an entitlement to relief."  Id.  In making its evaluation, a court must undertake a "context-specific task" that requires it to draw on its judicial experience and common sense.  Id. at 679.  Where the well-pleaded facts do not permit the court to infer

---

[21]    See   https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency

more than the mere possibility of misconduct, the complaint must be dismissed.  Id. at 678–79.

("only a complaint that states a plausible claim for relief survives a motion to dismiss").

## ARGUMENT

### POINT I

### THE COMPLAINT SHOULD BE DISMISSED AS AGAINST THE CITY AS THE CHALLENGED ORDERS WERE ISSUED BY THE STATE.

Plaintiffs' claims against City defendants must be dismissed as the Challenged Orders were issued by New York State. See Compl. at 58, "Andrew Cuomo … issued and signed the Order at issue in this case."  In fact, the Complaint contains few references to the City or Mayor and clearly focuses on the actions of the State and Governor.  See, e.g., Compl. at 32, 33, 44, 45, 53, 120, 127, 141.  While the plaintiffs appear to name the City defendants due to their role in enforcing the Challenged Orders within the City, the City defendants are not free to disregard the State E.Os.  Compl. at 59-61.  State E.O. Nos. 202.3 and 202.5 explicitly require the City to adhere to any State Executive Orders and the determinations of the New York State Department of Health.  Indeed, this Court recognized "the City Defendants' predicament in this case" in that the City must comply with Challenged Orders under state law.  See Hopkins Hawley, LLC v. Cuomo, 2021 U.S. Dist. LEXIS 24580, *7 fn 6 (S.D.N.Y. Feb. 9, 2021). Accordingly, as Plaintiffs clearly challenge the State's actions in responding to the COVID-19 pandemic, the Complaint should be dismissed against the City defendants. See Grasmere Fit, Inc. v. de Blasio, 2020 N.Y. Misc. LEXIS 10981, *13-4 (Sup. Ct. Rich. Co. Nov. 17, 2020)("plaintiffs have failed to state a cause of action for damages from defendants with respect to Executive Orders [issued by the Governor] as the shutdown of their businesses was at the direction of the Governor [a non-party], not defendants.")

**POINT II**

**PLAINTIFFS' CLAIMS FAIL PURSUANT TO
THE STANDARD SET FORTH IN JACOBSON
V. MASSACHUSETTS**

The Supreme Court, in the seminal case Jacobson v. Massachusetts, 197 U.S. 11, 31, 25 S. Ct. 358, 363 (1905), acknowledged that "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community." Jacobson, 197 U.S. at 26. In Jacobson, the Supreme Court set forth a deferential standard when reviewing a statute "purporting to have been enacted to protect the public health, the public morals or the public safety," but which allegedly violates a fundamental right. Jacobson, 197 U.S. at 31. Such a statute must not be disturbed unless it "has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law..." Id. In other words, "this review [is] asking whether power had been exercised in an 'arbitrary, unreasonable manner,' or through 'arbitrary and oppressive' regulations." In Re Abbott, 954 F. 3d 772, 784 (5th Cir Apr. 7, 2020) (quoting Jacobson at 28, 38).

As this Court has previously found, the standard set forth in Jacobson applies to this case.[22] Hopkins Hawley, LLC, 2021 U.S. Dist. LEXIS 24580, *11. Indeed, this court and courts across the nation have applied the "real or substantial relation" standard when addressing challenges to orders curtailing constitutional rights during the COVID-19 pandemic. See, e.g.,

---

[22] This is notwithstanding the recent decisions in Roman Catholic Diocese v. Cuomo, 208 L. Ed. 2d 206 (2020) and Agudath Israel of America v. Cuomo, 2020 U.S. App. LEXIS 40417 (2d Cir. Dec. 28, 2020) which are distinguishable from the instant case in that they involved the application of strict scrutiny to plaintiffs' Free Exercise claims, which are not at issue here, and challenged a different public health restriction. Hopkins Hawley LLC, 2021 U.S. Dist. LEXIS 24580, *11-2. While plaintiffs appear to assert that strict scrutiny is applicable herein, there is no support for such application. See Complaint at footnote 1.

