UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
HOPKINS HAWLEY LLC d/b/a SEAPORT : 
HOUSE, THE GREATER NEW YORK :
MERCHANTS' ALLIANCE, and COSTIN :
TARSOAGA, on behalf of themselves and all :
others similarly situated, : 20-cv-10932 (PAC)
 :
                      *Plaintiffs*, :
 : **OPINION & ORDER**
      -*against*- :
 :
ANDREW CUOMO, in his personal and :
official capacity as Governor of the State of :
New York, THE NEW YORK CITY :
DEPARTMENT OF FINANCE, THE NEW :
YORK CITY SHERIFF'S DEPARTMENT, :
and BILL DE BLASIO, in his personal and :
official capacity as Mayor of the City of New :
York, :
 :
                      *Defendants*. :
------------------------------------------------------------X

On Christmas Day 2020, the Plaintiffs filed this class action lawsuit against state and local authorities seeking enjoinment of Governor Andrew Cuomo's COVID restrictions on restaurant dining in New York City. Under the Governor's restrictions, restaurants in the City were prohibited (1) from serving customers indoors and (2) from serving customers outdoors past 10 p.m.

Plaintiffs, whose livelihoods depend on the restaurant industry, alleged that these restrictions abridged several of their rights under the Federal Constitution, including: (1) the First Amendment, (2) the Fourteenth Amendment's Due Process Clause, and (3) the Dormant Commerce Clause. And on those same grounds, they also sought a Temporary Restraining Order (TRO) and Preliminary Injunction against the Governor's restrictions.

1

The Court denied both applications for emergency relief and held that the Plaintiffs' Constitutional claims were unlikely to succeed on the merits because the restrictions at issue constituted a valid exercise of the Governor's police powers under the Constitution. Additionally, the Court also found that the remaining injunction factors—irreparable harm and the public interest—weighed against the issuance of a TRO and Preliminary Injunction.

The Governor and City authorities (collectively, "Defendants") now move to dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is **GRANTED**.

## BACKGROUND

The following is an abbreviated account of the facts, which are more fully set forth in the Court's Preliminary Injunction opinion. In fall 2020, New York began to experience a second surge in COVID infections. (*See* Dr. Varma Decl. ¶ 17, ECF 36.) Beginning in September, the State averaged a 50% increase in daily cases and that rate continued to rise following the end-of-year holiday season. (*Id.* ¶¶ 17–18.)

In response to this second wave of infections, the Governor issued new executive orders ("Dining Policy") that limited restaurant dining in New York City. (*See* Schonfeld Decl. Exs. H & I, ECF 34.) Under the Dining Policy, restaurants were prohibited (1) from serving customers indoors and (2) from serving customers outdoors past 10 p.m. (*See id.*)

The Dining Policy was intended to slow the further spread of COVID. According to public health authorities, indoor dining at restaurants increases the risk of COVID transmission due to poor ventilation, inadequate social distancing, and the unmasked face-to-face exposure that occurs while eating and drinking. (*See* Dr. Blog Decl. ¶¶ 8–59, ECF 40; Dr. Varma Decl. ¶¶ 33–44.) These characteristics of indoor dining, experts say, are problematic because respiratory

droplets of the virus can spread through close contact with others as people cough, sneeze, talk or sing. (*See* Dr. Blog Decl. ¶¶ 11, 16; Dr. Varma Decl. ¶ 30.)

In a similar vein, the Dining Policy's 10 p.m. curfew on outdoor dining also sought to reduce the further spread of COVID. The policy was premised on the rationale that the later people dine out in the evening, the more liquor they consume, reducing their inhibitions and making them less likely to adhere to mask wearing and social distancing protocols. (*See* Dr. Blog Decl. ¶¶ 44–52; Dr. Varma Decl. ¶ 37.)

The Plaintiffs in this case consist of a New York City restaurant, non-profit advocacy group, and restaurant worker who, like many others in the industry, have found themselves in a world of financial hurt due to the COVID pandemic and its accompanying restrictions.[1] (Compl. ¶¶ 54–58, ECF 1.)