Our Wicked Lady, LLC v. Cuomo, 2021 U.S. Dist. LEXIS 44505, *7-8 (S.D.N.Y. March 9, 2021)(denying motion to enjoin COVID-19 related restrictions on restaurants and fitness classes in New York City); In re Rutledge, 956 F.3d 1018 (8th Cir 2020) (finding that "the district court's failure to apply the Jacobson framework produced a patently erroneous result"); Young v. James, 2020 U.S. Dist. LEXIS 198392 (S.D.N.Y. October 26. 2020); Columbus Ale House, Inc. v. Cuomo, 2020 U.S. Dist. LEXIS 191828 *7 (E.D.N.Y. Oct. 15, 2020); H's Bar, LLC v. Berg, 2020 U. S. Dist. LEXIS 218371 (S.D. Ill. November 21, 2020); Ass's of Jewish Camp Operators v. Cuomo, 2020 U.S. Dist. LEXIS 117765 (N.D.N.Y. July 6, 2020) (collecting cases); League of Indep. Fitness Facilities & Trainers v. Whitmer, 2020 U.S. Dist. LEXIS 110884 (W.D. MI. June 19, 2020);McCarthy v. Cuomo, 2020 U.S. Dist. LEXIS 107195 (E.D.N.Y. June 18, 2020) (collecting cases); Amato v. Elicker, 460 F. Supp. 3d 202 (D. Ct. May 19, 2020); Bocelli Ristorante Inc. v. Cuomo, 2020 N.Y. Misc. LEXIS 10213 *15 (Sup. Ct. Rich. Co. Nov. 6, 2020).

This Court has already found that the restrictions on in-person dining "bear[] a relation to the public welfare by seeking to curb the transmission of COVID-19 in higher risk settings such as restaurants." Hopkins Hawley LLC, 2021 U.S. Dist. LEXIS 24580 *15. "[Plaintiffs'] requested relief—50% of indoor dining and extension of the dining curfew to midnight—implicitly concedes that public health regulation of restaurants, in view of the pandemic, is constitutional." Id.. See, also, Ass'n of Jewish Camp Operators, 2020 U.S. Dist. LEXIS 117765 at *22; McCarthy, 2020 U.S. Dist. LEXIS 107195 at *9; Page v. Cuomo, 2020 U. S. Dist LEXIS 183769 *21 (N.D.N.Y Aug. 11, 2020). In finding that a challenge to the State restriction prohibiting restaurants in New York City from providing service after midnight was unlikely to succeed, the Eastern District noted that:

> It is by now well understood that the virus spreads more easily
> indoors and when people gather in close proximity. Social

> distancing and mask wearing are among the few tools available to slow its spread, but these precautions are impacted by indoor dining. Diners cannot wear masks while they eat and drink, and indoor dining necessarily brings individuals from different households together in a restaurant, even if at a distance. Thus, indoor dining poses a greater risk of virus transmission than many other activities.

Columbus Ale House, 2020 U.S. Dist. LEXIS 191828 *9.

Government officials need the flexibility to impose measures aimed at stopping the spread of COVID-19. As Chief Justice Roberts noted earlier in the pandemic, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613, 207 L. Ed. 2d 154 (2020) (Roberts, C.J., concurring). The courts should not second guess determinations made by government officials, in consultation with public health officials, as to how best stem the spread of this deadly virus, particularly, whereas here, government officials seek to address an area "fraught with medical and scientific uncertainties." Columbus Ale House at *11, quoting Marshall v. United States, 414 U.S.417, 427, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)). see also Dark Storm Indus, LLC v. Cuomo, 2020 U.S. Dist. LEXIS 120514 *38 (N.D.N.Y. July 8, 2020)(noting the Court is loathe to second-guess COVID-19-related policy decisions during a pandemic with respect to which businesses are deemed essential). Accordingly, under Jacobson, plaintiffs' claims fail.