On Christmas Day 2020, the Plaintiffs filed this class action lawsuit seeking injunctive relief from the Dining Policy. (ECF 1.) On December 30, the Plaintiffs moved for a TRO and Preliminary Injunction enjoining the Dining Policy on the grounds that it violated (1) the First Amendment, (2) the Fourteenth Amendment's Due Process Clause, and (3) the Dormant Commerce Clause. (ECF 16.) Following a telephonic conference on January 6, 2021, the Court denied the TRO application, and ordered briefing and expedited discovery on the Preliminary Injunction motion. (Order, ECF 32.) On January 21, the Court held oral argument on the Preliminary Injunction motion.

By written order dated February 9, the Court denied the Plaintiffs' request for a Preliminary Injunction. *See Hopkins Hawley LLC v. Cuomo*, No. 20-CV-10932 (PAC), 2021 WL 465437

---

[1] Plaintiffs are comprised of three parties: Seaport House is a restaurant operating in New York City; Costin Tarsoaga is a restaurant worker; and the New York Merchants Alliance is a non-profit advocacy group that represents restaurant owners across New York. (Compl. ¶¶ 54–56, ECF 1.)

3

(S.D.N.Y. Feb. 9, 2021). *First*, the Court held that the Plaintiffs' Constitutional claims were unlikely to succeed on the merits under the deferential standard set forth in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), or alternatively, under a traditional "tiers of scrutiny" Constitutional analysis. *See Hopkins Hawley*, 2021 WL 465437, at *3–9. *Second*, the Court found no demonstration of irreparable harm by the Plaintiffs. *See id.* at *9. And *third*, the Court found that the public interest would be disserved by enjoining the Dining Policy, particularly amidst a global pandemic. *See id.* at *9–10.

Since the Court's Preliminary Injunction ruling, the Nation has turned a corner with respect to the COVID pandemic.[2] To date, more than 250 million doses of vaccines have been administered across the Nation. *See* Ctrs. For Disease Control & Prevention (CDC), *COVID-19 Vaccinations in the United States*, https://covid.cdc.gov/covid-data-tracker/#vaccinations (updated May 10, 2021). And in New York alone, 40% of the population has been fully inoculated. N.Y. TIMES, *See How Vaccinations Are Going in Your County and State*, https://www.nytimes.com/interactive/2020/us/covid-19-vaccine-doses.html#by-state (updated May 10, 2021.) New cases, meanwhile, continue to decline across the Nation and the State.

As a result of these developments, the Dining Policy has since been superseded by less restrictive policies. At present, restaurants in the City can operate at 75% indoor capacity and until midnight. N.Y. TIMES, *New York Is Reopening Sooner Rather Than Later*, https://www.nytimes.com/2021/05/04/nyregion/new-york-reopening-covid.html (May 4, 2021). Moreover, the Governor has announced that by the end of May, restaurants will be able to operate without restriction. *See id.*

---

[2] Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of facts that are "generally known within the trial court's territorial jurisdiction." FED. R. EVID. 201. General facts regarding the COVID pandemic indisputably fall within Rule 201's purview.

4

The Defendants now move to dismiss this lawsuit under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The Court heard oral argument on this motion on May 5, 2021. For the reasons set forth below, the motion is granted.

## LEGAL STANDARD

### I. Rule 12(b)(1)

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the party seeking to invoke the Court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In deciding a Rule 12(b)(1) motion, the district court "may refer to evidence outside the pleadings." *Id.* It is incumbent on the plaintiff to prove subject matter jurisdiction exists by a "preponderance of the evidence" standard. *Id.; see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).

### II. Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a Rule 12(b)(6) motion, the district court accepts as true all of the factual

allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570. Finally, in deciding a Rule 12(b)(6) motion, a court may consider documents that are attached as exhibits, incorporated by reference, or integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

## DISCUSSION

### I. Mootness

In *Roman Catholic Diocese v. Cuomo*, 141 S.Ct. 63 (2020), the Supreme Court provided the relevant legal framework for assessing mootness in COVID restriction lawsuits. *Id.* at 68. There, religious organizations affected by Governor Cuomo's restrictions on in-person worship services had moved for emergency injunctive relief against the Governor's policies. *Id.* at 66. But in the course of litigation, the Governor rescinded the restrictions at issue and argued before the Supreme Court that the case was now moot. *Id.* The Court, however, rejected that argument and held:

> It is clear that this matter is not moot. And injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange. The Governor regularly changes the classification of particular areas without prior notice. If that occurs again, the reclassification will almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained.