## POINT III

## PLAINTIFFS' DUE PROCESS CLAIMS FAIL.

**A.   Plaintiffs were not entitled to procedural due process with respect to the Challenged Orders.**

> **1.   Plaintiffs were not entitled to notice and an opportunity to be heard with respect to the Challenged Orders as they are legislative in nature.**

Plaintiffs were not entitled to procedural due process prior to the enactment of each of the Challenged Orders. The Challenged Orders are legislative in nature.  See Hopkins Hawley, LLC, 2021 U.S. Dist. LEXIS 24580, *16; Our Wicked Lady LLC, 2021 U.S. Dist. LEXIS 44505, *13.  As such, they are not subject to the due process requirements of notice and an opportunity to be heard.  Id., New York Pet Welfare Ass'n v. City of New York, 143 F. Supp. 3d 50, 70 (E.D.N.Y. 2015), aff'd 850 F.3d 79 (2d Cir. 2017), cert denied, 138 S. Ct. 131 (2017). "A person adversely affected by a law of general applicability has no due process right to a hearing[.]" Hartman v. Acton, 2020 U.S. Dist. LEXIS 72068 *22 (S.D. Ohio Apr. 21, 2020). See also Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (noting that an individual's due process rights are not violated by a law of general applicability since "the legislative determination provides all the process that is due.")

> **2.   Plaintiffs' failure to identify a liberty or property interest of which they were deprived is fatal to both their due process claims.**

Even if the Challenged Orders did trigger due process protections, plaintiffs have failed to identify a protected liberty or property interest of which they have been deprived.  The only alleged property right plaintiffs claim to have been deprived of is "their right to compensation,"[23] and the "loss of substantial revenue and income."  See Complaint at ¶¶ 131,

---

[23] Plaintiffs' assertion that they have been denied the right to compensation suggests a takings claim, however, no such claim has been pled.

145.   That is insufficient to support their due process claim.   "[B]usiness in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense," College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999). "Harm to business interests…is not a 'plain, palpable invasion of rights' under the Fourteenth Amendment." Savage v. Mills, 2020 U.S. Dist. LEXIS 141628 *22 (D. Me. Aug. 7, 2020), citing Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot., 560 U.S. 702, 721, (2010) (noting that "the liberties' protected by substantive due process do not include economic liberties"). Moreover, plaintiffs do not have a right to conduct business without conditions. Columbus Ale House at 11; Bocelli, 2020 N.Y. Misc. LEXIS 10213 *18.

          In any event, plaintiffs have not been deprived of the ability to operate their restaurants.  Throughout the pandemic, restaurants in New York City (including plaintiffs') have been permitted to operate in some capacity by providing take-out and delivery service, providing outdoor dining, and at various points–including again now—by providing indoor dining at a reduced capacity.   Thus, the Challenged Orders have not prohibited them from operating completely. Accordingly, they do not run afoul of the Fourteenth Amendment.  See Hu v. City of New York, 927 F. 3d 81, 102 (2d Cir. 2019) ("the right of occupational choice is afforded Due Process protection only when a plaintiff is 'complete[ly] prohibit[ed]' from engaging in his or her chosen profession) (quoting Conn v. Gabbert, 526 U.S. 286, 292 (1999)); see also Columbus Ale House, 2020 U.S. Dist. LEXIS 191828 *12 (finding that plaintiff is unlikely to succeed on its claim that the COVID-19 related restriction prohibiting service after midnight in New York City restaurants arbitrarily infringes on due process rights). Furthermore, lost revenue is insufficient to support a due process claim.  See Hu, 927 F. 3d at 102; see also JWJ Indus., Inc., v. Oswego Cty., 538 F. App'x 11, 14 (2d Cir. 2013).

**3. Even assuming plaintiffs identified a property or liberty interest of which they were deprived, they were not entitled to a pre-deprivation hearing.**

Due process does not automatically trigger a right to a pre-deprivation hearing. Parratt v. Taylor, 451 U.S. 527 (1981). Rather, summary administrative action is justified to protect the health and safety of the public. Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 300 (1981). Indeed, deprivation of property to protect the public health and safety is "[one] of the oldest examples" of permissible summary action. Id. at 300, quoting Ewing v. Mytinger & Casselberry Inc., 339 U.S. 594, 599 (1950); see also, Cantazaro v. Weiden, 188 F.3d 56, 62 (2d Cir. 1998).

Preventing the further spread of COVID-19 justifies such summary administrative action. See Savage v. Mills, 2020 U.S. Dist. LEXIS 141628 *20; World Gym, Inc. v. Baker, 2020 U.S. Dist. LEXIS 131236 *11-12 (D. Mass. July 24, 2020); Benner v. Wolf, No. 20-cv-775, 2020 U.S. Dist. LEXIS 89425 *11 (M.D. Pa. May 21, 2020); Page, 2020 U. S. Dist. LEXIS 183769 *32. "[T]he COVID-19 scenario is the kind of scenario for which emergency action would be expected. Bayley's Campground Inc., 2020 U.S. Dist. LEXIS 94296 *32 (D. Me. May 29, 2020). Accordingly, plaintiffs have been afforded all of the process they are due with respect to the Challenged Orders by their ability to commence the instant action.