*Id.* (cleaned up).

6

Subsequently, in *Tandon v. Newsom*, 141 S.Ct. 1294 (2021), the Court reaffirmed this mootness framework, explaining:

> [E]ven if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case. And so long as a case is not moot, litigants otherwise entitled to emergency injunctive relief remain entitled to such relief where the applicants "remain under a constant threat" that government officials will use their power to reinstate the challenged restrictions.

*Id.* at 1297.

*Roman Catholic Diocese* and *Tandon*, together, articulate two mootness principles that are of concern here: (1) a lawsuit brought against COVID restrictions is not simply moot because the restrictions at issue have been rescinded; and (2) if the COVID restrictions (at issue) have been rescinded in the course of litigation, the relevant inquiry is whether the plaintiff remains under a "constant threat" of those restrictions being reintroduced in the future. *Roman Catholic Diocese*, 141 S.Ct. at 68; *Tandon*, 141 S.Ct. at 1297.

Here, the Defendants explicate the first of these mootness principles but not the second. They contend that this case is moot because the Dining Policy has been rescinded by the Governor and replaced with less onerous restrictions. (City. Br. 24–25, ECF 65.) But under the teachings of *Roman Catholic Diocese* and *Tandon*, this argument comes out of the oven half-baked; the Defendants do not address whether, notwithstanding the Dining Policy's revocation, the Plaintiffs remain under a "constant threat" of confronting the Dining Policy again in the future. *Roman Catholic Diocese*, 141 S.Ct. at 68; *Tandon*, 141 S.Ct. at 1297.

And it is clear under that standard that this case is not moot. Although the Dining Policy has been revoked and any remaining restrictions on restaurant dining are set to expire by the end of May 2021, the dispositive fact still remains: the Governor retains the authority to reintroduce

7

COVID restrictions on restaurants in response to another surge in COVID cases.[3] And while that outlook may appear unlikely, given the Nation's vaccination progress and the general decline in COVID cases, the only certainty about the future course of this pandemic is uncertainty. *See Cassell v. Snyders*, 990 F.3d 539, 546 (7th Cir. 2021). Accordingly, the Plaintiffs remain under the "constant threat" of confronting the Dining Policy again, which means this case is not moot. *Roman Catholic Diocese*, 141 S.Ct. at 68; *see, e.g., Cassell*, 990 F.3d at 546 ("We have considered whether the case should be dismissed as moot. Given the uncertainty about the future course of the pandemic, we are not convinced that these developments have definitively rendered it moot."); *Moxie Owl, Inc. v. Cuomo*, No. 121CV194MADDJS, 2021 WL 1402297, at *5 (N.D.N.Y. Mar. 18, 2021) (finding case was not moot despite announcement that the COVID restriction at issue would be dialed back).

## II. Constitutional Claims

In their Complaint, the Plaintiffs allege that the Dining Policy violated their Constitutional rights under: (1) the First Amendment, (2) the Fourteenth Amendment's Due Process Clause, and (3) the Dormant Commerce Clause. (Compl. ¶¶ 108–145.)

At the Preliminary Injunction stage, the Court rejected each of these Constitutional claims on the merits. *Hopkins Hawley*, 2021 WL 465437, at *3–9. Because the parties do not provide any compelling reasons to revisit this analysis, the Court incorporates the same

---

[3] On March 7, 2021, the Governor signed New York Senate Bill 5357 ("the Act") which purports to terminate the Governor's emergency powers during the COVID pandemic. *See* Act of March 7, 2021, ch. 71, 2021 N.Y. Laws 5357. In truth, however, the Act really modifies, not terminates, the Governor's emergency powers. *See id.* Under the Act, the Governor may still extend or modify currently existing COVID restrictions so long as he: (1) gives advance notice to the state legislature and affected municipalities; and (2) provides an opportunity for the political branches to offer feedback on his proposed directives. *See id.* Thus, because the Governor still retains the authority to extend or modify existing COVID restrictions, the Act does not render this case moot under *Roman Catholic Diocese*.

reasoning to resolve the Plaintiffs' Constitutional claims here. A condensed legal analysis follows.