**B. The Challenged Orders do not violate substantive due process.**

Plaintiffs' substantive due process claim similarly fails. In order to state a substantive due process claim, "a plaintiff must demonstrate not only government action but also that the government action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Pollok v. Chen, 2020 U.S. App. LEXIS 9261, *10-11 (2nd Cir. 2020), 2020 WL 1456495 *45 (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005)).

Plaintiffs have failed to adequately plead that the Challenged Orders are conscience-shocking. Only a narrow range of extreme government conduct falls within the scope of a substantive due process claim. Indeed, only egregious or outrageous conduct that shocks the conscience is actionable. See County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see also Poe v. Leonard, 282 F.3d 123, 139 (2d Cir. 2002) (applying Sacramento). The Second Circuit has expounded on this standard and required the government conduct to be "brutal and offensive to human dignity…." Smith v. Half Hollow Hills Cent. School Dist., 298 F.3d 168, 173 (2d Cir. 2002) (internal citations and quotations omitted). Put another way, there must be a "malicious and sadistic" abuse of power that has no legitimate government purpose and that is intended to oppress or cause injury. See Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005). It is axiomatic that the City and State have a strong interest in stopping the spread of COVID-19. This Court and others have already held that COVID-19 related business restrictions, including those challenged herein, clearly do not shock the conscience. See Hopkins Hawley LLC, 2021 U.S. Dist. LEXIS 24580, *17; World Gym, 2020 U.S. Dist. LEXIS 131236 *12; Page, 2020 U.S. Dist. LEXIS 183769, *31.

Furthermore, as plaintiffs have failed to identify a fundamental right with which the Challenged Orders interfere, rational basis review applies. Hopkins Hawley LLC, 2021 U.S. Dist. LEXIS 24580, *17, 20; Our Wicked Lady LLC, 2021 U.S. Dist. LEXIS 44505, *9-10. The Challenged Orders easily satisfy this standard. "The [Challenged Orders] undeniably passes rational basis scrutiny: It is premised on a conceivable scientific basis that is rationally related to mitigating the further spread of the COVID-19 virus." Hopkins Hawley LLC, 2021 U.S. Dist. LEXIS 24580, *20-21. See also Our Wicked Lady LLC, 2021 U.S. Dist. LEXIS 44505, *10-11. Accordingly, plaintiffs' substantive due process claim must be dismissed.

14

## POINT IV

## PLAINTIFFS' DORMANT COMMERCE CLAUSE CLAIM FAILS

Plaintiffs assert in a mere conclusory manner that "the Orders violate the Dormant Commerce Clause in that they disproportionately burden interstate commerce as it requires out-of-state commerce to be conducted at the direction of Governor Cuomo's Orders." Compl., ¶ 125. Plaintiffs' claim fails.

"For any challenge brought under the dormant Commerce Clause, courts must determine whether the challenged act treats in-state and out-of-state economic interests differently such that the act 'benefits the former and burden the latter.'" Mich. Rest. & Lodging Ass'n v. Gordon, 2020 U.S. Dist. LEXIS 220880, *5 (W.D. Mich. Nov. 20, 2020) (internal citations omitted). Local provisions violate the dormant Commerce Clause if they: (1) have "the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question," (2) "clearly discriminates against interstate commerce in favor of intrastate commerce," or (3) "imposes a burden on interstate commerce incommensurate with local benefits secured." Jones v. Schneiderman, 974 F. Supp. 2d 322, 349 (S.D.N.Y. 2013) (citation omitted).