*First*, the Plaintiffs' Constitutional claims against the Governor's Dining Policy fail under the deferential standard set forth in *Jacobson v. Massachusetts*, 197 U.S. at 31. In *Jacobson*, the Supreme Court held that in times of public health crises, a state or local law "enacted for the public health" would only be struck down if it had "no real or substantial relation to [the public health] or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Id.* at 31. The Plaintiffs' claims do not meet the *Jacobson* standard. *Id.* The Dining Policy bears a relation to the public welfare by seeking to curb the transmission of COVID-19 in higher risk settings such as restaurants. *See Columbus Ale*, 2020 WL 6118822, at *4; *Luke's Catering Serv., LLC v. Cuomo*, No. 20-CV-1086S, 2020 WL 5425008, at *7 (W.D.N.Y. Sept. 10, 2020). Moreover, the Plaintiffs have not shown that the Dining Policy is "beyond all question, a plain, palpable invasion of rights secured by fundamental law." *Jacobson*, U.S. at 31. Therefore, their Constitutional claims must be rejected under *Jacobson*.

*Second*, even if *Jacobson* were longer good law in light of *Roman Catholic Diocese* and *Agudath Israel of America v. Cuomo*, 983 F.3d 620, 635–36 (2d Cir. 2020),[4] the Plaintiffs' Constitutional claims also founder under a traditional "tiers of scrutiny" analysis. *Id.* at 635. As discussed in the Preliminary Injunction opinion, the Plaintiffs' claims do not implicate any

---

[4] In denying Plaintiffs' motion for a Preliminary Injunction, the Court acknowledged that *Roman Catholic Diocese* and *Agudath Israel* raised doubts "as to Jacobson's continuing viability," *Hopkins Hawley*, 2021 WL 365437, at *5, but nonetheless held that *Jacobson* was still applicable on *stare decisis* grounds. *Id.*; *see See Agostini v. Felton*, 521 U.S. 203, 237 (1997); *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). Because that reasoning still holds true, the Court concludes that *Jacobson* must apply on this motion.

9

fundamental rights under the Constitution and therefore do not trigger a heightened standard of judicial review. Accordingly, rational basis review applies. And the (deferential) question asked under rational basis scrutiny is whether the state action at issue—the Dining Policy—"rationally advances some legitimate government purpose." *Columbus Ale*, 2020 WL 6118822, at *3 n. 8; *see Reno v. Flores*, 507 U.S. 292, 306 (1993). Absolutely. The Dining Policy was a rational measure employed by the Governor to slow the further spread of the COVID virus. *Columbus Ale*, 2020 WL 6118822, at *3 n. 8. Thus, even if *Jacobson* did not apply, the Plaintiffs' claims would fail under a traditional mode of Constitutional analysis.

### III. State Law Claims

The remaining claims in the Complaint consist of state law claims that arise under New York law. Those claims allege that the Dining Policy: (1) constitutes an unlawful delegation of state legislative authority to the executive branch under the New York State Constitution, and (2) that the Governor, in implementing the Dining policy, violated New York State Executive Law Section 28. *See* N.Y. Exec. Law § 28 (McKinney).

The Court does not have jurisdiction to adjudicate these claims under the *Pennhurst* doctrine. "In *Pennhurst*, the Supreme Court held that sovereign immunity prohibits federal courts from entering injunctions against state officials on the basis of state law." *Vega v. Semple*, 963 F.3d 259, 283 (2d Cir. 2020). This form of sovereign immunity applies even if the state law claims are "brought into federal court under pendent jurisdiction." *Id.* at 284. That is the precise case here: the Plaintiffs' state law claims are brought pursuant to 28 U.S.C. § 1367—the supplemental jurisdiction statute. Hence, because such claims are barred under the *Pennhurst* doctrine, the Court dismisses Plaintiffs' state law claims for lack of jurisdiction.

## CONCLUSION

The Defendants' motion to dismiss is **GRANTED**. The Clerk of Court is respectfully directed to terminate this case.

Dated: New York, New York
      May 11, 2021

SO ORDERED

*Paul A. Crotty*
HONORABLE PAUL A. CROTTY
UNITED STATES DISTRICT JUDGE