To start, plaintiffs have not and cannot plausibly alleged that the Challenged Orders violate the extraterritorial prong of the dormant Commerce Clause since the Challenged Orders neither regulate conduct nor directly control commerce outside of New York. Indeed, the Challenged Orders (which have been superseded by less restrictive orders) temporarily prohibited indoor dining at restaurants and bars operating in New York City; they did not prohibit indoor dining at restaurants and bars operating beyond New York's borders. See Hopkins Hawley, LLC, 2021 U.S. Dist. LEXIS 24580, *18-19 ("because the Dining Policy only

15

applies to restaurants in New York and New York City, it neither 'discriminates' against interstate commerce nor has the "practical effect" of exerting 'extraterritorial control' over it'"); Mich. Restaurant, 2020 U.S. Dist. LEXIS 220880, *6 ("the EO temporarily restricts indoor dining at restaurants and bars operating in Michigan, it does not close restaurants and bars beyond Michigan's borders."); Antietam Battlefield KOA v. Hogan, 461 F. Supp. 3d 214, 239 (D. Md. May 20, 2020) (the Governor's order  "only orders the closure of certain Maryland businesses, and does not regulate out-of-state businesses."). Plaintiffs fail to allege that the Challenged Orders will have any impact on commerce outside of New York City.

Plaintiffs do not and cannot adequately allege that the Challenged Orders clearly discriminate against interstate commerce. A "clearly discriminatory law may operate in three ways: (1) by discriminating against interstate commerce on its face . . . (2) by harboring a discriminatory purpose . . . or (3) by discriminating in its effect." Town of Southold v. Town of E. Hampton, 477 F.3d 38, 48 (2d Cir. 2007) (internal citations omitted); Antietam Battlefield, 461 F. Supp. 3d at 239.  Plaintiffs fail to cite to any provision of the Challenged Orders that discriminates on its face. Indeed, while the Challenged Orders prohibit indoor dining in New York City, their terms do not favor in-state commercial interests nor disfavor out-of-state commercial interests. See Antietam Battlefield, 461 F. Supp. 3d at 239 (the Governor's order was "not facially discriminatory against interstate commerce, as it only orders the closure of certain Maryland businesses, and does not regulate out-of-state businesses."); Oregon Rest. & Lodging Ass'n v. Brown, 2020 U.S. Dist. LEXIS 220414, at *12 (D. Or. Nov. 24, 2020) (Governor's executive order "does not discriminate in favor of in-state interests."). Additionally, the Challenged Orders do not have a discriminatory purpose or effect. Indeed, there is "no indication that the purpose of the [Challenged Orders] is to 'advance [New York's] own

commercial interests by curtailing the movement of articles of commerce.'" Antietam Battlefield, 461 F. Supp. 3d at 239 (internal citations omitted); Oregon Rest., 2020 U.S. Dist. LEXIS 220414, at *12-13 (plaintiffs fail to allege that the COVID–19 executive orders were enacted with a discriminatory purpose; "[t]he Order regulates without regard to geographic origin, meaning it is not discriminatory."). Here, the Challenged Orders were issued with the clear purpose of reducing the transmission of COVID-19 and keeping New York City residents safe, clearly not a discriminatory purpose. Finally, the Challenged Orders have no discriminatory effect or impact on restaurants outside of New York. There is no indication that the Challenged Orders "negatively impact[] interstate commerce to a greater degree than intrastate commerce" and plaintiffs don't state otherwise. See Antietam Battlefield, 461 F. Supp. 3d at 239 (finding no dormant Commerce Clause violation, as, "the order negatively impacts intrastate commerce to a greater degree, as it only applies to Maryland businesses.").

The third prong of the dormant Commerce Clause, known as the Pike balancing test, applies when a statute's alleged effect on interstate commerce is incidental – however, we do not concede there is any such incidental effect. Pike v. Bruce Church Inc., 397 U.S. 137, 142 (1970). Under Pike, courts uphold nondiscriminatory statutes having incidental effects on interstate commerce unless the burden on such commerce is "clearly excessive" with regard to the local benefit. Id. at 142. The burden "appropriately considered in Commerce Clause balancing [under Pike] is the degree to which the [challenged] state action incidentally discriminates against interstate commerce relative to intrastate commerce." Northern Southern Corp. v. Oberly, 822 F.2d 388, 406 (3d Cir. 1987). "The plaintiff[] bear[s] the burden of showing that the burden on interstate commerce outweighs the local benefits." Antietam Battlefield, 461 F. Supp. 3d at 239.

Even if there is an incidental effect on interstate commerce, which plaintiffs do not allege (nevertheless establish), plaintiffs fail to allege that any such incidental burden is "clearly excessive" in comparison to the local benefits of the Challenged Orders. The local benefit of the Challenged Orders—to minimize the indoor interactions between unmasked individuals who may unknowingly transmit the virus to others, thereby curbing the spread of COVID-19—is a legitimate local interest. See, e.g. Hopkins Hawley, LLC, 2021 U.S. Dist. LEXIS 24580, * 19 ("even assuming that the Dining Policy has imposed incidental burdens on interstate commerce—for example, on out-of-state restaurant suppliers or interstate travelers— the Plaintiffs have not shown that these burdens are 'incommensurate' with the local benefit of mitigating further transmission of the COVID-19 virus."); Plaza Motors of Brooklyn v. Cuomo, 2021 U.S. Dist. LEXIS 12726, *18-19 (E.D.N.Y. Jan. 22, 2021).

## POINT V

### PLAINTIFFS' FIRST AMENDMENT FREEDOM OF ASSEMBLY CLAIM FAILS.

In an attempt to support their First Amendment claim, plaintiffs merely assert that defendants have deprived plaintiffs of, "the right to publicly assemble and protest our government." Compl. at ¶ 109.  Plaintiffs fail to plead, however, how this alleged deprivation is connected to the Challenged Orders.  Compl. at ¶¶ 108-118.  Such conclusory assertions are insufficient to support the claim.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

Freedom of Assembly[24] does not exist in the abstract. Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984); Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36,

---

[24] Today, freedom of association and freedom of assembly are largely viewed as one. See Givens v. Newsom, 459 F. Supp. 3d 1302, 1314 (E.D.C.A. 2020), quoting Roberts v. U.S. Jaycees, 468 U.S. at 618.

50 (5th Cir. 2005).   To trigger First Amendment protections, the assembly must be for an expressive purpose.   Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts, 852 F.3d 178, 187-188 (2d Cir. 2017); Givens v. Newsom, 459 F. Supp. 3d at 1314, quoting Roberts, 468 U.S. at 618. "[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456 (1978).

Small talk and the exchange of pleasantries are not entitled to First Amendment protection. See Dallas v. Stanglin, 409 U.S. 19, 24 (1989)("dance-hall patrons – coming together to engage in recreational dancing – is not protected by the First Amendment."); Wine & Spirits Retailers, Inc., 418 F.3d at 53("[c]ertainly, the mere fact that the joint activities that define the business relationship between the franchisor and its franchisees have some communicative component cannot, in and of itself, establish an entitlement to the prophylaxis of the *First Amendment*."); Hopkins Hawley, LLC, 2021 U.S. Dist. LEXIS 24580, *20; SH3 Health Consulting, LLC v. Page, 459 F. Supp. 3d 1212, 1225 (E.D.M.O. 2020); H's Bar, 2020 U.S. Dist. LEXIS 218371 *11. Accordingly, as plaintiffs have failed to sufficiently allege that the Challenged Orders interfere with their ability to associate for an expressive purpose the Freedom of Assembly claim must be dismissed.

Moreover, even if plaintiffs had sufficiently asserted that the temporary restaurant restrictions trigger First Amendment protections, such restrictions do not violate plaintiffs' First Amendment rights.   As set forth in Rockwell v. Town of Hamden, the right to peaceably assemble, 'is not absolute."   800 Fed. App'x 54, 55 (2d Cir. 2020). The Challenged Orders, which are clearly content-neutral, time, place and manner restrictions in that they are wholly unrelated to the suppression of ideas, are justified in that they are "narrowly tailored to serve a

significant governmental interest" and "they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Indeed, not only do they serve a significant interest, but as the Supreme Court recently held, stemming the spread of COVID-19 is an "unquestionably" compelling interest. Roman Catholic Diocese, 208 L. Ed. 206, 209. "[R]estrictions on the time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.'" Warde at 797. Finally, alternative avenues of expressive-association were available to plaintiffs when the Challenged Orders were in effect.

## POINT VI

### MAYOR DE BLASIO IS ENTITLED TO QUALIFIED IMMUNITY.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). As set forth above, the Complaint fails to adequately plead that plaintiffs' constitutional rights were violated. See Points II-V, supra. Consequently, Mayor de Blasio is entitled to qualified immunity. Moreover, the Complaint is devoid of any specific allegations with respect to the Mayor's personal involvement in any of the challenged actions.

Even if this Court were to find that any of plaintiffs' Constitutional claims have merit, Mayor de Blasio would still be entitled to qualified immunity in that is was not and is still not "clearly established" that any of the Challenged Orders violate plaintiffs' constitutional rights. "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every 'reasonable official would understand that what he is doing' is

20

unlawful." <u>Liberian Cmty. Ass'n of Conn. v. Lamont</u>, 970 F.3d 174. 186 (2d Cir. 2020)(citations omitted).   The unprecedented COVID-19 virus has required unprecedented government responses, to which many legal challenges are still winding their way through the judicial system.   To the extent there is precedent regarding the constitutionality of restrictions imposed on businesses, it indicates that restrictions such as those challenged herein are not unconstitutional.   Mayor de Blasio is therefore entitled to qualified immunity in that even if he in any way violated plaintiffs' constitutional rights by enforcing the State E.O.s as directed to by the Governor, such a violation was not clearly established.   <u>See</u> <u>id.</u> at 187-193 (holding that the doctor who issued quarantine orders in response to the Ebola epidemic was entitled to qualified immunity as it was not clearly established that such orders violated due process).

## POINT VII

### THIS COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE CLAIM, WHICH IN ANY EVENT, FAILS.

**A.    This Court should not exercise supplemental jurisdiction.**

Plaintiffs additionally argue that the City improperly delegated legislative powers to the executive branch.   Since plaintiff's federal claims fail to state a claim for the reasons set forth in Points II-V, <u>supra</u>, this Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claim against the City defendants and it should be dismissed.

District Courts may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction.   <u>See</u> 28 U.S.C. § 1367©(3).   Further, supplemental jurisdiction is rarely appropriate where the federal claims have been dismissed on a motion.   <u>See</u> <u>Valencia v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003); <u>Giordano v. City of New York</u>, 274 F.3d 740, 754-755 (2d Cir. 2001). In particular, District Courts decline to exercise

supplemental jurisdiction where state law claims "raise a novel or complex issue of State law." 28 U.S.C. § 1367©(1); see also Carver v. Nassau County Interim Finance Authority, 730 F.3d 150, 154-55 (2d Cir. 2013); Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 124 (2d Cir. 2006) ("We have repeatedly held that a district court particularly abuses its discretion when it retains jurisdiction over state-law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims.") (collecting cases). Here, plaintiffs' claim that the actions taken by the City defendants in response to COVID-19 violate the separation of powers raises a novel issue of state law.  In the absence of any federal claims, this determination should be made by New York State courts.

**B.    Plaintiffs fail to adequately plead that the City defendants violated the Separation of Powers or exceeded their authority.**

The Complaint does not identify any specific action taken by City defendants which plaintiffs allege violated the separation of powers or exceeded authority.  See Compl. ¶ 146-150.  Accordingly, the fourth cause of action must be dismissed as against the City defendants. See Twombly, 550 U.S. at 555.

Even assuming arguendo plaintiffs had adequately pled that the City defendants violated the separation of powers or exceeded their authority, the claim fails.  The actions taken by Mayor de Blasio in response to the COVID-19 pandemic are within the power granted to him by the legislature.  New York Executive Law ("Exec. Law") § 24 authorizes the Mayor to proclaim a local state of emergency, in the event of a disaster such as an epidemic or disease outbreak, and upon a finding by the Mayor that the public safety is imperiled by such public emergency.  The COVID-19 global pandemic clearly triggered the Mayor's authority to proclaim a local state of emergency.  Mayor de Blasio declared such an emergency through the issuance of New York City Emergency Executive Order No. 98 on March 12, 2020.  Exec. Law § 24 further

provides that once the Mayor declares a local state of emergency, he may issue local emergency orders, "to protect life and property or to bring the emergency situation under control."  Any challenged orders issued by the Mayor were issued in accordance with the authority granted to him by the legislature.  Moreover, any relevant City Emergency Executive Orders were issued in order to comply with the Governor's directives.

The delegation of authority set forth in Exec. Law § 24 is constitutional.  Not only is it limited to disasters and public emergencies, it provides clear guidance as to the measures the Mayor is authorized to take in the face of such emergencies, such as the regulation and closing of places of amusement and assembly and the prohibition and control of persons on public streets and places.  See Exec. Law § 24(a) and (c).  The actions taken by the Mayor fell squarely within the authority proscribed by Executive Law § 24.

New York courts have upheld legislative delegations to the Executive that were much more general and broad than Exec. Law § 24. See Levine v. Whalen, 39 N.Y.2d 510, 515-517 (1976) (holding that the Legislature's delegation of power to the executive branch, under Public Health Law § 2800, "to provide for the protection and promotion" of public health was "not so vague and indefinite as to set no standard or to outline no policy"); Garcia v. N.Y.C. Dept. of Health & Mental Hygiene, 31 N.Y.3d 601, 612 (2018); Boreali v. Axelrod, 71 N.Y.2d 1 (1987). "We have thus acknowledged that there need not be a specific and detailed legislative expression authorizing a particular executive act as long as 'the basic policy decisions underlying the regulations have been made and articulated by the Legislature.'" Bourquin v. Cuomo, 85 N.Y.2d 78, 784 (1995) (citations omitted).[25]

---

[25] Plaintiffs assert as their Fifth Cause of Action that the Challenged Orders are unconstitutional "as applied to a properly filtered and compliant space." Complaint, ¶¶ 151-160. While it appears that plaintiffs are attempting to assert some sort of constitutional claim, they fail to clearly set forth any

## POINT VIII

## PLAINTIFFS' CLAIMS ARE MOOT.

Plaintiffs have received the relief they seek—for indoor dining in New York City to resume. Complaint ¶ 39, Wherefore Clause. Accordingly, plaintiffs' claims are moot. <u>See</u> <u>Fisher v. United States Atty.</u>, 722 F. App'x 40, 41 (2d Cir. 2018) (internal citations omitted)("A case becomes moot, at any stage of litigation, when there is no longer a live case or controversy for a court to decide, such as when the plaintiff has already received the relief sought."); <u>Fox v.</u> <u>Bd. of Trs. of the State Univ.</u>, 42 F.3d 135, 140 (2d Cir. 1994) (a federal court has no jurisdiction to decide a case where the parties lack a legally cognizable interest in the outcome of the litigation). Since the filing of this action in December 2020, indoor dining in New York City reopened on February 12, 2021 at 25% capacity. <u>See</u> State E.O. No. 202.93.  Subsequently, beginning on March 19, 2021, the State authorized indoor dining in New York City restaurants at 50% capacity. <u>See</u> State E.O. No. 202.97. Accordingly, as New York City restaurants are currently open for indoor dining at 50% capacity, this Court cannot provide any legally cognizable benefit to plaintiffs, and the issues raised in the Complaint are no longer "live." <u>See</u>, <u>e.g.</u>, <u>Fisher</u>, 722 F. App'x at 41; <u>Fox.</u>, 42 F.3d at 140.

Moreover, the fact that the Challenged Orders were superseded by subsequent less restrictive orders further renders plaintiffs' claims moot. <u>See</u> State E.O.s 202.93, 202.96 and

---

cognizable legal theory. Indeed, at the very end of this cause of action, plaintiffs make one passing mention of the term "regulatory taking" yet fail to plead a takings claim at all. <u>Id.</u> at ¶ 160. Regardless, because none of plaintiffs' constitutional claims are viable as stated above, rational basis review applies. <u>Hopkins Hawley LLC</u>, 2021 U.S. Dist. LEXIS 24580, * 20-21. The restrictions set forth in the Challenged Orders "undeniably pass[] rational basis scrutiny" as they are "premised on a conceivable scientific basis that is rationally related to mitigating the further spread of the COVID-19 virus." <u>Id.</u> at 21. Therefore, any assertion that the Challenged Orders are unconstitutional as applied to plaintiffs necessarily fails.

202.97. "Once a law is off the books and replaced with a 'new rule' that does not injure the plaintiff, a case becomes moot, leaving us with an absence of jurisdiction to adjudicate the case.'" <u>Pleasant View Baptist Church v. Beshear</u>, 2020 U.S. App. LEXIS 40077, at *5 (6th Cir. Dec. 21, 2020) (internal citations omitted).

<b><u>CONCLUSION</u></b>

For all the reasons set forth herein, City defendants respectfully request that the Court grant their motion to dismiss the complaint in its entirety.

Dated:          New York, New York
                April 2, 2021


By: _____/s/_____

          Kerri Devine
          Samantha Schonfeld
          Assistant Corporation Counsels